PAUL J. CAMBRIA, JR.  (State Bar No. 177957)
ERIN E. MCCAMPBELL
    pcambria@lglaw.com
    emccampbell@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*Attorneys for Plaintiffs*

*Larry C. Flynt, Haig Kelegian, Sr.,*

*and Haig T. Kelegian, Jr.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO BRANCH

| | |
|---|---|
| LARRY C. FLYNT, HAIG KELEGIAN, SR., and HAIG T. KELEGIAN, JR.,<br><br>                              Plaintiffs,<br><br>              vs.<br><br>KAMALA D. HARRIS, in her official capacity as ATTORNEY GENERAL of the STATE of CALIFORNIA, WAYNE QUINT, JR., in his official capacity as the CHIEF of the CALIFORNIA DEPARTMENT of JUSTICE, BUREAU of GAMBLING CONTROL, an agency of the STATE of CALIFORNIA, and JIM EVANS, TIFFANY E. CONKLIN, ROGER DUNSTAN, LAUREN HAMMOND, and TRANG TO, in their official capacities as members of the CALIFORNIA GAMBLING CONTROL COMMISSION, an agency of the STATE of CALIFORNIA,<br><br>                              Defendants. | CIVIL CASE NO.<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs Larry C. Flynt, Haig Kelegian, Sr., and Haig T. Kelegian, Jr.

(collectively, "Plaintiffs"), by their undersigned attorneys, bring the instant civil

action for declaratory and injunctive relief, and allege as follows:

## INTRODUCTION

1.     This is a civil action wherein Plaintiffs pray for a declaratory judgment and a permanent injunction to restrain and enjoin the named Defendants, as well as their agents, employees, and representatives, from acting under color of state law to deprive Plaintiffs of their rights, privileges, and immunities secured to them by the United States Constitution.  Specifically, Plaintiffs seek to have this Court declare as unconstitutional, both on its face and as applied, California Business and Professions Code § 19858 ("Section 19858") as enacted by the State of California ("California") and to enjoin its enforcement, as well as a modification to that provision, California Business and Professions Code § 19858.5 ("Section 19858.5").

2.     Section 19858 prohibits California residents who hold California gaming licenses for cardrooms (also referred to as card clubs)[1] from investing in out-of-state gambling entities that engage in casino-style gambling (as well as casinos located abroad).  This occurs because casino-style gambling activities are prohibited in California (except on tribally-owned land) and Section 19858 seeks to impose California's casino prohibition on its residents even when they seek to invest in out-of-state casino-style gambling entities operating lawfully under the laws of other states (and other countries).

---

[1]     This complaint uses the terms "cardrooms" and "card clubs" interchangeably.

3.     Moreover, Section 19858 prohibits out-of-state residents who own or operate out-of-state gambling entities that offer casino-style gambling activities from obtaining a California cardroom gaming license even if the operation of their out-of-state casino is in full compliance with the laws of the state in which the casino is located.

4.     Plaintiffs are ready, willing, and able to compete for the opportunity to invest in and/or operate out-of-state casinos (and foreign casinos), but are prohibited from doing so under Section 19858 lest they surrender their California gaming licenses and cease operation of their California cardrooms or risk an accusation being filed against them.

5.     Plaintiffs seek to have Section 19858 (and Section 19858.5) declared invalid and enjoined on two principal bases:

    a.  Section 19858 violates the dormant Commerce Clause of the United States Constitution because it prohibits interstate investment and discriminates against out-of-state casino owners, effectively barring them from the ability to invest in and to operate California cardrooms despite their willingness to comply with all requirements of California law applicable to the operation of such cardrooms; and

    b.  Section 19858 deprives Plaintiffs from engaging in a profession of their choosing in violation of the substantive Due Process Clause of the United States Constitution.

6.     In short, Section 19858 (and Section 19858.5) creates an unconstitutional barrier to interstate investment, discriminates against interstate commerce, and favors in-state interests to the exclusion of out-of-state investors.  Moreover, Section 19858

(and Section 19858.5) prohibits Plaintiffs from pursuing the occupation of their choosing in violation of Plaintiffs' substantive Due Process rights.

7.     Accordingly, this Court should declare Section 19858 (and Section 19858.5) unconstitutional and enjoin Defendants from enforcing, or otherwise exercising authority under Section 19858 (and Section 19858.5).

## THE PARTIES

8.     Plaintiff Larry C. Flynt ("Mr. Flynt") is a California resident who possesses California gaming licenses to operate card clubs.  Mr. Flynt owns (via his revocable trust) and directly controls El Dorado Enterprises, Inc., a California corporation d/b/a Hustler Casino ("Hustler Casino"), which is a cardroom gambling facility located at 1000 W. Redondo Beach Boulevard, Gardena, California 90247.  Additionally, Mr. Flynt owns (via his revocable trust) and manages Casino, LLC, a California limited liability company d/b/a Larry Flynt's Luck Lady Casino ("LFLL Casino"), which is a cardroom gambling facility located at 1045 W. Rosecrans, Gardena, California 90247.  Mr. Flynt (and his revocable trust) has applied for, and is awaiting approval for, a cardroom license to operate a third cardroom, which will be located in Cudahy, California.

9.     Plaintiff Haig Kelegian, Sr. ("Mr. Kelegian, Sr.") is a California resident who possesses a California gaming license to operate card clubs.  Mr. Kelegian, Sr. has an ownership interest in Crystal Casino ("Crystal Casino"), which is a cardroom

gambling facility located at 123 E. Artesia Boulevard, Compton, California 90220. Mr. Kelegian, Sr. has an ownership interest in the Ocean's Eleven Casino ("Ocean's Eleven"), which is card-room gaming facility located at 121 Brooks Street, Oceanside, California 92054.  Mr. Kelegian, Sr. has an ownership interest in The Bicycle Hotel and Casino ("Bicycle Casino"), which is a cardroom gambling facility located at 888 Bicycle Casino Drive, Bell Gardens, California 90201.  Mr. Kelegian, Sr. has an ownership interest in The Commerce Hotel and Casino, which is a card-room gaming facility located at 6131 Telegraph Road, Commerce, California 90040. Finally, Mr. Kelegian, Sr. has an ownership interest in Club One Casino, 1033 Van Ness Avenue, Fresno, California 93721.

10.    Haig T. Kelegian, Jr. ("Mr. Kelegian, Jr.") is a California resident who possesses a California gaming license to operate card clubs.  Mr. Kelegian, Jr. has ownership interests in Crystal Casino and Bicycle Casino and an ownership interest in one of the entities that owns and operates Ocean's Eleven.

11.    At all material times, Defendant Kamala D. Harris was and is the Attorney General for California and is the highest law enforcement officer in California. Attorney General Harris is sued solely in her official capacity and, at all times, was and is acting in the course and scope of her employment pursuant to policy, custom, practices, or laws of California.  At all times, Attorney General Harris was and is acting under color of state law.  Attorney General Harris maintains her principal

office at the State Capitol, Office of the Attorney General, 1300 "I" Street, Sacramento, California 95814.

12.     Upon information and belief, at all material times, Defendant Wayne Quint, Jr. was and is the Chief of the Bureau of Gambling Control, which is the division of the California Department of Justice that is tasked with enforcing California's gambling statutes and regulations.  Quint is sued solely in his official capacity and, at all times, was and is acting in the course and scope of his employment pursuant to policy, custom, practices, or laws of California.  At all times, Quint was and is acting under color of state law.  Quint maintains his principal office at the California Bureau of Gambling Control located at 4949 Broadway, Rm. E231, Sacramento, California 95820.

13.     Upon information and belief, at all material times, Defendants Jim Evans, Tiffany E. Conklin, Roger Dunstan, Lauren Hammond, and Trang To are the current members of the California Gambling Control Commission, which reports directly to the Governor of California and is the agency tasked with determining, *inter alia*, whether to grant a gaming license to a particular applicant, *i.e.*, whether the applicant is "suitable" to hold the gaming license under California law.  Defendants Evans, Conklin, Dunstan, Hammond, and To are sued solely in their official capacities and, at all times, were and are acting in the course and scope of their employment pursuant to policy, custom, practices, or laws of California.  At all times, Defendants Evans,

Conklin, Dunstan, Hammond, and To were and are acting under color of state law. The principal office of the California Gambling Control Commission is located at 2399 Gateway Oaks Drive, Suite 220, Sacramento, California 95833.

## JURISDICTION

14.     This Court has federal subject matter jurisdiction to entertain Plaintiffs' claims for deprivation of federal constitutional rights under 28 U.S.C. §§ 1331 and 1343. This action seeks to secure Plaintiffs' constitutional rights and protections under the dormant Commerce Clause (U.S. Const. art. I, § 8, cl. 3) and the Due Process Clause of the Fourteenth Amendment (U.S. Const. amend XIV).    This action seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1983 and 1988.

15.     Personal jurisdiction is proper in this Court because all Defendants reside in California, the seat of California's government, its agencies, and its subdivisions are located in this district, and, upon information and belief, all of the named individual Defendants perform their official duties in this district.

## VENUE

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).  All Defendants reside in California.  California, its agencies, and its political subdivisions are located in this judicial district, and the individual Defendants perform their official duties in this district.

## FACTUAL ALLEGATIONS

**A.      California's Gambling Entities**

17.     California law allows, subject to regulation, several types of gambling businesses to operate in the state.  Card clubs (or cardrooms) allow patrons to engage in non-banked or non-percentage card games during which the players play against each other and pay the cardroom a fee to use its facilities.  Card club owners must possess a valid cardroom gaming license to allow such gambling, as set forth in greater detail below.

18.     Horse-racing facilities offer patrons the opportunity to place bets on live or simulcast horse races.

19.     The California State Lottery offers patrons the opportunity to win a cash prize by way of myriad games of chance.

20.     Non-profit organizations offer patrons the opportunity to participate in raffles or bingo games.

21.     Casino operators, who offer patrons the opportunity to play, *inter alia*, slot machines and banked-card games, are permitted to operate solely on tribally-owned land pursuant to compacts entered into between California and various Native American tribes.

**B.     California's Gambling Regulations**

22.    Historically, California's counties and municipalities regulated card clubs located within their boundaries.  However, in 1986, California enacted the Gambling Registration Act, which increased State oversight and required all owners, employees, and vendors of card clubs to register with the State by obtaining the appropriate licenses.  Subsequently, California enacted the Gambling Control Act, Bus. & Prof. Code §§ 19800 *et seq.*, as well as other regulatory legislation which is not the focus of this action.  Currently, several intertwined statutes operate to prohibit Plaintiffs, card-club owners, from investing in out-of-state casinos in excess of a one-percent ownership interest.

23.    California prohibits individuals from engaging in or operating facilities that engage in a variety of specified gambling activities.  Under Section 330 of the Penal Law ("Penal Law Section 330"), a person is guilty of a misdemeanor if he or she:

> deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of those prohibited games . . . .

C.A. Pen. L. § 330.  Thus, no individuals or entities may operate a venue that engages in these casino-like gambling activities in California.

26.     However, California takes its gambling regulations one step further.  Under Section 19858, which is the focus of this action:

> a person shall be deemed to be unsuitable to hold a state gambling license to own a gambling establishment if the person, or any partner, officer, director, or shareholder of the person, has any financial interest in any business or organization that is engaged in any form of gambling prohibited by Section 330 of the Penal Code, whether within or without this state.

C.A. Bus. & Prof. Code § 19858(a).  Thus, an individual who has an ownership interest in an out-of-state (or foreign) gaming entity that engages in the gambling activities prohibited under Penal Law Section 330 (even though lawful in the state or country where the casino is located) would be barred from operating a card club in California because such an individual would be "deemed . . . unsuitable to hold a state gambling license."

27.     Notably, there are several exceptions to this licensing-based blanket prohibition of certain gaming activities.  First, Section 19858 expressly exempts gaming entities involved with horse racing that meet certain specified criteria set forth in that provision, *see* C.A. Bus. & Prof. Code §§ 19858(b), (c), and elsewhere, *see* C.A. Bus. & Prof. Code § 19852.

28.     Second, there is an exemption from these regulations for tribally-owned casinos.  Historically, tribally-owned gaming entities were regulated through a federal statutory scheme, the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et*

*seq.*, which did not preclude individuals or entities with ownership interests in out-of-state gambling entities from owning or operating gaming entities on tribal lands located within California's geographic boundaries or from operating casinos that engaged in gambling activities deemed lawful by California. However, Penal Law Section 330 and the Gambling Control Act prohibited the operation of casinos. Shortly thereafter, in 2000, California voters passed Proposition 1A, which amended the State Constitution to specifically permit casino-style gambling on tribally-owned lands with no ownership restrictions. Consequently, out-of-state gambling entities that engaged in gambling activities prohibited under Penal Law Section 330 gained the ability to own and operate casinos located on tribally-owned lands and have operated such casinos since Proposition 1A passed.

29.    Finally, in 2007, the legislature enacted Section 19858.5, which states that:

> Notwithstanding Section 19858, the commission may, pursuant to this chapter, deem an applicant or licensee suitable to hold a state gambling license even if the applicant or licensee has a financial interest in another business that conducts lawful gambling outside the state that, if conducted within California, would be unlawful, provided that an applicant or licensee may not own, either directly or indirectly, more than a 1 percent interest in, or have control of, that business.

C.A. Bus. & Prof. Code § 19858.5. Once this provision became effective, an individual owning no more than a one percent interest (and no controlling interest) in an out-of-state gaming entity that engaged in the gambling activities prohibited

under Penal Law Section 330 could, nonetheless, lawfully operate a card club in California.

30.    As discussed below, these intertwined gaming statutes violate the dormant Commerce Clause and the substantive rights afforded individuals under the Due Process Clause, facially, and as applied to Plaintiffs.

**C.    California's Study of Section 19858 Reveals That Section 19858 No Longer Serves its Purpose (If It Ever Did) and Section 19858 Violates the Dormant Commerce Clause**

31.    In late 2001, the Milton Marks Little Hoover Commission on California State Government Organization and Economy ("Little Hoover Commission"), an independent State oversight agency, studied and analyzed Section 19858 and a separate ownership-related provision and issued a report entitled, *Card Clubs in California, A Review of Ownership Limitations* (April 2002) ("Report"), a true and correct copy of which is attached hereto as Ex. A.  The Little Hoover Commission's then-Chairperson, Michael E. Alpert, submitted the Report to the then-Governor, Gray Davis, with a letter summarizing the Report's findings ("Report Summary"), a true and correct copy of which is attached hereto as Ex. B.

**1.    Section 19858 Is No Longer And Was Never Necessary To Prevent Crime**

32.    Both the Report and Report Summary indicated that Section 19858 was ostensibly enacted to "attempt[] to keep organized crime out of California."  Ex. B at 1; *see also* Ex. A at 6 (noting that the ownership limitations were enacted to "serve

as a deterrent to organized crime"), 8 ("By preventing casino operators from owning card clubs in California, policy-makers hoped to prevent organized crime from becoming involved in the state.").

33.     With respect to crime prevention, the Report conceded that, regardless of the ownership restriction codified in Section 19858, crime would or would not be present "regardless of the ownership of the club."  Ex. A at 10.  Thus, it is questionable whether Section 19858 was ever necessary to prevent crime.

34.     However, as the Little Hoover Commission uncovered, Section 19858 is no longer necessary to prevent the infiltration of organized crime in the California gambling industry.  Indeed, the chairman of the Gambling Control Commission testified before the Little Hoover Commission that "the primary reason for the ownership limitations – to prevent criminals from operating casinos – is no longer valid because publicly traded casino companies are effectively regulated in other states."  Ex. A. at 13.  Thus, California's top gambling regulator believed and has declared that Section 19858 is "no longer necessary to protect public safety."  Ex. A at 17.

35.     This conclusion is bolstered by the studies conducted by other states that permit casino-style gambling.  For example, regulators from Nevada have recognized that the operation of casinos by publicly traded companies, *i.e.*, companies that are obligated to investors and heavily regulated by various federal agencies, have

"supported the regulatory goal of making sure that gambling is conducted honestly and free from criminal or corruptive influences." Ex. A at 11. Such companies often cooperate with state regulators because "they do not want to put their license – along with their investment – in peril." Ex. A at 12.

36.     Similarly, the California Gambling Control Commission, itself, has recognized that, due to the exception from Section 19858's ownership restrictions for gambling entities operating on tribally-owned land, "some publicly traded corporations that own and operate casinos in other states already manage or finance the operations of tribal casinos in California . . . [and] if these corporations pose a risk to public safety – *and there is no evidence that they do* – that risk already exists." Ex. A at 13 (emphasis added).

37.     At best, the ownership limitations "were an anachronistic attempt to protect the public safety." Ex. A at 15. The Little Hoover Commission noted that it would be "illogical" to keep Section 19858 in effect. Ex. A at 17.

38.     In sum, the Little Hoover Commission concluded that "the limitations are no longer necessary to protect the public safety." Ex. A at 17. The Commission recommended "that the Governor and the Legislature eliminate the ownership limitations that prevent publicly traded companies – even those operating casinos in other states or under management contracts with California Indians – from operating card clubs." Ex. A at 17.

39.     In spite of these non-partisan calls to eliminate the ownership restrictions, Section 19858 remains in effect.

40.     Notably, California has enacted legislation to create exemptions from the ownership restrictions for certain identified gaming entities.  For example, California passed legislation that gave an exemption from Section 19858 to the owners of the cardroom located at Hollywood Park Racetrack.  *See* S.B. 472 and its legislative history, a true and correct copy of which is attached hereto as Exhibit C.

41.     Thus, California has stated that the purpose for enacting Section 19858—crime prevention—is no longer a concern, and by enacting legislation such as S.B. 472, which allowed the owners of an out-of-state casino to maintain a license and operate an in-state cardroom (which resulted in no uptick in crime), California has demonstrated that ownership restrictions contained in Section 19858 are no longer necessary to prevent crime.

42.     However, in 2016, Governor Edmund G. Brown, Jr., vetoed a bill that sought to extend the exemption for three more years, noting that "[i]f our gambling laws are based on outdated policies or assumptions, we should thoughtfully examine those laws and amend them so that all participants in the industry receive the same benefits and opportunities."  *See* Sept. 30, 2016 Ltr. from Gov. Brown, accompanying veto of Assembly Bill 2218, a true and correct copy of which is attached hereto as Exhibit D.

### 2.     California Recognizes That Section 19858 Violates the Dormant Commerce Clause

43.    Various members of California's government have recognized that Section 19858 effectively closes the California economy to out-of-state casino owners, and several state governmental bodies and officials have acknowledged that the law amounts to rank discrimination.  For example, the Report identified the impact of Section 19858, noting that "[a]nyone involved in a gambling operation in another state that would be illegal to operate in California, cannot own or operate a card room."  Ex. A at 1.

44.    Moreover, in requesting the Little Hoover Commission to study Section 19858, the then-Governor, Gray Davis, stated that Section 19858 "primarily is intended to prohibit out-of-state gambling interests from owning cardrooms in California" and that "it may no longer be good public policy to forbid business entities that own out-of-state casinos from operating cardrooms in California."  Ex. A at 1.  Similarly, Governor Brown has requested that the Legislature "thoughtfully reexamine" California's gambling laws, Section 19858, in particular, because, as he suggested, Section 19858 might be "based on outdated policies or assumptions."  Ex. D.

45.    Furthermore, at various times, Legislators have recognized that, without an exception, Section 19858 prohibits interstate investment in the gaming industry. *See, e.g.*, Ca. B. An., S.B. 289 Sen., April 10, 2007, a true and correct copy of which is

attached as Exhibit E ("[U]nder existing law an individual who is a gambling establishment owner in California, may not own shares of stock in MGM Mirage, Starwood, Stations Casinos, or any other company which is involved in gambling, without being in violation of Penal Code Section 330 if conducted within the State of California.").

46.     Yet, in spite of the recognition that Section 19858 is discriminatory and has long outlived its ostensible policy rational, the provision remains in effect and to impose a criminal law barrier to otherwise lawful interstate investment.

**D.     Plaintiffs Have Suffered Harm From Section 19858**

    **1.     Mr. Flynt**

47.     Mr. Flynt has explored the opportunity to invest in out-of-state casinos which operated lawfully under the laws of the states in which those casinos were located. Among other locations, Mr. Flynt has explored investment opportunities with casinos located in Laughlin, Nevada; Reno, Nevada; Cripple Creek, Colorado; Tunica, Mississippi; and Las Vegas, Nevada.

48.     However, Mr. Flynt was and remains unable to make any sort of investment in those entities in excess of a one-percent ownership investment lest he surrender his California cardroom gaming licenses, which he would be forced to do.

49.     As a result, Mr. Flynt has forfeited the opportunity to invest in numerous out-of-state casino-style gambling entities to his financial detriment.

### 2.    Mr. Kelegian, Sr.

50.    Mr. Kelegian, Sr. explored the opportunity to invest in an out-of-state casino located in Las Vegas, Nevada, which operated lawfully under Nevada's gaming regulations.

51.    However, Mr. Kelegian, Sr. was and remains unable to make any sort of investment in that entity or any other out-of-state entities in excess of a one-percent ownership investment lest he surrender his California cardroom gambling licenses, which he would be forced to do.

52.    As a result, Mr. Kelegian Sr. has forfeited the opportunity to invest in at least one out-of-state casino-style gambling entity to his financial detriment.

### 3.    Mr. Kelegian, Jr.

53.    Much like Mr. Flynt and Mr. Kelegian, Sr., Mr. Kelegian, Jr. has had an interest in investing in out-of-state casinos which operate lawfully under the laws of the states in which they are located.

54.    In 2010, Mr. Kelegian, Jr. acquired real property in Seattle, Washington, through a bankruptcy sale, which contained, among other facilities, a vacant cardroom.   In consultation with an attorney and a consultant who was a former member of the California Bureau of Gambling Control, Mr. Kelegian, Jr. sought to open a casino-style gambling facility in Seattle, Washington, while at the same time remaining in compliance with California's gaming laws.

55.     To that end, Mr. Kelegian, Jr. formed Kelco Gaming, LLC ("Kelco"), in which he had a one-percent-ownership share, and his wife had a ninety-nine-percent-ownership share.   In full transparency, he informed the California Bureau of Gambling Control of his intent to apply for a one-percent-ownership share in Kelco.

56.     Nonetheless, the California Bureau of Gambling Control found that he was in violation of the one-percent ownership prohibition for interests in out-of-state casinos due to California's marital property rules which, as a matter of law, rendered his indirect interest in Kelco to be vastly in excess of one percent.

57.     As a result of administrative proceedings commenced against him regarding his involvement with Kelco, Mr. Kelegian, Jr. paid $210,000 in fines and assessments and was required to refrain from any and all investment in out-of-state casino-style gambling facilities.   He immediately divested himself of his one-percent-ownership interest in Kelco.   Although his California cardroom licenses were at risk, in recognition of numerous testimonials attesting to Mr. Kelegian, Jr.'s reputation and integrity within the gambling industry, the administrative law judge recommended approving his license renewal applications.   (A true and correct copy of the administrative law judge's proposed decision, which was adopted in full, is attached hereto as Exhibit F.)

## CLAIMS

**Count 1:**      **Declaratory relief, injunctive relief, and attorneys' fees and costs because Section 19858 violates the dormant Commerce Clause facially and as applied to Plaintiffs.**

58.    Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

59.    The rights enforceable by 42 U.S.C. § 1983 include, among the rights guaranteed by the United States Constitution, the right to be free from discriminatory state action that violates the Commerce Clause, Article I, Section 8 of the United States Constitution.

60.    In particular, Section 19858 violates the dormant Commerce Clause of the United States Constitution because it directly regulates and discriminates against interstate commerce, and/or favors in-state economic interests over out-of-state interests by:

    a.    mandating extraterritorial application of a penal law, Penal Law 330, on out-of-state transactions and entities that are otherwise lawful under the laws of other states, if those transactions or entities have any financial involvement with California cardrooms;

    b.    prohibiting and interfering with the flow of investments across state lines by restricting the opportunities of nonresidents to invest their money in California businesses and by restricting the opportunities of

residents to invest their money in out-of-state businesses which are

lawfully operating under the laws of the state in which they are located;

and

c.    protecting California's residents from out-of-state competitors by

creating a barrier to the entry of out-of-state competitors in the

California gaming industry.

61.    Alternatively, Section 19858 violates the dormant Commerce Clause of the

United States Constitution because California no longer has a legitimate interest in

enforcement of Section 19858 and its burden on interstate commerce clearly exceeds

the necessary benefits.   Indeed, California has stated repeatedly that restricting

owners of out-of-state casinos from investing in the California gambling industry is

no longer needed to prevent crime because such entities are legitimate, often publicly

traded, and federally regulated.   *See* Exs. A, B, C.   Yet, the burden on interstate

commerce is considerable as discussed herein.

62.    Aside from these facial violations of the dormant Commerce Clause, Plaintiffs

have suffered particularized harm due to enforcement of Section 19858.   They have

turned down opportunities to invest in out-of-state casino-style gambling entities to

their financial detriment.   Indeed, Mr. Kelegian, Jr. was forced to liquidate his direct

and indirect ownership interests in an out-of-state casino-style gambling facility and

property ownership at a considerable financial loss for non-compliance with Section 19858.

63.     Moreover, under the doctrine of changed circumstances, Section 19858 should be struck because the original purpose of enactment—crime prevention—has been repeatedly recognized by California officials as unnecessary and outdated, thereby rendering the continued enforcement of Section 19858 irrational. *See* Exs. A, B, C, D.

64.     Defendants' actions taken under color of state law are actionable under 42 U.S.C. § 1983.  Plaintiffs are entitled to attorneys' fees and costs under 42 U.S.C. § 1988.

65.     Plaintiffs have presented this Court with a justiciable controversy.

**Count 2:     Declaratory relief, injunctive relief, and attorneys' fees and costs because Section 19858 violates the substantive Due Process Clause facially and as applied to Plaintiffs.**

66.     Plaintiffs incorporate by reference each and every paragraph above as though fully set forth herein.

67.     The rights enforceable by 42 U.S.C. § 1983 include, among the rights guaranteed by the United States Constitution, the right to be free from violations of the substantive Due Process Clause of the United States Constitution.

68.     Specifically, Plaintiffs have the right to pursue an occupation of their choosing.

69.   Plaintiffs possess California cardroom gaming licenses and, collectively, own and operate several cardrooms.

70.   Section 19858 bars Plaintiffs (and any individuals who wish to obtain a California cardroom gaming license) from engaging in the occupation of their choosing, if they also have an ownership interest in excess of one-percent in any out-of-state casino-style gambling entity, even though that casino operates in full compliance with the laws of the state of its location.

71.   Plaintiffs are unable to pursue the occupation of their choosing (which would include investment in out-of-state casino-style gambling entities) due to enforcement of Section 19858.

72.   Enforcement of Section 19858 is arbitrary and unreasonable because its enforcement and, indeed, its purpose, no longer has a substantial relationship to the public health, safety, morals, or general welfare of Californians, as recognized by California and its officials on numerous occasions.  *See* Exs. A, B, C, D.

73.   Moreover, under the doctrine of changed circumstances, Section 19858 should be struck because the original purpose of enactment—crime prevention—has been repeatedly recognized by California officials as unnecessary, thereby rendering the continued enforcement of Section 19858 irrational.  *See* Exs. A, B, C, D.

74.     Defendants' actions taken under color of state law are actionable under 42 U.S.C. § 1983.  Plaintiffs are entitled to attorneys' fees and costs under 42 U.S.C. § 1988.

75.     Plaintiffs have presented this Court with a justiciable controversy.

## PRAYER FOR RELIEF

WHEREFOR, Plaintiffs respectfully request this Honorable Court to grant relief to Plaintiffs and against Defendants as follows:

A.     Finding and declaring that Section 19858 (and Section 19858.5) violates the dormant Commerce Clause of the United States Constitution both facially and as applied;

B.     Finding and declaring that Section 19858 (and Section 19858.5) violates the substantive protections of the Due Process Clause both facially and as applied;

C.     Enjoining Defendants and their employees, agents, and representatives, as well as persons acting for or on their behalf, from enforcing Section 19858 (and Section 19858.5) against Plaintiffs or their interests;

D.     Awarding Plaintiffs their attorneys' fees and costs under 42 U.S.C. § 1988; and

E.     Awarding such further and additional relief that the Court deems just and proper.

1

Dated:  November 30, 2016        Respectfully submitted,

2

By:/s/Paul J. Cambria, Jr.

3

   Paul J. Cambria, Jr., Esq.

4

   Erin E. McCampbell, Esq.,
   Attorneys for Plaintiffs

5

   LARRY C. FLYNT,

6

   HAIG KELEGIAN, SR., and
   HAIG T. KELEGIAN, JR.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-25-
COMPLAINT