UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LARRY C. FLYNT; HAIG
KELEGIAN, SR.; HAIG T.
KELEGIAN, JR.,

          Plaintiffs,

     v.

STEPHANIE K. SHIMAZU, in her
official capacity as the
Director of the California
Department of Justice, Bureau
of Gambling Control, et al.,

          Defendants.

No.  2:16-cv-02831-JAM-EFB

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

    Larry Flynt, Haig Kelegian, Sr., and Haig Kelegian Jr. own
card clubs in California.  Flynt and the Kelegians want to
substantially invest in out-of-state casinos, but California law
prohibits them from owning more than a one-percent interest in
facilities that host casino-style gambling.  In 2016, Plaintiffs
challenged the constitutionality of this prohibition, arguing it
violates the Due Process Clause and the dormant commerce
doctrine.  Compl., ECF No. 1.  Plaintiffs have since abandoned
their due process claim.  See Flynt v. Shimazu, 940 F.3d 457, 460
n.2 (9th Cir. 2019)

1

1    This Court previously dismissed Plaintiffs' suit with
2  prejudice, finding the two-year statute of limitations barred
3  their claims.  Order Granting Defendants' Motion to Dismiss with
4  Prejudice, ECF No. 40.  The Ninth Circuit disagreed.  See Flynt,
5  940 F.3d at 462-63.  Adopting the Sixth and Seventh Circuit's
6  approach to the continuing violations doctrine, the Ninth Circuit
7  found that "the continued enforcement of a statute inflicts a
8  continuing or repeated harm" such that plaintiffs suffer a new
9  injury each time they abstain from prohibited conduct.  Id.
10  Applying this doctrine, the Ninth Circuit found Plaintiffs'
11  claims fell within the applicable limitations period.  See id.
12  462-63.

13    On remand, Defendants filed another motion to dismiss.[1]
14  Mot. to Dismiss ("Mot."), ECF No. 50.  Plaintiffs oppose the
15  motion.  Opp'n, ECF No. 51; see also Defs.' Reply, ECF No. 52.
16  For the reasons discussed below, the Court grants in part and
17  denies in part Defendants' motion to dismiss.  To the extent
18  that Plaintiffs' dormant commerce doctrine claims rest upon the
19  theory that California Business and Professions Code Sections
20  19858 and 19858.5 directly regulate or discriminate against
21  interstate commerce, the Court dismisses them without prejudice.
22  Plaintiffs lack standing to allege Sections 19858 and 19858.5
23  improperly discriminate against out-of-state investors.
24  Moreover, their allegations that these provisions directly
25  regulate interstate commerce fail as a matter of law.  Plaintiffs
26

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  scheduled for May 5, 2020.

2

do, however, adequately allege that Sections 19858 and 19858.5
indirectly regulate interstate commerce.  To the extent that
Plaintiffs' dormant commerce claims rests upon this theory of
liability, the Court denies Defendants' motion to dismiss.

I.   BACKGROUND

Subject to some restrictions, California permits in-state
gambling.  Specifically, it allows both residents and non-
residents to operate cardrooms.  Prospective cardroom owners must
obtain a California gambling license, and renew it every two
years, to operate within the state.  Cal. Bus. Prof. Code
§ 19876(a).  To avoid monetary and licensing penalties,
California cardroom licensees must comply with California
gambling laws.  This case arises at the intersection of three of
these state laws.

First, California prohibits cardrooms from engaging in
casino-like activities (e.g., blackjack, roulette, and other
house-banked or percentage games).  Cal. Penal Code § 330.
Second, California prohibits a person from "hold[ing] a state
gambling license to own a gambling establishment if," among other
things, he "has any financial interest in any business or
organization that is engaged in any form of gambling prohibited
by Section 330 of the Penal Code."  Cal. Bus. & Prof. Code
§ 19858(a).  This restriction applies to business investments
"within [and] without [the] state."  Id.  Finally, California
carves out a limited exception to § 19858's prohibition.  See
Cal. Bus. & Prof. Code § 19858.5.  Section 19858.5 allows
California cardroom licensees to hold up to a 1% financial
interest in entities that host gambling prohibited by California

3

1  law, so long as the gambling is legal in the state where it

2  occurs.

3      Flynt and the Kelegians are California residents who possess

4  state-issued gambling licenses to operate card clubs in

5  California.  First Amended Compl. ("FAC") ¶¶ 8-10, ECF No. 32.

6  Plaintiffs stand "ready, willing, and able to compete for the

7  opportunity to invest in and/or operate out of-state-casinos,"

8  but Sections 19858 and 19858.5 limit their ability to do so.  At

9  various points since 2014, Plaintiffs have declined otherwise

10  attractive business opportunities because the investments would

11  cost them their California gambling licenses.  FAC ¶ 4.

12                         II.   OPINION

13      To state a section 1983 claim, "a plaintiff must allege the

14  violation of a right secured by the Constitution and laws of the

15  United States, and must show that the alleged deprivation was

16  committed by a person acting under color of state law."  West v.

17  Atkins, 487 U.S. 42, 48 (1988).  Plaintiffs allege Defendants

18  violated their rights to be free from California's regulation of,

19  and discrimination against, interstate commerce.  FAC ¶ 5.

20  Defendants, however, maintain Plaintiffs failed to allege a

21  cognizable theory of liability under the dormant commerce

22  doctrine.  Mot. at 5-10.  Moreover, Defendants contend Kelegian,

23  Jr.'s failure to exhaust his state administrative remedies bars

24  his claim.  Mot. at 14-15.

25      A.   Exhaustion Requirement

26      California law provides that "[a]ny person aggrieved by a

27  final decision or order of the commission that limits,

28  conditions, suspends, or revokes any previously granted license"

                              4

1  may petition the Sacramento County Superior Court for review.

2  Cal. Bus. & Prof. § 19932(a).  "Under California law, exhaustion

3  of administrative remedies is a jurisdictional requirement and

4  'absent a clear indication of legislative intent [a court]

5  should refrain from inferring a statutory exemption from [the

6  State's] settled rule requiring exhaustion of administrative

7  remedies.'"  City of Oakland, Cal. v. Hotels.com LP, 572 F.3d

8  958, 961 (9th Cir. 2009).

9      In 2014, the California Bureau of Gambling Control found

10  that Kelegian, Jr. violated California's 1% rule.  FAC ¶¶ 69-70,

11  ECF No. 32.  As a result, Kelegian, Jr. had to pay $210,000 in

12  fines and assessments.  FAC ¶ 71.  Moreover, the state bureau

13  required him to "refrain from any and all investment in out-of-

14  state casino-style gambling facilities."  FAC ¶ 71.  Kelegian,

15  Jr. did not petition for review of this decision.

16      Defendants argue this failure to exhaust administrative

17  remedies precludes judicial review.  Mot. at 14-15.  Plaintiffs

18  disagree, arguing Defendants waived their exhaustion argument by

19  not raising it in their original motions to dismiss.  Opp'n at 6

20  n.5.  Neither argument controls.  Rather, it is well-established

21  that plaintiffs need not exhaust state administrative remedies

22  before initiating a section 1983 suit in federal court.  Knick

23  v. Township of Scott, Pennsylvania, 139 S. Ct. 2162, 2167-68

24  (2019) (citing Patsy v. Bd. of Regents of State of Fla., 457

25  U.S. 496, 501 (1982)).  The Court therefore declines to dismiss

26  Kelegian, Jr.'s claims on this ground.

27      B.   Dormant Commerce Doctrine

28      "The Commerce Clause of the United States Constitution

5

assigns to Congress the authority '[t]o regulate Commerce with foreign Nations, and among the several States.'"  Sam Francis Foundation v. Christies, Inc., 784 F.3d 1320, 1323 (quoting U.S. Const. art. I, § 8, cl. 3) (modifications in original).  This affirmative grant of authority to federal lawmakers contains an implied restriction on states' powers to regulate.  Id.  Courts refer to this limitation as either the dormant Commerce Clause or, more precisely, the dormant commerce doctrine.  See id.; United States v. Durham, 902 F.3d 1180, 1203 (10th Cir. 2018). Imposing the dormant commerce doctrine's limits on state regulation is necessary to "ensure that state autonomy over 'local needs' does not inhibit 'the overriding requirement of freedom for the national commerce.'"  Id. (quoting Great Atl. & Pac. Tea Co. v. Cottrell, 424 U.S. 366, 361 (1976)).

    The dormant commerce doctrine prohibits two types of state lawmaking: (1) direct regulation of interstate commerce and (2) discrimination against interstate commerce.  Daniels Sharpsmart, Inc. v. Smith ("Daniels"), 889 F.3d 608, 614 (9th Cir. 2018).  "If a state statute 'directly regulates or discriminates against interstate commerce, or . . . its effect is to favor in-state economic interests over out-of-state interests,' it is 'struck down . . . without further inquiry.'" Chinatown Neighborhood Ass'n v. Harris, 794 F.3d 1136, 1145 (9th Cir. 2015) (quoting Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573, 579 (1986)).

    If, however, a state statute "regulates evenhandedly" and "has only indirect effects on interstate commerce," courts proceed to ask whether those indirect effects "impose[] a

1   'significant burden on interstate commerce.'"   Id. at 1146.   If

2   not, Ninth Circuit precedent "preclude[s] any judicial

3   'assessment of the benefits of [a state] law[] and the  . . .

4   wisdom in adopting' it."   Id. (quoting Nat'l Ass'n of

5   Optometrists & Opticians v. Harris, 682 F.3d 1144, 1156 (9th

6   Cir. 2012)) (modifications in original).   But if the statue

7   imposes a "significant burden" on interstate commerce, courts

8   must weigh that burden against the law's intrastate benefits.

9   See Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).

10   Chinatown Neighborhood Ass'n, 794 F.3d at 1145-46.   A state law

11   will survive "Pike balancing" so long as the burden it imposes

12   on interstate commerce is not "clearly excessive in relation to

13   the putative local businesses."   Pike, 397 U.S. at 142.

14           1.   Discrimination Against Interstate Commerce

15       Within the context of the dormant commerce doctrine,

16   "discrimination simply means differential treatment of in-state

17   and out-of-state economic interests that benefits the former and

18   burdens the latter."   United Haulers Assoc., Inc. v. Oneida-

19   Herkimer Solid Waste Mgt. Auth., 550 U.S. 330, 338 (2007)

20   (internal quotations omitted).   A statutory scheme can

21   discriminate against out-of-state interests in three ways:

22   facially, purposefully, or in effect.   Nat'l Ass'n of

23   Optometrists & Opticians LensCrafters, Inc. v. Brown, 567 F.3d

24   521, 525 (9th Cir. 2009).   Although Plaintiffs contend an

25   earlier iteration of Section 19858 was discriminatory on its

26   face, they do not allege that the law in its current form is

27   facially discriminatory.   Correctly so.   California law

28   prohibits both residents and non-residents with California

7

cardroom licenses from owning more than a 1% interest in casino-style gambling entities.  Cal. Penal Code § 330; Cal. Bus & Prof. Code §§ 19858, 19858.5 The text of these provisions does not discriminate.

Plaintiffs do, however, argue that the purpose and effect of these laws are discriminatory.  See Opp'n at 9-11; FAC ¶¶ 3, 5.a, 6, 26, 29, 41, 44-45.  The complaint alleges that state officials, including former-Governor Gray Davis have said that Section 19858 was "primarily [] intended to prohibit out-of-state gambling interests from owning cardrooms in California." FAC ¶ 45.  Plaintiffs argue discovery will show that "the only businesses that would be interested in obtaining [California] cardroom licenses are indeed casinos."  Opp'n at 11.  If true, the laws serve as a barrier to all out-of-state competition with in-state cardrooms.  Id.  But this injury does not align with the injury Plaintiffs claim.

The standing doctrine's "'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 563 (1992) (quoting Sierra Club v. Morton, 405 U.S. 727, 734-735 (1972)). Plaintiffs are California residents with California gambling licenses.  Their alleged injury is that California law prevents them from substantially investing in out-of-state casinos while retaining their licenses.  See FAC ¶¶ 72, 75.  Plaintiffs are not out-of-state casinos barred from procuring a California gambling license and competing with local cardrooms.  They therefore lack standing to allege discrimination on an out-of-

8

1    state investor's behalf.  See Lujan, 504 U.S. at 563; see also

2    RK Ventures, Inc. v. City, 307 F.3d 1045, 1056 (9th Cir. 2002)

3    (addressing the issue of standing sua sponte).  To the extent

4    that Plaintiffs' dormant-commerce claim rests on this theory of

5    liability, the Court grants Defendants' motion to dismiss.

6                2.    Direct Regulation of Interstate Commerce

7         "Direct regulation [of interstate commerce] occurs when

8    state law directly affects transactions that take place across

9    state lines or entirely outside of the state's borders."

10   Daniels, 889 F.3d at 614.  States cannot enact laws that

11   "directly control[]" commerce occurring "wholly outside" the

12   state's boundaries.  Id. (quoting Healy v. Beer Inst., 491 U.S.

13   324, 336 (1989)).  State laws that regulate extraterritorially

14   are per se invalid under the dormant commerce doctrine,

15   "regardless of whether the statute's extraterritorial reach was

16   intended by the legislature."  Id.

17        In determining whether a state statute directly regulates

18   out-of-state business, "[t]he critical inquiry is whether the

19   practical effect of the regulation is to control conduct beyond

20   the boundaries of the state."  Healy, 491 U.S. at 336.

21   Plaintiffs contend their extraterritorial-regulation argument

22   directly mirrors the one recognized in Daniels, 889 F.3d at 615-

23   616.  Daniels addressed a medical waste handler's dormant

24   commerce challenge to the California Medical Waste Management

25   Act (MWMA).  Id. at 612. Plaintiff sought and obtained a

26   preliminary injunction against the Department's MWMA

27   enforcement.  Id. at 613.  The Ninth Circuit upheld the

28   injunction.  In doing so, it found Plaintiff was likely to

                                    9

1    succeed on his claim that the Department's extraterritorial

2    application of the MWMA violated the dormant commerce doctrine.

3    Id. at 615-616.

4        But Daniels is not a perfect match for this case.  In

5    Daniels, the Ninth Circuit found itself "faced with an attempt

6    to reach beyond the borders of California and control

7    transactions that occur wholly outside of the state after the

8    material in question . . . ha[d] been removed from the state."

9    Id. at 615.  Put simply: the state was regulating activity it

10   had no business regulating.  Sections 19858 and 19858.5 do not,

11   however, regulate conduct that is wholly unrelated to, or occurs

12   wholly outside of, the state.  These provisions regulate the

13   ownership of cardrooms within California's borders and prevent

14   illegal gambling interests from becoming too intertwined with

15   legal gambling operations.  These provisions have

16   extraterritorial effects, such as requiring Plaintiffs to

17   restructure out-of-state business deals or forego them entirely.

18   See FAC ¶¶ 49-77.  But extraterritorial effects do not render a

19   law per se invalid if those effects "result from a regulation of

20   in-state conduct."  Chinatown Neighborhood Ass'n, 794 F.3d at

21   1145-46 (collecting cases).  Sections 19858 and 19858.5's out-

22   of-state consequences flow from California's valid regulation of

23   its in-state cardrooms.

24       Plaintiffs argue this case differs from cases like

25   Chinatown Neighborhood Ass'n and Nat'l Ass'n of Optometrists &

26   Opticians LensCrafters, Inc. v. Brown where the Ninth Circuit

27   upheld state statutes with extraterritorial effects.  Opp'n at

28   8-9.  Specifically, they argue the laws upheld in those cases

1  did not bar California residents from going to another state and

2  engaging in business that was lawful outside California.  This

3  argument misgauges the scope of Sections 19858 and 19858.5.

4  Plaintiffs do not allege these provisions restrict all

5  California residents from investing in out-of-state casinos.

6  Nor do Plaintiffs allege these laws prevent all California

7  residents from owning casinos in states where casino-style

8  gambling is lawful. California law only restricts these business

9  practices when they intersect with the ownership or operation of

10  a card club located in California.

11      Finally, Plaintiffs argue Sections 19858 and 19858.5

12  impermissibly regulate wholly out-of-state conduct because "the

13  Statutes' effect is not only on the cardroom licensees, but

14  instead, applies to all of the licensee's partners, officers,

15  directors, and shareholders, regardless of their location."

16  Opp'n at 8 (citing FAC ¶¶ 26, 57-63) (emphasis in original).

17  The Court declines to address the merits of this argument.  To

18  sufficiently allege a facial challenge, a plaintiff "must

19  establish that no set of circumstances exist under which the Act

20  would be valid."  United States v. Salerno, 481 U.S. 739, 745

21  (1987).  Plaintiffs therefore had to allege Sections 19858 and

22  19858.5 directly regulated interstate commerce with respect to

23  licensees and non-licensees.  As previously discussed,

24  Plaintiffs fail to allege Sections 19858 and 19858.5 directly

25  regulate interstate commerce with respect to California cardroom

26  licensees.  The laws' application to non-licensees cannot, in

27  itself, revive Plaintiffs' facial challenge.  Nor can it serve

28  as the basis for an as-applied challenge.  Plaintiffs, as

11

1  licensees, lack standing to challenge Sections 19858 and 19858.5

2  on non-licensees' behalf.  <u>Lujan</u>, 504 U.S. at 563.

3      The Court finds Plaintiffs lack a cognizable legal theory

4  for their claim that Sections 19858 and 19858.5 directly

5  regulate interstate commerce.  To the extent that Plaintiffs'

6  dormant commerce claims rest upon a direct-regulation theory,

7  the Court grants Defendants' motion to dismiss.

8          3.   <u>Indirect Regulation of Interstate Commerce</u>

9      A state's evenhanded regulation of intrastate activity will

10  nonetheless violate the dormant commerce doctrine if its indirect

11  effects on interstate commerce impose a "significant burden" that

12  is "clearly excessive in relation to the putative local

13  benefits."  <u>Pike</u>, 397 U.S. at 142; <u>Nat'l Ass'n of Optometrists &</u>

14  <u>Opticians v. Harris</u>, 682 F.3d at 1156-57.

15      Plaintiffs allege Sections 19858 and 19858.5 impose a

16  significant burden on interstate commerce in two respects.

17  First, the State's 1% rule not only prevents Plaintiffs from

18  substantially investing in casino-style gambling; it also

19  prevents Plaintiffs from doing business with anyone who has

20  substantial investments in casino-style gambling.  FAC ¶ 83.  As

21  enforced, this restriction all but completely bars California

22  cardroom licensees from investing in out-of-state gambling

23  ventures.  Opp'n at 12-13.  Second, the laws restrict Plaintiffs'

24  ability to invest in businesses unrelated to gambling.  Flynt,

25  for example, owns an out-of-state "exotic dance establishment."

26  FAC ¶ 83.  If Flynt's business partner independently invests in a

27  Nevada casino, Flynt will have to divest his interest in the

28  dance club—even though the dance club itself does not host

1  gambling that is illegal under California law.  Id.  Plaintiffs

2  argue Sections 19858 and 19858.5's ability to regulate industries

3  unrelated to gambling adds to the significance of their burden on

4  interstate commerce.  Opp'n at 3.

5       Plaintiffs contend these burdens are "clearly excessive" in

6  relation to California's claimed interest in crime prevention—

7  namely because this interest no longer exists.  FAC ¶ 85.  They

8  allege state officials on both sides of the political spectrum

9  have repudiated the notion that Sections 19858 and 19858.5 are

10  still necessary to prevent crime.  FAC ¶¶ 39, 44-46.  That the

11  State has exempted various cardrooms from complying with the 1%

12  rule only further undermines this putative benefit.  See FAC

13  ¶¶ 28, 36, 40-41.  Defendants fail to illustrate how these

14  allegations are insufficient as a matter of law.  To the extent

15  that Plaintiffs' dormant commerce doctrine claims rest upon an

16  indirect-regulation theory of liability, the Court denies

17  Defendants' motion to dismiss.

18                        III.   ORDER

19       For the reasons set forth above, the Court GRANTS IN PART

20  and DENIES IN PART Defendants' motion to dismiss.  To the extent

21  that Plaintiffs' dormant commerce doctrine claims rest upon the

22  theory that Sections 19858 and 19858.5 directly regulate or

23  discriminate against interstate commerce, the Court DISMISSES

24  them WITHOUT PREJUDICE.  Plaintiffs lack standing to allege

25  Sections 19858 and 19858.5 improperly discriminate against out-

26  of-state investors.  Moreover, their allegations that these

27  provisions directly regulate interstate commerce fail as a matter

28  of law.  Plaintiffs do, however, adequately allege that Sections

                              13

1   19858 and 19858.5 indirectly regulate interstate commerce.  To

2   the extent that Plaintiffs' dormant commerce claims rests upon

3   this theory of liability, the Court DENIES Defendants' motion to

4   dismiss.

5        If Plaintiffs amend their complaint, they shall file an

6   Amended Complaint within twenty (20) days of this Order.

7   Defendants' responsive pleading is due twenty days thereafter.

8        IT IS SO ORDERED.

9   Dated: June 12, 2020

10

11   JOHN A. MENDEZ,
     UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28