1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   LARRY C. FLYNT; HAIG                 No.  2:16-cv-02831-JAM-JDP
     KELEGIAN, SR.; HAIG T.
12   KELEGIAN, JR.,

13              Plaintiffs,            **ORDER GRANTING IN PART AND**
                                       **DENYING IN PART DEFENDANTS'**
14        v.                           **MOTION TO DISMISS SECOND AMENDED**
                                       **COMPLAINT**
15   STEPHANIE K. SHIMAZU, in her
     official capacity as the
16   Director of the California
     Department of Justice, Bureau
17   of Gambling Control, et al.,

18              Defendants.

19

20        Larry Flynt, Haig Kelegian, Sr., and Haig Kelegian Jr.

21   ("Plaintiffs") own cardrooms in California.  Plaintiffs want to

22   substantially invest in out-of-state casinos, but California law

23   prohibits them from owning more than a 1% interest in facilities

24   that host casino-style gambling.  They challenge the

25   constitutionality of this prohibition, arguing it violates the

26   dormant commerce doctrine.  See generally Second Am. Compl.

27   ("SAC"), ECF NO. 57.  On August 6, 2020, Plaintiffs filed their

28   SAC.  Id.  In response, Defendants filed another motion to

                                    1

dismiss.[1]  Mot. to Dismiss ("Mot."), ECF No. 59.  The parties are certainly familiar with the procedural history leading up to this latest complaint and motion and it will not be repeated here.

For the reasons discussed below, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.


I.   BACKGROUND

Subject to some restrictions, California permits in-state gambling.  Specifically, it allows both residents and non-residents to operate cardrooms.  Prospective cardroom owners must obtain a California gambling license, and renew it every two years, to operate within the state.  Cal. Bus. Prof. Code § 19876(a).  To avoid monetary and licensing penalties, California cardroom licensees must comply with California gambling laws.  This case arises at the intersection of three of these state laws.

First, California prohibits cardrooms from engaging in casino-like activities (e.g., blackjack, roulette, and other house-banked or percentage games).  Cal. Penal Code § 330. Second, California prohibits a person from "hold[ing] a state gambling license to own a gambling establishment if," among other things, he "has any financial interest in any business or organization that is engaged in any form of gambling prohibited by Section 330 of the Penal Code."  Cal. Bus. & Prof. Code § 19858(a).  This restriction applies to business investments

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for October 13, 2020.

"within [and] without [the] state."  Id.  Finally, California

carves out a limited exception to § 19858's prohibition.  See

Cal. Bus. & Prof. Code § 19858.5.  Section 19858.5 allows

California cardroom licensees to hold up to a 1% financial

interest in entities that host gambling prohibited by California

law, so long as the gambling is legal in the state where it

occurs.

Plaintiffs are California residents who possess state-issued

gambling licenses to operate card clubs in California.  SAC ¶¶ 7-

9.  Plaintiffs stand "ready, willing, and able to compete for the

opportunity to invest in and/or operate out of-state-casinos,"

but §§ 19858 and 19858.5 limit their ability to do so.  SAC ¶ 4.

On various occasions, Plaintiffs have declined, or divested

themselves from, otherwise attractive business opportunities

because the investments would cost them their California gambling

licenses.  SAC ¶¶ 55, 58, 68, 69, 72-75.

In addition, Flynt modified his ownership interest in a

Nevada-based exotic dance establishment because the majority

owner might introduce gambling there.  SAC ¶¶ 61-64.  If the

majority owner decides to either introduce gambling, or

independently invest in casino-style gambling, Flynt will be

required to relinquish his ownership rights entirely.  SAC ¶¶ 65-

66.


II.  OPINION

To state a § 1983 claim, "a plaintiff must allege the

violation of a right secured by the Constitution and laws of the

United States, and must show that the alleged deprivation was

3

committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  Plaintiffs allege §§ 19858 and 19858.5 violate the dormant Commerce Clause of the United States Constitution because they: (1) amount to direct regulation of transactions and business relationships occurring entirely outside of California; (2) prohibit cardroom licensees from interstate investment in out-of-state ventures; and (3) excessively burden interstate commerce.  SAC ¶ 5. Defendants, however, maintain Plaintiffs fail to allege a cognizable theory of liability under the dormant commerce doctrine.  Mot. at 5-14.

A.   Dormant Commerce Doctrine

"The Commerce Clause of the United States Constitution assigns to Congress the authority '[t]o regulate Commerce with foreign Nations, and among the several States.'"  Sam Francis Foundation v. Christies, Inc., 784 F.3d 1320, 1323 (quoting U.S. Const. art. I, § 8, cl. 3) (modifications in original).  This affirmative grant of authority to federal lawmakers contains an implied restriction on states' powers to regulate.  Id.  Courts refer to this limitation as either the dormant Commerce Clause or, more precisely, the dormant commerce doctrine.  See id.; United States v. Durham, 902 F.3d 1180, 1203 (10th Cir. 2018). Imposing the dormant commerce doctrine's limits on state regulation is necessary to "ensure that state autonomy over 'local needs' does not inhibit 'the overriding requirement of freedom for the national commerce.'"  Id. (quoting Great Atl. & Pac. Tea Co. v. Cottrell, 424 U.S. 366, 361 (1976)).

The dormant commerce clause doctrine prohibits two types of

4

state lawmaking: (1) direct regulation of interstate commerce and (2) discrimination against interstate commerce. <u>Daniels Sharpsmart, Inc. v. Smith</u> ("<u>Daniels</u>"), 889 F.3d 608, 614 (9th Cir. 2018). "If a state statute 'directly regulates or discriminates against interstate commerce, or . . . its effect is to favor in-state economic interests over out-of-state interests,' it is 'struck down . . . without further inquiry.'" <u>Chinatown Neighborhood Ass'n v. Harris</u>, 794 F.3d 1136, 1145 (9th Cir. 2015) (quoting <u>Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.</u>, 476 U.S. 573, 579 (1986)).

If, however, a state statute "regulates evenhandedly" and "has only indirect effects on interstate commerce," courts proceed to ask whether those indirect effects "impose[] a 'significant burden on interstate commerce.'" <u>Id.</u> at 1146. If not, Ninth Circuit precedent "preclude[s] any judicial 'assessment of the benefits of [a state] law[] and the . . . wisdom in adopting' it." <u>Id.</u> (quoting <u>Nat'l Ass'n of Optometrists & Opticians v. Harris</u>, 682 F.3d 1144, 1156 (9th Cir. 2012)) (modifications in original). But if the statue imposes a "significant burden" on interstate commerce, courts must weigh that burden against the law's intrastate benefits. <u>See</u> <u>Pike v. Bruce Church, Inc.</u>, 397 U.S. 137, 142 (1970). <u>Chinatown Neighborhood Ass'n</u>, 794 F.3d at 1145-46. A state law will survive "<u>Pike</u> balancing" so long as the burden it imposes on interstate commerce is not "clearly excessive in relation to the putative local businesses." <u>Pike</u>, 397 U.S. at 142.

    1.   <u>Section 19858's Applicability</u>

        As an initial matter, Defendants contest Plaintiffs'

description of § 19858(a)'s reach.  Mot. at 5-7.  Throughout the
SAC, Plaintiffs claim the statute prevents them from entering a
business relationship with any individual or entity that has a
more than 1% interest in a gambling operation prohibited in
California, even if that business relationship is not connected
to that gambling operation.  See SAC ¶¶ 4, 25-26, 66-67, 82, 86,
93, 95, 105.  Defendants argue this interpretation of the
statute is too broad and that, instead, it "applies only to
licensees and applicants for a license, and partners, officers,
directors, or shareholders in the business entity that holds or
is applying for a license."  Mot. at 5.

There is no existing caselaw describing § 19858(a)'s reach.
The statute's legislative history is similarly unhelpful.  Thus,
the analysis of this statute begins and ends with its plain
language.  Section 19858(a) prohibits a person from "hold[ing] a
state gambling license" if "the person, or any partner, officer,
director, or shareholder of the person, has any financial
interest in any business or organization that is engaged in any
form of gambling prohibited by Section 330 of the Penal Code,"
whether inside or outside of California.  Cal. Bus. & Prof. Code
§ 19858(a).  Section 19805(ae) describes a "person" as a
"natural person, corporation, partnership, limited partnership,
trust, joint venture, association, or any other business
organization."  Cal. Bus. & Prof. Code § 19805(ae).

Defendants argue that, because "person" is defined to
include business entities, § 19858(a) only applies to
individuals, entities, and their partners who apply for or hold
California cardroom licenses.  Mot. at 6.  As such, § 19858(a)

1   does not apply to any individuals or entities that are not

2   applying for, or that do not hold, a California cardroom

3   license.  Id.  While this more conservative application

4   intuitively makes sense, Defendants' reasoning is not

5   persuasive.

6       The provision deems a person unsuitable to hold a state

7   gambling license if the person, "or any partner, officer,

8   director, or shareholder or the person, has any financial

9   interest" in an organization engaged in prohibited gambling.

10  Cal. Bus. & Prof. Code § 19858(a) (emphasis added).  "Any" means

11  "every."  Merriam-Webster Dictionary, https://www.merriam-

12  webster.com/dictionary/any, (accessed Jan. 6, 2021).  It is used

13  to indicate one selected without restriction.  Id.  Its use here

14  suggests that a person applying for, or holding, a gambling

15  license in California cannot have a business affiliation with

16  any person or entity that has gambling interests prohibited in

17  California.  This could, theoretically, prohibit a licensee from

18  forming a business partnership, unrelated to gambling, with a

19  person who has interests in a casino.

20      Thus, the scope of § 19858(a)'s applicability is left

21  somewhat uncertain.  Defendants argue its reach is limited.  But

22  its plain text is not so restrictive.  The language of the

23  provision itself cannot be ignored.  TRW Inc. v. Andrews, 534

24  U.S. 19, 31 (2001) ("It is a cardinal principle of statutory

25  construction that a statute ought, upon the whole, to be so

26  construed that, if it can be prevented, no clause, sentence, or

27  word, shall be superfluous, void, or insignificant.") (internal

28  quotation marks and citations omitted).  Accordingly, the Court

1   declines to follow the narrow applicability of § 19858(a)

2   requested by Defendants.  The subsequent analysis is conducted

3   with the provision's broader reach in mind.

4         2.    Direct Regulation of Interstate Commerce

5       "Direct regulation [of interstate commerce] occurs when

6   state law directly affects transactions that take place across

7   state lines or entirely outside of the state's borders."

8   Daniels, 889 F.3d at 614.  States cannot enact laws that

9   "directly control[]" commerce occurring "wholly outside" the

10  state's boundaries.   Id. (quoting Healy v. Beer Inst., 491 U.S.

11  324, 336 (1989)).  State laws that regulate extraterritorially

12  are per se invalid under the dormant commerce doctrine,

13  "regardless of whether the statute's extraterritorial reach was

14  intended by the legislature."  Id.  In determining whether a

15  state statute directly regulates out-of-state business, "[t]he

16  critical inquiry is whether the practical effect of the

17  regulation is to control conduct beyond the boundaries of the

18  state."  Healy, 491 U.S. at 336.

19      Counts One and Two of Plaintiffs' SAC are, in effect,

20  repeat extraterritorial regulation claims.[2]  See SAC ¶¶ 83-88.

21  Count One alleges § 19858 violates the dormant Commerce Clause

22  because it "directly regulates transactions occurring wholly

23  outside of California" by "prohibit[ing] and interfer[ing] with

24  transactions . . . that have nothing to do with in-state

25  cardrooms."  SAC ¶¶ 85, 86 (emphasis added).  Count Two alleges

26

27  [2] Plaintiffs have clarified that Counts One and Two of their SAC
    are not discrimination claims.  See Opp'n at 8 n.6.  As such, the
    Court need not address Defendants' arguments at pages 10-12 of

28  their motion.

§ 19858 "restrict[s] the opportunities of cardroom licenses to invest their money in <u>out-of-state</u> businesses." SAC ¶ 93 (emphasis added).  These allegations of direct regulation are not substantively different from those raised in Plaintiffs' first amended complaint. <u>See</u> First Amended Complaint ("FAC"), ECF No. 32.  There, Plaintiffs alleged § 19858 "mandate[s] extraterritorial application of [California Penal Code § 330]" onto "out-of-state transactions and entities."  FAC ¶ 80.  The FAC also alleged § 19858 prevents residents from "invest[ing] their money in out-of-state businesses."  <u>Id.</u>  For this reason, the Court's prior analysis of Plaintiffs' direct regulation-based dormant commerce claims still stands.

Plaintiffs, as before, hinge their extraterritorial-regulation argument on <u>Daniels</u>, 889 F.3d at 615-616.  <u>See</u> Opp'n at 9-10.  This is misguided.  In <u>Daniels</u>, California used the Medical Waste Management Act to "attempt to reach beyond the borders of California and control transactions that occur wholly outside of the state after the [medical waste] . . . ha[d] been removed from the state."  <u>Daniels</u>, 889 F.3d at 615.  There, the state tried to use its own law to regulate the way medical waste was being disposed of in other states.  Not so here.

Sections 19858 and 19858.5 do not regulate conduct that is wholly unrelated to, or occurs wholly outside of, the state.  As previously explained, these provisions regulate the ownership of cardrooms within California and prevent illegal gambling interests from becoming too intertwined with legal gambling operations.  These provisions have extraterritorial effects, such as requiring Plaintiffs to restructure out-of-state

1  business deals or forego them entirely.  <u>See</u> SAC ¶¶ 55, 58, 61-

2  66, 68, 69, 72-75.  But extraterritorial effects do not render a

3  law per se invalid if those effects "result from a regulation of

4  in-state conduct."  <u>Chinatown Neighborhood Ass'n</u>, 794 F.3d at

5  1145-46 (collecting cases).  Sections 19858 and 19858.5's out-

6  of-state consequences flow from California's valid regulation of

7  its in-state cardrooms.

8      The Court finds Plaintiffs lack a cognizable legal theory

9  for their claim that §§ 19858 and 19858.5 directly regulate

10  interstate commerce.  Counts One and Two of Plaintiffs' SAC are

11  dismissed.

12          3.   <u>Indirect Regulation of Interstate Commerce</u>

13      A state's evenhanded regulation of intrastate activity will

14  nonetheless violate the dormant commerce doctrine if its indirect

15  effects on interstate commerce impose a "significant burden" that

16  is "clearly excessive in relation to the putative local

17  benefits."  <u>Pike</u>, 397 U.S. at 142; <u>Nat'l Ass'n of Optometrists &</u>

18  <u>Opticians v. Harris</u>, 682 F.3d at 1156-57.

19      Plaintiffs allege §§ 19858 and 19858.5 impose a significant

20  burden on interstate commerce not only by preventing Plaintiffs

21  from substantially investing in casino-style gambling, but also

22  by preventing, or significantly curtailing, Plaintiffs from doing

23  business with anyone who has substantial investments in casino-

24  style gambling.  <u>See</u> SAC ¶¶ 25-26, 66-67.  As is allegedly the

25  case with Flynt and his business partner and majority owner of

26  the Nevada-based exotic dance establishment.  SAC ¶¶ 66-67, 105.

27  Plaintiffs allege that, if Flynt's business partner decides to

28  independently invest in a casino, Flynt will have to divest his

1   interest in the dance club.  Id.  Based on the Court's analysis

2   of the plain language of § 19858, this might be necessary.

3        Plaintiffs argue §§ 19858 and 19858.5's ability to regulate

4   industries unrelated to gambling adds to the significance of

5   their burden on interstate commerce.  Opp'n at 15.  Plaintiffs

6   contend these burdens are "clearly excessive" in relation to

7   California's claimed interest in crime prevention—namely because

8   this interest no longer exists.  SAC ¶¶ 99, 102.  They allege

9   state officials on both sides of the political spectrum have

10  repudiated the notion that §§ 19858 and 19858.5 are still

11  necessary to prevent crime.  SAC ¶¶ 34-41, 45, 48-52, 100.  That

12  the state has exempted various cardrooms from complying with the

13  1% rule only further undermines this putative benefit.  See SAC

14  ¶¶ 43, 45, 100.

15       Defendants again fail to illustrate how these allegations

16  are insufficient as a matter of law.  The Court denies

17  Defendants' motion to dismiss Count Three of Plaintiffs' SAC.

18       B.   Leave to Amend

19       Plaintiffs request leave to amend any portion of the SAC

20  deemed deficient.  See Opp'n at 15.  The Court need not grant

21  leave to amend where amendment would be futile.  Deveraturda v.

22  Globe Aviation Sec. Servs., 454 F.3d 1043, 1049 (9th Cir. 2006).

23  Plaintiffs have amended their complaint twice.  They have,

24  nonetheless, failed to present a cognizable legal theory in

25  support of their claim that §§ 19858 and 19858.5 directly

26  regulate interstate commerce.  Amendment, at this point, would be

27  futile.  Accordingly, dismissal of Counts One and Two with

28  prejudice is appropriate.  Plaintiffs' request for leave to amend

is DENIED.

### III.   ORDER

For the reasons set forth above, Counts One and Two of Plaintiff's SAC are DISMISSED WITH PREJUDICE.  Defendants' motion to dismiss Count Three is DENIED.

IT IS SO ORDERED.

Dated:  January 13, 2021

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE