PAUL J. CAMBRIA, JR.  (State Bar No. 177957)
ERIN MCCAMPBELL PARIS (*pro hac vice*)
    pcambria@lglaw.com
    emccampbell@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware, Suite 120
Buffalo, New York 14202-3924
Telephone: (716) 849-1333

*Attorneys for Plaintiffs*
*Elizabeth Flynt, Haig Kelegian, Sr.,*
*and Haig T. Kelegian, Jr.*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO BRANCH

ELIZABETH FLYNT, HAIG KELEGIAN, SR., and HAIG T. KELEGIAN, JR.,

               Plaintiffs,

vs.

ROB BONTA, in his official capacity as Attorney General of the State of California; NATHAN DaVALLE, in his official capacity as the Acting Director of the California Department of Justice, Bureau of Gambling Control; PAULA D. LaBRIE, in her official capacity as Chair of the California Gambling Control Commission; ERIC C. HEINS, in his official capacity as Commissioner of the California Gambling Control Commission; EDWARD YEE, in his official capacity as Commissioner of the California Gambling Control Commission, CATHLEEN GALGIANI, in her official capacity as Commissioner of the California Gambling Control Commission; WILLIAM LIU, in his official capacity as Commissioner of the California Gambling Control Commission,

               Defendants.

CIVIL CASE NO. 16-CV-02831-JAM-EFB

**DECLARATION OF HAIG KELEGIAN, SR. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, PERMANENT INJUNCTION, DECLARATORY JUDGMENT**

**DECLARATION OF HAIG KELEGIAN, SR.**

## **DECLARATION OF HAIG KELEGIAN, SR.**

I, Haig Kelegian, Sr., hereby declare and state:

1.     I am a California resident and am over the age of eighteen. I have personal and first-hand knowledge of the facts set forth herein, and if called upon to testify, I could and would competently testify to the following.

2.     I applied for and was issued California cardroom licenses due to my ownership interests in cardrooms such as Crystal Casino, The Bicycle Hotel and Casino, The Commerce Hotel and Casino, Ocean's Eleven Casino and Club One Casino.

3.     As a cardroom licensee, I have sought to use my expertise and to expand my gambling interests beyond California cardrooms, but those interests have been thwarted by California Business and Professional Code Sections 19858 and 19858.5 (the "Statutes"). Under the Statutes, I, like all cardroom licensees, cannot possess more than a one percent interest in any casino located outside the State of California, even when the casino operates within full compliance of the laws of the state or country where located.

4.     Further, because this prohibition on investment extends to "any partner, officer, director, or shareholder" of mine, *see* Section 19858(a), it impacts my investments and associations on matters that do not concern gambling.

5.     First, I have been unable to pursue investments or interests in out-of-state casinos that operate lawfully where located. Although I am frequently offered the opportunity to make such investments, after conducting due diligence, and determining that one or more of these opportunities presented a worthwhile investment and acquisition, based on the information that was provided about the investment during the preliminary stages of the negotiations, I concluded that the unlawful restrictions imposed by Section 19858 blocked the investment because I could either acquire only a one-percent ownership interest in those out-of-state casinos or obtain a greater interest, and risk losing the California cardroom licenses.

6. For example, in Las Vegas, Nevada, alone, from 2015 through 2016, six casinos posted sales announcements soliciting bids, most of which have resulted in the execution of sales agreements or agreements in principle. These casinos include: Palms Casino, Aliante Casino, Cannery Casino, Tropicana Casino, Las Vegas Club Casino, and Hooters Casino.

7. I, in conjunction with other investors, would have bid on these sales. Instead, I (and all of my business partners) were forced to sit on the sidelines during these publicly announced investment opportunities, lest I forfeit my California cardroom licenses, which I am unwilling to do, due to the ownership restriction mandated under Section 19858 (and Section 19858.5).

8. Indeed, the Statutes imposed a barrier to each of these opportunities.

9. Casinos have and continue to routinely post sales announcements, which I am forced to decline to pursue.

10. At this time, I remain eager to explore acquiring lawfully operated out-of-state casino-style gambling businesses; however, I remain unable to make an offer to purchase any of those entities in excess of a one-percent ownership investment without either being in violation of Section 19858 or surrendering the California cardroom gambling licenses, which I would be otherwise forced to do. I am precluded from investing in out-of-state casino-style gambling entities, even though such investment opportunities regularly become available and I would otherwise pursue such investments.

11. Critically, with respect to each such opportunity, the casino at issue operates lawfully in the jurisdiction where located. Consequently, the Statutes bar licensees, like me, from using their expertise to make investments or form associations with lawful out-of-state business enterprises.

12. Similarly, individuals who hold an interest in out-of-state casinos are prohibited from investing in my cardrooms. Thus, my businesses are unable to take advantage of out-of-

**DECLARATION OF HAIG KELEGIAN, SR.**

state investments and associations with those with knowledge and expertise in the gambling industry.

13. Further, I am prohibited from purchasing more than 1% of stock (on my own or as part of a joint venture) in publicly traded companies that are licensed as casino operators, such as Wynn Resort or Sands, mega-casinos that are regulated by the state where they operate, and subject to extensive federal regulations pertaining to publicly-traded companies.

14. Moreover, because I must be wary to prevent forming any associations with "any partner, officer, director, or shareholder" who has more than a one-percent interest in a casino (even when lawful where operating), *see* Section 19858(a), I must undergo extensive vetting of any potential business partners, whether related to gambling or not, which is costly and time-consuming.

15. Finally, the Statutes prohibit me from opening and operating an out-of-state casino that is 100% owned by me. This means that, in addition to being unable to invest in or associate with casinos operated by other individuals or entities, which purportedly could result in me becoming associated with organized crime, the Statutes prohibit me from owning and operating out-of-state casinos when I, alone, would be the sole owner and operator of the casino, which would result in ***no new associations with anyone whether within the gambling industry or not. Nor would such a scenario expand gambling within California.***

16. As a result of the Statutes, I have suffered and continue to suffer harm. My business and investment decisions are controlled by an unconstitutional restraint which violates my right to conduct business free from regulations that are inconsistent with and violate the dormant Commerce Clause.

17. The Statutes prohibit me from being able to use the expertise I have gained from my interests in California cardrooms and the California cardroom industry to pursue investments or interests in out-of-state casinos that operate lawfully where located in excess of one-percent.

**DECLARATION OF HAIG KELEGIAN, SR.**

18. Further, the Statutes have caused me to suffer financial losses; however, these losses are incalculable. Although I was offered numerous opportunities to invest in lawful out-of-state casinos, and began preliminary analysis of such opportunities, because I was forced to decline the opportunities prior to fully vetting them, due to the Statutes, any calculation as to the value of those investments would be speculative.

19. The ownership restrictions found in the Statutes have caused, and continue to cause me harm, even though California has other means of preventing cardroom licensees from associating with organized crime. For example, I was required to participate in an extensive and detailed application process to obtain my cardroom licenses and must submit a renewal application for each license every two years.

20. Further, California has enacted robust regulations of in-state gambling, through the Gambling Control Act, which allows California to prevent criminals from becoming involved in cardrooms as employees, owners, or patrons. I am required to keep careful and detailed records, and to make them available for inspection upon request, which provides California with transparency as to the operation of my cardrooms. It is my understanding that the California Gambling Control Commission has the discretion to revoke or deny renewal of my licenses if I pose a threat to public health or safety, among other reasons.

21. Additionally, California has the ability to prosecute organized crime through myriad regulations that target the activities affiliated with organized crime, such as bribery, corruption, witness tampering, conspiracy, criminal profiteering, money laundering, fraud, embezzlement, and extortion.

22. Because these other regulations govern the operation of cardrooms, and I am subject to those regulations as a cardroom licensee, the ownership restrictions found in the Statutes do not provide any benefits to the State of California that it does not already have through these regulations, yet the Statutes violate my constitutional rights, interfere with my

investment and business opportunities, and have caused and will continue to cause untold financial harm.

23. Each day that the Statutes remain in effect, I am deprived of the right to pursue business and investment opportunities free from regulations that violate the dormant Commerce Clause, which is a violation of my rights.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
HAIG KELEGIAN, SR.