PAUL J. CAMBRIA, JR.  (State Bar No. 177957)
ERIN MCCAMPBELL PARIS (*pro hac vice*)
   pcambria@lglaw.com
   emccampbell@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware, Suite 120
Buffalo, New York 14202-3924
Telephone: (716) 849-1333

*Attorneys for Plaintiffs*
*Elizabeth Flynt, Haig Kelegian, Sr.,*
*and Haig T. Kelegian, Jr.*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO BRANCH

| | |
|---|---|
| ELIZABETH FLYNT, HAIG KELEGIAN, SR., and HAIG T. KELEGIAN, JR., <br><br>               Plaintiffs,<br><br>vs.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California; NATHAN DaVALLE, in his official capacity as the Acting Director of the California Department of Justice, Bureau of Gambling Control; PAULA D. LaBRIE, in her official capacity as Chair of the California Gambling Control Commission; ERIC C. HEINS, in his official capacity as Commissioner of the California Gambling Control Commission; EDWARD YEE, in his official capacity as Commissioner of the California Gambling Control Commission, CATHLEEN GALGIANI, in her official capacity as Commissioner of the California Gambling Control Commission; WILLIAM LIU, in his official capacity as Commissioner of the California Gambling Control Commission,<br><br>               Defendants. | CIVIL CASE NO. 16-CV-02831-JAM-EFB <br><br><br><br>**DECLARATION OF HAIG T. KELEGIAN, JR. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, PERMANENT INJUNCTION, DECLARATORY JUDGMENT** |

**DECLARATION OF HAIG T. KELEGIAN, JR.**

## DECLARATION OF HAIG T. KELEGIAN, JR.

I, Haig T. Kelegian, Jr., hereby declare and state:

1. I am a California resident and am over the age of eighteen. I have personal and first-hand knowledge of the facts set forth herein, and if called upon to testify, I could and would competently testify to the following.

2. I applied for and obtained California cardroom licenses due to my ownership interests in cardrooms such as Crystal Casino, The Bicycle Hotel & Casino, as well as Ocean's Eleven Casino.

3. I serve on the Board of Directors of the California Gaming Association, a trade group comprised of cardroom licensees that seeks to advocate for licensees, to improve the cardroom industry, to encourage policies that promote safe and fair gambling by patrons, and to create economic opportunities and partnerships with local communities.

4. I recently concluded a term on the Gambling Policy Advisory Committee which is established in statute for the purpose of discussing matters of controlled gambling regulatory policy and any other relevant gambling-related issues. Recommendations concerning gambling policy made by the Committee are presented to the California Gaming Control Commission in an advisory capacity.

5. As a cardroom licensee, I have sought to use my expertise and to expand my gambling interests beyond California cardrooms, but those interests have been thwarted by California Business and Professional Code Sections 19858 and 19858.5 (the "Statutes"). Under the Statutes, I, like all cardroom licensees, cannot possess more than a one percent interest in any casino located outside the State of California, even when the casino operates within full compliance of the laws of the state or country where located.

6. Further, because this prohibition on investment extends to "any partner, officer, director, or shareholder" of mine, *see* Section 19858(a), it impacts my investments and associations on matters that do not concern gambling.

DECLARATION OF HAIG T. KELEGIAN, JR.

7. First, I have been unable to pursue investments or interests in out-of-state casinos that operate lawfully where located. Although I am frequently offered the opportunity to make such investments, after conducting due diligence, and determining that one or more of these opportunities presented a worthwhile investment and acquisition, based on the information that was provided about the investment during the preliminary stages of the negotiations, I concluded that the unlawful restrictions imposed by Section 19858 blocked the investment because I could either acquire only a one-percent ownership interest in those out-of-state casinos or obtain a greater interest, and risk losing the California cardroom licenses.

8. For example, in Las Vegas, Nevada, alone, from 2015 through 2016, six casinos posted sales announcements soliciting bids, most of which have resulted in the execution of sales agreements or agreements in principle. These casinos include: Palms Casino, Aliante Casino, Cannery Casino, Tropicana Casino, Las Vegas Club Casino, and Hooters Casino.

9. I, in conjunction with other investors, would have bid on these sales. Instead, I (and all of my business partners) was forced to sit on the sidelines during these publicly announced investment opportunities, lest I forfeit my California cardroom licenses, which I am unwilling to do, due to the ownership restriction mandated under Section 19858 (and Section 19858.5).

10. Indeed, the Statutes imposed a barrier to each of these opportunities.

11. Casinos have and continue to routinely post sales announcements, which I am forced to decline to pursue.

12. At this time, I remain eager to explore acquiring lawfully operated out-of-state casino-style gambling businesses; however, I remain unable to make an offer to purchase any of those entities in excess of a one-percent ownership investment without either being in violation of Section 19858 or surrendering the California cardroom gambling licenses, which I would be otherwise forced to do. I am precluded from investing in out-of-state casino-style gambling

**DECLARATION OF HAIG T. KELEGIAN, JR.**

entities, even though such investment opportunities regularly become available and I would otherwise pursue such investments.

13. Critically, with respect to each such opportunity, the casino at issue operates lawfully in the jurisdiction where located. Consequently, the Statutes bar licensees, like me, from using their expertise to make investments in or form associations with lawful out-of-state business enterprises.

14. Similarly, individuals who hold an interest in out-of-state casinos are prohibited from investing in my cardrooms. Thus, my businesses are unable to take advantage of out-of-state investments and associations with those with knowledge and expertise in the gambling industry.

15. Further, I am prohibited from purchasing more than 1% of stock (on my own or as part of a joint venture) in publicly traded companies that are licensed as casino operators, such as Wynn Resort or Sands, mega-casinos that are regulated by the state where they operate, and subject to extensive federal regulations pertaining to publicly-traded companies.

16. Incredibly, I cannot invest revenue from non-gambling businesses that operate out-of-state in casinos that operate lawfully in those same states. For example, I am a co-owner of a restaurant located in Las Vegas, Nevada, that does not offer gambling of any kind. The revenue that I generate from this restaurant could be used to invest in casinos that operate lawfully in Nevada or elsewhere, but the Statutes prohibit me from using this revenue – which has no ties whatsoever to California – for such an investment.

17. Because I hold a minority interest in that restaurant venture, my investment in that non-gambling joint venture is in peril and unstable. If the other co-owners vote to add any form of gambling prohibited by California Penal Code § 330, or if just one member of the venture decides to invest in a casino in excess of one percent, I must divest from the joint venture at harm to my business relationships and investments outside of California.

**DECLARATION OF HAIG T. KELEGIAN, JR.**

18. Further, because I must be wary to prevent forming any associations with "any partner, officer, director, or shareholder" who has more than a one-percent interest in a casino (even when lawful where operating), *see* Section 19858(a), I must undergo extensive vetting of any potential business partners, whether related to gambling or not, which is costly and time-consuming.

19. Finally, the Statutes prohibit me from opening and operating an out-of-state casino that is 100% owned by me. This means that, in addition to being unable to invest in or associate with casinos operated by other individuals or entities, which purportedly could result in me becoming associated with organized crime, the Statutes prohibit me from owning and operating out-of-state casinos when I, alone, would be the sole owner and operator of the casino, which would result in **no new associations with anyone whether within the gambling industry or not**. **Nor would such a scenario expand gambling within California.**

20. Notably, the Statutes blocked an investment of mine that concerned no new associations with other individuals or entities. In 2010, I acquired real property in Seattle, Washington, through a bankruptcy sale, which contained, among other facilities, a vacant cardroom. In consultation with an attorney and a consultant who was a former member of the California Bureau of Gambling Control, I sought to open a casino-style gambling facility in Seattle, Washington, while at the same time remaining in compliance with California's gambling laws.

21. To that end, I formed Kelco Gaming, LLC ("Kelco"), in which I had a one-percent-ownership share, and my wife had a ninety-nine-percent-ownership share. In full transparency, I informed the California Bureau of Gambling Control of my intent to apply for a one-percent-ownership share in Kelco.

22. Nonetheless, the California Bureau of Gambling Control found that I was in violation of the one-percent ownership prohibition for interests in out-of-state casinos due to

California's marital property rules which, as a matter of law, rendered my indirect interest in Kelco to be vastly in excess of one percent.

23.    As a result of administrative proceedings commenced against me regarding my involvement with Kelco, I paid $210,000 in fines and assessments and was required to refrain from any and all investment in out-of-state casino-style gambling facilities.  My wife and I immediately divested ourselves of our interests in Kelco.  Although my California cardroom licenses were at risk, in recognition of numerous testimonials attesting to my reputation and integrity within the gambling industry, the administrative law judge recommended approving my license renewal applications, which was adopted by the California Gambling Control Commission.  (A true and correct copy of the June 12, 2014 Decision and Order of the California Gambling Control Commission (effective July 14, 2014) resolving the complaint against me is attached hereto as **Exhibit D**.)

24.    Critically, the Statutes barred me from participating in this lucrative investment even though the investment would have resulted in no new associations with any individuals or entities, let alone any individuals or entities affiliated with out-of-state casino ownership. Moreover, this investment would not have resulted in the expansion of gambling in any way in California because the casino at issue was located in the State of Washington.  Thus, neither of the purported justifications for the necessity of the Statutes were at issue here, yet the Statutes blocked this investment.

25.    At the time that California was penalizing me for pursuing this investment, purportedly to keep any influence of casino owners outside the State of California, and to prevent the expansion of gambling in California, the State of California also was ***allowing and authorizing tribal casinos to proliferate throughout California***.  Upon information and belief, either casino owners pose a threat to public safety or they do not, but it cannot be both.

26.    As a result of the Statutes, I have suffered and continue to suffer harm.  My business and investment decisions are controlled by an unconstitutional restraint which violates

my right to conduct business free from regulations that are inconsistent with and violate the dormant Commerce Clause.

27. The Statutes prohibit me from being able to use the expertise I have gained from my interests in California cardrooms and the California cardroom industry to pursue investments or interests in out-of-state casinos that operate lawfully where located in excess of one-percent.

28. Further, the Statutes have caused me to suffer financial losses; however, these losses are incalculable. Although I was offered numerous opportunities to invest in lawful out-of-state casinos, and began preliminary analysis of such opportunities, because I was forced to decline the opportunities prior to fully vetting them, due to the Statutes, any calculation as to the value of those investments would be speculative. The same is true with respect to the losses associated with the casino that would have been operated by Kelco because that venture was halted at the preliminary stages, before we had the opportunity to determine the size and scope of the casino.

29. The ownership restrictions found in the Statutes have caused, and continue to cause me harm, even though California has other means of preventing cardroom licensees from associating with organized crime. For example, I was required to participate in an extensive and detailed application process to obtain my cardroom licenses and must submit a renewal application for each license every two years.

30. Further, California has enacted robust regulations of in-state gambling, through the Gambling Control Act, which allows California to prevent criminals from becoming involved in cardrooms as employees, owners, or patrons. I am required to keep careful and detailed records, and to make them available for inspection upon request, which provides California with transparency as to the operation of my cardrooms. It is my understanding that the California Gambling Control Commission has the discretion to revoke or deny renewal of my licenses if I pose a threat to public health or safety, among other reasons.

**DECLARATION OF HAIG T. KELEGIAN, JR.**

31. Additionally, California has the ability to prosecute organized crime through myriad regulations that target the activities affiliated with organized crime, such as bribery, corruption, witness tampering, conspiracy, criminal profiteering, money laundering, fraud, embezzlement, and extortion.

32. Because these other regulations govern the operation of cardrooms, and I am subject to those regulations as a cardroom licensee, the ownership restrictions found in the Statutes do not provide any benefits to the State of California that it does not already have through these regulations, yet the Statutes violate my constitutional rights, interfere with my investment and business opportunities, and have caused and will continue to cause untold financial harm.

33. Each day that the Statutes remain in effect, I am deprived of the right to pursue business and investment opportunities free from regulations that violate the dormant Commerce Clause, which is a violation of my rights.

34. The Statutes have burdened and continue to burden interstate commerce. Gambling, although once taboo, is a legitimate, lawful, and regulated sector of the economy. California's gambling industry, including cardrooms, is a large, lawful, and regulated sector of the State economy. The California Gaming Association, of which I am a member and serve as a member of the Board of Directors, has commissioned studies into the economic impact of California's cardrooms on the surrounding communities, as well as other sectors of the economy. In 2013, the California Gaming Association commissioned a study by Beacon Economics, LLC, that found that, by 2011, cardrooms generated over $1.8 billion in economic output in California, with cardroom operations generating more than 22,000 jobs, $791 million in labor income for California's workers, and $273.1 million in tax revenue. (A true and correct copy of the 2013 Beacon Economics, LLC report, entitled, *2013 California Card Club Impact Study – An Examination of the Economic and Social Impact of Card Clubs in California*," is attached hereto

as **Exhibit E**, further, this report is published on the California Gambling Control Commissions website, available at: http://www.cgcc.ca.gov/documents/enabling/2013/Card_Room_Study.pdf).

35.   Since then, the California Gaming Association has determined that the economic impact of cardrooms in California has increased to more than $5.5 billion, labor income of approximately $1.6 billion, more than 32,000 jobs, and nearly $500 million in tax revenue. (A true and correct copy of the California Gaming Association's report prepared by John Dunham & Associates, entitled., *"The Cardroom Industry Economic Impact Study,"* published on October 28, 2019, is attached hereto as **Exhibit F**.)

36.   Upon information and belief, restraints that the Statutes impose on this ever-growing sector of the State and national economy should be declared unconstitutional and permanently enjoined.

37.   Moreover, since the passage of Proposition 1, the State has authorized the proliferation of casinos statewide on Tribal land. Upon information and belief, as a result of this change in the law, out-of-state casino owners have been allowed to enter the state to partner with tribal casinos. Upon information and belief, casino-operating Tribes have been allowed to invest in out-of-state casinos.

38.   Upon information and belief, these developments are in direct contravention of the plain language of the Statutes and the stated purposes of enactment of the Statutes.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this April 21, 2022 at Compton, California.

*[signature]*
HAIG T. KELEGIAN, JR.

**DECLARATION OF HAIG T. KELEGIAN, JR.**