# EXHIBIT D

# EXHIBIT D

BEFORE THE
GAMBLING CONTROL COMMISSION
STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Statement of Issues Against:<br><br>Haig Kelegian, Jr., partner, Ocean's Eleven Casino<br><br>Respondent. | OAH No. 201204331 |

DECISION AND ORDER OF THE COMMISSION:

The attached Proposed Decision of the Administrative Law Judge is hereby adopted by the State of California, Gambling Control Commission as its Decision in the above-entitled matter.

This Decision shall become effective on __July 14, 2014__.

Dated: _____   Signature: _____
                                             Richard J. Lopes, Chairman

Dated: _June 12, 2014_   Signature: _____
                                    Tiffany E. Conklin, Commissioner

Dated: _June 12, 2014_   Signature: _____
                                    Lauren Hammond, Commissioner

Dated: _6/12/2014_   Signature: _____
                                Richard Schuetz, Commissioner

BEFORE THE
CALIFORNIA GAMBLING COMMISSION
STATE OF CALIFORNIA

In the Matter of the
Statement of Issues Against:

HAIG KELEGIAN, JR., partner
OCEAN'S ELEVEN CASINO,

License No. GEOW-001222,

     Respondent.

Case No. BGC-HQ2011-00001

OAH No. 2012040331

## PROPOSED DECISION

  This matter, consolidated for hearing with case BGC-HQ2011-00007AL, Office of Administrative Hearings case number 2012040332, involving the same respondent and another property, came regularly for hearing before Samuel D. Reyes, Administrative Law Judge, Office of Administrative Hearings, on March 26, 2014, in Los Angeles, California.

  Ronald L. Diedrich, Deputy Attorney General, represented Complainant Wayne J. Quint, Jr., Chief, Bureau of Gambling Control (Bureau), Department of Justice, State of California.

  Craig Renetzky, Attorney at Law, represented Haig Kelegian, Jr. (Respondent), shareholder in the Crystal Casino & Hotel (Crystal Casino) and partner in the Ocean's Eleven Casino (Ocean's Eleven).

  Complainant denied Respondent's applications to renew his endorsements on the licenses held by Crystal Casino and Ocean's Eleven on the basis that Respondent had a partial ownership in an out-of-state gaming establishment. With the exception of the Fifth and Sixth Causes for Denial, Respondent stipulated to the underlying allegations and to the violations of law contained in the Statements of Issue, and presented evidence in mitigation and rehabilitation.

  Oral and documentary evidence, and evidence by written stipulation, was received at the hearing and the matter was submitted for decision.

## FACTUAL FINDINGS

1. Complainant filed the Statement of Issues on March 15, 2012 in his official capacity.

2. Ocean's Eleven is located at 8 Villa Coralle, Newport Coast, California. It is owned by Ocean's Eleven Casino General Partnership. The general partners are North County Gaming, Inc. and Ocean's 11 Casino, Inc. Respondent is a shareholder of Ocean's 11 Casino, Inc. and a trustee of the Haig Kelegian Grantor Trust No. 2, which is also a shareholder of Ocean's 11 Casino, Inc. Respondent is therefore required to be licensed under Business and Professions Code[1] sections 19851 and 19852 as a person with a financial interest in a gambling establishment.

3. On November 2, 2010, Respondent submitted an Application for a State Gambling License with the California Gambling Commission (Commission) to renew his endorsement, license number GEOW-001222, on the license for Ocean's Eleven, license number GEGE-000473. The application was denied at the Commission's meeting of August 25, 2011, and Respondent verbally requested a hearing on his renewal application. Respondent's license expired on August 31, 2011, but Respondent is allowed by law to continue to operate under his expired license pending the outcome of this matter.

4. On June 22, 2006, pursuant to a Stipulated Settlement in Lieu of Accusation, in the case of *In the Matter of Haig Kelegian, Jr., Shareholder in Ocean's 11, Inc.*, CGCC Case Number 2006-3, Respondent consented to pay a fine of $2,500 for having a financial interest in an out-of-state business that was engaged in house banking, a form of gambling prohibited by Penal Code section 330. In that case, Respondent held a financial interest in Celebrity Casinos LLC, doing business as Marilyn's On Monroe, a cardroom located in Spokane, Washington, that provided house-banked games, for which he had been granted a Washington State gambling license. The cardroom closed prior to December 2005.

5. Respondent has been involved in the gaming industry since 1997, when he acquired an interest in Ocean's Eleven. He acquired an ownership interest in Crystal Casino in 2006, and has been involved in every aspect of the business since then. He became Crystal Casino's chief financial officer in 2006 and its president in 2012. Respondent also has experience in the insurance business, but has not been trained as an attorney.

6. In 2010, Respondent acquired real property in a bankruptcy sale in Seattle, Washington. The property had a cardroom on it, and Respondent decided to let his wife operate it as a casino. He made his decision in order to provide for his wife in the event something

---

[1] Unless otherwise stated, all further references are to the Business and Professions Code.

happened to him since she had no interest in his other businesses. Respondent and his wife formed Kelco Gaming, LLC, doing business as Skyway Casino and Bowl (Kelco). He kept his interest in Kelco to one percent to comply with California gaming law. Respondent also lent Kelco $750,000.

7. Kelco applied for a gaming license to operate a casino on the property. Respondent had no direct involvement in any of the activities of the cardroom being developed, except for overseeing construction work on the building. Respondent's wife ran the day to day operations of the venture, with the assistance of Scott Walker, the casino manager and a person with experience in running gaming and food establishments in Washington. She named the business Lucky Dragonz Casino – Skyway (Lucky Dragonz). The casino opened in April 2011, and was closed about one month later.

8. Respondent was aware that he could not own more than one percent in any out-of-state gaming entity. As set forth in factual finding number 4, Respondent had been previously cited for having an ownership interest in an out-of-state gaming corporation, and he wanted to make sure there would be no problems with the Commission before moving forward with the Skyway project. He consulted his brother, Mark Kelegian (Kelegian), an attorney licensed to practice law in California and a person familiar with gaming laws in the State. Kelegian advised Respondent that so long as he did not own more than one percent of the Washington business he would be in compliance with California law.

9. a. Respondent also sought the advice of Elijah Zuniga (Zuniga), a gaming consultant and former Bureau employee. Zuniga reviewed the details of the proposed plan and told Respondent that there should not be a problem in California as long as he did not own more than one percent of the Washington casino. Zuniga suggested, out of an abundance of caution, that Respondent inform the Bureau about his plans.

b. Zuniga described Respondent as a reputable businessman, a person who wants to do everything right and who is not one to push the outer limits of what is legally permissible.

10. Respondent informed the Bureau of his plan to obtain a gaming license for the Lucky Dragonz. He sent a letter to the Bureau dated December 2, 2010, stating: "Please accept this letter as a courtesy to the [Bureau] informing you of my intention to apply for a one percent (1%) ownership (keeping within the requirements of the Gambling Control Act) in a licensed card room located in the State of Washington. . . ." (Exh. 14.)

11. As he conceded in his testimony, Kelegian provided incorrect advice to Respondent due to his lack of familiarity with community property law or the impact it would have on Respondent's interest in Kelco. By virtue of his interest in his wife's share of the business, Respondent's share of the business exceeded one percent.

3

12. a. At all times relevant, Lucky Dragonz was a gambling establishment that provided house-banked games in Seattle, Washington, which if located in California would have been operating in violation of Penal Code section 330.

b. At all times relevant, Lucky Dragonz also maintained and operated punchboard/pull-tab devices, commonly known as slot machines, which if operated in California would violate Penal Code sections 330, 330b, and 330c.

13. Respondent, as coowner of Kelco, indirectly had more than one percent financial/ownership interest in Lucky Dragonz at all relevant times.

14. Respondent, as an indirect owner, managing owner, and source of funding for Kelco, had control of Lucky Dragonz at all relevant times.

15. Respondent denied having any intent to violate California gaming laws, citing his due diligence efforts, including seeking and following the advice of counsel and of Zuniga. He was also open about his ownership interest in the two California casinos in his discussions with State of Washington licensing authorities, who appeared to be in contact with the Bureau.

16. It was not established, as alleged in the Fifth and Sixth Causes for Denial, that Respondent failed to fully disclose to the Bureau that he had engaged in or attempted to engage in out-of-state gambling activities that were unlawful in California.

17. When notified that his ownership interest in the Lucky Dragonz exceeded one percent, Respondent promptly divested himself of all interest in the Washington business.

18. Respondent's other business, Crystal Casino, is one of Compton's major employers and Respondent has supported community goals and activities over the years. In a letter dated March 25, 2014, Aja Brown, Mayor and Chair of the Compton Gaming Commission, wrote about Respondent's, and his family's, contributions to the City. As the Mayor wrote: "I have been impressed by his pride and concern for our community and have come to appreciate his vision for an even better operation at Crystal Casino; a vision that has Crystal Casino securely connected to the community around it. He has been responsive to our requests for support for community priorities and has shown himself to be a person of excellent integrity." (Exh. B, at p. 1.)

19. Respondent also submitted a letter of support from Isadore Hall, III (Hall), Assemblymember of the 64th District. Hall was in regular contact with Respondent from 2006 through 2008 while a member of the Compton City Council and has followed Respondent's activities in the community after that period. Assemblymember Hall described Respondent as helpful to the community and someone of the highest integrity and moral foundation.

20.     The Bureau has reasonably expended at least $30,000 in costs of investigation and prosecution in this matter.

## LEGAL CONCLUSIONS

1.      Cause exists to deny Respondent's application for renewal of his endorsement, license number GEOW-001222, on the license for Ocean's Eleven, pursuant to sections 19858, subdivision (a), and 19858.5 because he had a financial interest greater than one percent in another business that conducts lawful gambling outside the state that, if conducted within California, would be unlawful, by reason of factual finding numbers 6, 7, and 11 through 14.

2.      Cause does not exist to deny Respondent's application for renewal of his endorsement, license number GEOW-001222, on the license for Ocean's Eleven, pursuant to sections 19857, subdivisions (a) or (b), or 19859, subdivision (b), because it was not established that he failed to fully disclose his interest in the Lucky Dragonz, by reason of factual finding numbers 8 through 16.

3.      Cause exists to order Respondent to pay the Bureau's costs of investigation and prosecution in the sum of $30,000 pursuant to section 19930, subdivisions (d) and (f), by reason of factual finding number 20 and legal conclusion numbers 1 and 2.

4.      All evidence offered in support of and against continued licensure has been considered. While the violations are serious, there are mitigating circumstances. Respondent did not intend to mislead the Commission and, while ignorance of the law is no excuse, he performed due diligence research in connection with the matter of the ownership of the Lucky Dragonz. He has been in the industry for more than 15 years and only has one relatively minor prior citation. He contributes to the well-being of the local community and others attest to his integrity and good character. The order that follows is therefore necessary and sufficient for the protection of the public.

## ORDER

1.      The application of Respondent Haig Kelegian for renewal of his endorsement, license number GEOW-001222, on the license for Ocean's Eleven, license number GEGE-000473, is approved.

2.      Respondent Haig Kelegian shall pay the Bureau a fine in the total amount of $200,000; provided, $125,000 of the fine is stayed for five years on the following terms and conditions.

        a.      Respondent shall pay $75,000 to the Bureau within 30 calendar days of the effective date of the Commission's Decision in this matter.

b.  Respondent shall pay $30,000 to the Bureau as the treasonable costs of investigation and prosecution of this matter pursuant to section 19930. The entire $30,000 shall be due and payable to the Bureau within 30 calendar days of the effective date of the Commission's Decision in this matter.

c.  With respect to any business or organization that is engaged in any form of gambling prohibited by Penal Code section 330, whether in California or outside California, Respondent shall not engage in any of the following activities: (1) have, hold, possess, obtain, or attempt to obtain any financial interest, including a community property financial interest; (2) exercise any form of management or control; (3) provide any services; or (4) accept any form of employment. However, should sections 19858 and 19858.5 be amended, repealed or replaced so as to allow any person licensed pursuant to the California Gambling Control Act to lawfully have an unlimited financial interest in a business or organization that conducts lawful gambling outside of California that if conducted within California would be unlawful or prohibited by Penal Code section 330, then this term and condition shall cease to have any effect.

d.  Failure to comply with any of the foregoing conditions shall constitute grounds to discipline Respondent's license, and the Commission may, after notice and the opportunity to be heard, impose the stayed fine.

e.  If the Bureau initiates a disciplinary action regarding any of Respondent's licenses or recommends denial of any future application for licensure by Respondent, then the stay shall remain in effect until such an action or denial becomes final before the Commission or until Respondent's appeal rights have been exhausted through the superior court should Respondent choose to timely file an appeal pursuant to section 19932. The stayed $125,000 fine shall be due and payable in full to the Bureau within 30 calendar days of the date of the Commission's decision, unless Respondent appeals the Commission's decision to the superior court pursuant to section 19932. In that event, the stayed $125,000 shall be due and payable in full to the Bureau within 30 calendar days of the date of the superior court's decision denying Respondent's appeal in whole or in part. In the event Respondent is wholly successful in his appeal to the superior court and the matter is remanded to the Commission, the stay shall remain in effect until the subsequent decision issued by the Commission is final or the five years have successfully elapsed, whichever is longer.

DATED: 4/23/14

SAMUEL D. REYES
Administrative Law Judge
Office of Administrative Hearings

6