1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   SARA J. DRAKE, State Bar No. 102565
    Senior Assistant Attorney General
3   T. MICHELLE LAIRD, State Bar No. 162979
    Supervising Deputy Attorney General
4   JAMES G. WAIAN, State Bar No. 152084
    Deputy Attorney General
5     600 West Broadway, Suite 1800
      San Diego, CA 92101
6     P.O. Box 85266
      San Diego, CA 92186-5266
7     Telephone:  (619) 738-9335
      Fax:  (619) 645-2271
8     E-mail:  James.Waian@doj.ca.gov
    *Attorneys for Defendants*

9

10

11                  IN THE UNITED STATES DISTRICT COURT

12              FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14  **ELIZABETH FLYNT, HAIG KELEGIAN,**          2:16-cv-02831-JAM-JDP
    **SR., and HAIG T. KELEGIAN, JR.,**
15                                              **DEFENDANTS' NOTICE OF CROSS-**
                              Plaintiffs,        **MOTION AND CROSS-MOTION FOR**
16                                              **SUMMARY JUDGMENT;**
                                                **DEFENDANTS' MEMORANDUM OF**
17              v.                              **POINTS AND AUTHORITIES IN**
                                                **SUPPORT OF THEIR CROSS-MOTION**
18  **ROB BONTA, in his official capacity as**   **FOR SUMMARY JUDGMENT AND IN**
    **Attorney General of the State of California;** **OPPOSITION TO PLAINTIFFS'**
19  **YOLANDA MORROW, in her official**          **MOTION FOR SUMMARY JUDGMENT**
    **capacity as the Acting Director of the**
20  **California Department of Justice, Bureau of**
    **Gambling Control; PAULA D. LaBRIE, in**    Date:        June 28, 2022
21  **her official capacity as Chair of the**     Time:        10:00 a.m.
    **California Gambling Control Commission;**   Courtroom:   6
22  **ERIC C. HEINS, in his official capacity as** Judge:       The Honorable John A.
    **Commissioner of the California Gambling**               Mendez
23  **Control Commission; EDWARD YEE, in**        Trial Date:  November 14, 2022
    **his official capacity as Commissioner of the** Action Filed: November 30, 2016
24  **California Gambling Control Commission;**
    **CATHLEEN GALGIANI, in her official**
25  **capacity as Commissioner of the California**
    **Gambling Control Commission; WILLIAM**
26  **LIU, in his official capacity as**
    **Commissioner of the California Gambling**
27  **Control Commission,**

28                            Defendants.

**DEFENDANTS' NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR
SUMMARY JUDGMENT**

TO PLAINTIFFS ELIZABETH FLYNT, HAIG KELEGIAN, SR., AND HAIG T.
KELEGIAN, JR. (PLAINTIFFS), AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE
NOTICE that on June 28, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard in
Courtroom 6 of the above-captioned Court located at 501 I Street, Sacramento, California 95814,
Defendants Rob Bonta, in his official capacity as Attorney General of the State of California,
Yolanda Morrow, in her official capacity as Acting Director of the California Department of
Justice, Bureau of Gambling Control, Paula D. LaBrie, in her official capacity as Chair of the
California Gambling Control Commission, Eric C. Heins, in his official capacity as
Commissioner of the California Gambling Control Commission, Edward Yee, in his official
capacity as Commissioner of the California Gambling Control Commission, Cathleen Galgiani, in
her official capacity as Commissioner of the California Gambling Control Commission, and
William Liu, in his official capacity as Commissioner of the California Gambling Control
Commission, (Defendants), will move the Court for an Order granting summary judgment to
Defendants under Federal Rule of Civil Procedure 56(a), and entering final judgment in their
favor and against Plaintiffs on Count Three, the sole remaining cause of action in Plaintiffs' Third
Amended Complaint for Declaratory and Injunctive Relief, on the ground that there is no genuine
dispute as to any material facts and that:

1.      As matter of law, Plaintiffs have not and cannot establish a substantial burden on
interstate commerce caused by California Business and Professions Code sections 19858 and/or
19858.5 and, even if Plaintiffs could establish a substantial burden, as a matter of law, the
putative local benefits of California Business and Professions Code sections 19858 and 19858.5
outweigh any burden on commerce they may cause.

This cross-motion will be, and is, based on this notice, the accompanying memorandum of
points and authorities in support hereof, the concurrently filed Defendants' Statement of
Undisputed Material Facts, Defendants' Response to Plaintiffs' Separate Statement of Undisputed

1

Defs.' Not. of Cross-Mot. & Cross-Mot.; Mem. P. & A. in Supp. of Cross-Mot. Summ. J. & Opp. To Plfs.' Mot.
Summ. J. (2:16-cv-02831-JAM-JDP)

1   Material Facts, the Declaration of Stacey Luna Baxter, the Declaration of Yolanda Morrow, the

2   complete files and records of the Court in this action, and upon such other and further evidence as

3   the Court may entertain at the time of hearing.

4        This cross-motion is made following the meet and confer conference of counsel that took

5   place on April 6, 2022, in compliance with the Court's February 18, 2020 Status Order.

6

7   Dated:  May 31, 2022                       Respectfully Submitted,

8                                            ROB BONTA
     Attorney General of California
9                                          SARA J. DRAKE
     Senior Assistant Attorney General
10                                         T. MICHELLE LAIRD
     Supervising Deputy Attorney General
11

12                                         */s/* James G. Waian

13                                         JAMES G. WAIAN
     Deputy Attorney General
14                                         *Attorneys for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

Page

3
Defendants' Memorandum of Points and Authorities in Support of Their Cross-Motion for
Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment .................. 1

4
Introduction .................................................................................................................. 1

5
Narrative Statement of Facts ........................................................................................ 5

6
Legal Standard of Proof ................................................................................................ 5

7
Summary of Argument .................................................................................................. 6

Argument ...................................................................................................................... 7

8
    I.      Plaintiffs' Motion is Based Primarily on a Hypothetical Interpretation of

9
           the Statutes in a Way that They Have Not Been Applied ...................................... 8

    II.     Plaintiffs Have Failed To Establish that the Statutes Should Be Invalidated

10
           Under Pike ............................................................................................................ 11

11
           A.      Plaintiffs Have Not and Cannot Establish a Substantial Burden on
                      Interstate Commerce .................................................................................. 13

12
           B.      Plaintiffs Fail To Establish that Any Burden that the Statutes Might
                      Cause Is Clearly Excessive in Relation to the Putative Local

13
                      Benefits of the Statutes............................................................................. 20

Conclusion..................................................................................................................... 27

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

Alliant Energy Corporation v. Bie
    330 F.3d 904 (7th Cir. 2003) .................................................................. 17, 18

Association des Eleveurs de Canards et d'Oies du Quebec v. Harris
    729 F.3d 937 (9th Cir. 2013) ................................................................12, 13, 14

Association of California Insurance Companies v. Jones
    2 Cal.5th 376 (2017) ...................................................................................... 11

Barnes v. Glen Theatre, Incorporated
    501 U.S. 560 (1991)........................................................................................ 21

Benson v. Double Down Interactive, LLC
    527 F. Supp. 3d 1267 (W.D. Wash. 2021) ................................................4, 12, 14

Bernstein v. Virgin American, Incorporated
    3 F.4th 1127 (9th Cir. 2021) ......................................................................... 7, 15

Bibb v. Navajo Freight Lines, Incorporated
    359 U.S. 520 (1959)........................................................................................ 23

California v. Cabazon Band of Mission Indians
    480 U.S. 202 (1987)........................................................................................ 24

Californians for Political Reform Foundation v. Fair Political Practices
    Commission
    61 Cal.App.4th 472 (1998).............................................................................. 11

Chinatown Neighborhood Association v. Harris
    794 F.3d 1136 (9th Cir. 2015) .................................................................... 14, 19

CTS Corporation v. Dynamics Corporation. of America
    481 U.S. 69 (1987).......................................................................................... 21

Daniels Sharpsmart, Incorporated v. Smith
    889 F.3d 608 (9th Cir. 2018) ...................................................................... 17, 18

Department of Revenue of Kentucky v. Davis
    553 U.S. 328 (2008)..................................................................................... 7, 15

Deutsche Bank National Trust Company v. Old Republic Title Insurance Group,
    Incorporated
    532 F. Supp. 3d 1004 (D. Nev. 2021) .............................................................. 10

1
2

**<u>TABLE OF AUTHORITIES</u>**
(continued)

<u>Page</u>

3
4
*Edgar v. MITE Corporation*
    457 U.S. 624 (1982)...................................................................................... 23, 24

5
*Edwards v. Aguillard*
    482 U.S. 578 (1987)............................................................................................... 6

6
7
*Encompass Insurance Company v. Stone Mansion Restaurant Incorporated*
    902 F.3d 147 (3rd Cir. 2018) ............................................................................... 10

8
9
*Exxon Corporation v. Governor of Maryland*
    437 U.S. 117 (1978)......................................................................................... 2, 17

10
*Flynt v. Shimazu*
    No. 2:16-cv-02831-JAM-EFB, slip op. (E.D. Cal. June 15, 2020) ........................ 2

11
12
*Flynt v. Shimazu*
    No. 2:16-cv-02831-JAM-JDP, slip op. (E.D. Cal. January 14, 2021) .................... 2

13
14
*General Motors Corporation v. Tracy*
    519 U.S. 278 (1997)............................................................................................ 13

15
*Healy v. Beer Institute*
    491 U.S. 324 (1989)............................................................................................ 14

16
17
*Hunt v. Washington State Apple Advertising Commission*
    432 U.S. 333 (1977)............................................................................................ 24

18
19
*Huron Portland Cement Company v. City of Detroit, Michigan*
    362 U.S. 440 (1960)............................................................................................ 19

20
*Island Silver & Spice, Incorporated v. Islamorada*
    475 F. Supp. 2d 1281 (S.D. Fla. 2007) .............................................................. 24

21
22
*Lewis v. BT Investment Managers, Incorporated*
    447 U.S. 27 (1980).............................................................................................. 18

23
*Medigen of Kentucky, Inc. v. Public Services Commission of West Virginia*
    985 F.2d 164 (4th Cir. 1993) .............................................................................. 26

24
25
*Monarch Content Management LLC v. Arizona Department of Gaming*
    971 F.3d 1021 (9th Cir. 2020) ...........................................................4, 12, 13, 14

26
27
*National Association of Optometrists & Opticians LensCrafters, Incorporated v.*
   *Brown*
    567 F.3d 521 (9th Cir. 2009) ................................................................................ 2

28

iii

### TABLE OF AUTHORITIES
#### (continued)

**Page**

*National Association of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (9th Cir. 2012) ..................................................... *passim*

*National Pork Producers Council v. Ross*
    6 F.4th 1021 (9th Cir. 2021)............................................7, 13, 14, 20

*Northville Downs v. Granholm*
    622 F.3d 579 (6th Cir. 2010) ................................................................. 21

*Norwegian Cruise Line Holdings, Limited v. Rivkees*
    553 F. Supp. 3d 1143 (S.D. Fla. 2021) ....................................... 17, 18

*Pacific Northwest Venison Producers v. Smitch*
    20 F.3d 1008 (9th Cir. 1994)........................................................14, 19, 22

*Payne v. Fontenot*
    925 F. Supp. 414 (M.D. La. 1995)....................................................... 21

*Pharmaceutical Research and Manufacturers v. County of Alameda*
    768 F.3d 1037 (9th Cir. 2014) ............................................................ 20

*Pike v. Bruce Church, Incorporated*
    397 U.S. 137 (1970).................................................................... *passim*

*Raymond Motor Transportation, Incorporated v. Rice*
    434 U.S. 429 (1978)..................................................................... *passim*

*Rhode Island Chapter of National Women's Political Caucus, Incorporated v.*
    *Rhode Island Lottery Commission*
    609 F. Supp. 1403 (D. R.I. 1985) ....................................................... 21

*Rosenblatt v. City of Santa Monica*
    940 F.3d 439 (9th Cir. 2019)............................................................... 20

*Sam Francis Foundation v. Christies, Incorporated*
    784 F.3d 1320 (9th Cir. 2015) ............................................................ 17

*Shishido v. SIU-Pacific District-PMA Pension Plan*
    587 F. Supp. 112 (N.D. Cal. 1983) ...................................................... 6

*South Dakota v. Wayfair, Incorporated*
    138 S. Ct. 2080 (2018)................................................................ 7, 19

*Southern Pacific Company v. Arizona*
    325 U.S. 761 (1945)........................................................................... 25

### TABLE OF AUTHORITIES
#### (continued)

**Page**

*T.W. Electrical Service, Incorporated v. Pacific Electrical Contractors Association*
   809 F.2d 626 (9th Cir. 1987) ................................................................ 6

*Tennessee Wine and Spirits Retailers Association v. Thomas*
   139 S. Ct. 2449 (2019) ........................................................................ 14

*U & I Sanitation v. City of Columbus*
   205 F.3d 1063 (8th Cir. 2000) ............................................................. 25

*UFO Chuting of Hawaii, Incorporated v. Smith*
   508 F.3d 1189 (9th Cir. 2007) ............................................................. 21

*Union Pacific Railroad Company v. California Public Utilities Commission*
   346 F.3d 851 (9th Cir. 2003) ............................................................... 20

*United States v. Funmaker*
   10 F.3d 1327 (7th Cir. 1993) ............................................................... 19

*Ward v. United Airlines, Incorporated*
   986 F.3d 1234 (9th Cir. 2021) ........................................................ 14, 20

*Wine and Spirits Retailers, Incorporated v. Rhode Island*
   481 F.3d 1 (1st Cir. 2007) ................................................................... 22

*Yakima Valley Memorial Hospital v. Washington State Department of Health*
   731 F.3d 843 (9th Cir. 2013) ............................................................... 26

*Yamaha Corporation of America v. State Board of Equalization*
   19 Cal.4th 1 (1998) ............................................................................. 11

**STATUTES**

United States Code, Title 25
   § 2701 ................................................................................................. 24

United States Code, Title 42
   § 1983 ................................................................................................... 1

California Business and Professions Code
   § 19801 ............................................................................................... 21
   § 19805, subdivision (ae) ..................................................................... 9
   § 19850 ................................................................................................. 9
   § 19851 ................................................................................................. 9
   § 19852 ................................................................................................. 9
   § 19858 .......................................................................................... *passim*
   § 19858.5 ....................................................................................... *passim*

v

Defs.' Not. of Cross-Mot. & Cross-Mot.; Mem. P. & A. in Supp. of Cross-Mot. Summ. J. & Opp. To Plfs.' Mot.
Summ. J. (2:16-cv-02831-JAM-JDP)

## TABLE OF AUTHORITIES
### (continued)

Page

California Gambling Control Act ................................................................................................ 21

California Penal Code
§ 330.................................................................................................................................... 1, 5

**CONSTITUTIONAL PROVISIONS**

United States Constitution, Article I
§ 8, Clause 3 ........................................................................................................................... 7

**COURT RULES**

Federal Rule of Civil Procedure
Rule 56 .................................................................................................................................... 5
Rule 56(a) ............................................................................................................................... 6

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants Rob Bonta, in his official capacity as Attorney General of the State of California, Yolanda Morrow, in her official capacity as Acting Director of the California Department of Justice, Bureau of Gambling Control, Paula D. LaBrie, in her official capacity as Chair of the California Gambling Control Commission, Eric C. Heins, in his official capacity as Commissioner of the California Gambling Control Commission, Edward Yee, in his official capacity as Commissioner of the California Gambling Control Commission, Cathleen Galgiani, in her official capacity as Commissioner of the California Gambling Control Commission, and William Liu, in his official capacity as Commissioner of the California Gambling Control Commission, (Defendants) respectfully submit the following points and authorities in support of Defendants' Cross-Motion for Summary Judgment in their favor and against Plaintiffs Elizabeth Flynt, Haig Kelegian, Sr., and Haig T. Kelegian, Jr. (Plaintiffs) on their Third Amended Complaint for Declaratory and Injunctive Relief (TAC), and in opposition to Plaintiffs' Motion for Summary Judgment.

## INTRODUCTION

This is an action brought by Plaintiffs pursuant to section 1983 of title 42 of the United States Code, alleging that the enactment and subsequent enforcement of California Business and Professions Code sections 19858 and 19858.5 (the Statutes, or individually, section 19858 or section 19858.5) violate the dormant Commerce Clause.  Section 19858, enacted in 1997, makes California card room owner license applicants and licensees unsuitable for licensure if they have a financial interest in establishments that offer gambling prohibited by California Penal Code section 330, irrespective of the location or domicile of the applicant or licensee.  Section 19858.5 was enacted in 2007 and modified the limitation in section 19858 to allow California card room owner license applicants and licensees to be eligible for licensure even if they own or control up to a one-percent interest in another business that offers types of gambling that are prohibited in California.  The Statutes apply to all California card room licensees and applicants, regardless of whether they are residents or non-residents of California.

1

To prevail on a dormant Commerce Clause claim, a plaintiff must demonstrate that a statute discriminates against interstate commerce or impermissibly regulates extraterritorial conduct. *See Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144 (9th Cir. 2012) (*Nat'l Ass'n of Optometrists & Opticians*). Failing that, the plaintiff must establish that the statute imposes a substantial burden on interstate commerce. *Id.* If a plaintiff can establish a substantial burden on interstate commerce, it must still prove under the balancing test articulated by the Supreme Court in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (*Pike*), that the burden is clearly excessive in relation to the putative local benefits of the statute.

First, as this Court has held, the Statutes apply equally to residents and non-residents of the state and there is no bar to out-of-state ownership or operation of card rooms in California. *Flynt v. Shimazu*, No. 2:16-cv-02831-JAM-EFB, slip op. at 7-9 (E.D. Cal. June 15, 2020) (2020 Order); Defendants' Statement of Undisputed Material Facts (DSUF) 1. Thus, this Court has held that the statutes are not discriminatory on their face. This Court further held that Plaintiffs do not have standing to allege that the Statutes are discriminatory in their purpose and effect because Plaintiffs are not out-of-state residents. 2020 Order, 8-9; DSUF 2; *see Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 125 (1978) (*Exxon*); *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 528 (9th Cir. 2009). The allegation that the Statutes are discriminatory is thus not at issue in this case.

Second, as this Court has held, the Statutes do not regulate extraterritorially because they do not attempt to compel action outside of California's boundaries nor do they attempt to regulate the conduct of businesses in other states. *Flynt v. Shimazu*, No. 2:16-cv-02831-JAM-JDP, slip op. at 10 (E.D. Cal. Jan. 14, 2021) (2021 Order); DSUF 3. Instead, these are licensing requirements to own and operate businesses in California—requirements California has established to protect its residents. There are numerous examples of states imposing licensing requirements based on the applicant's activities or operations, and it is not extraterritorial regulation to do so. *See Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1152 n.11; *Exxon*, 437 U.S. at 133 n.28.

On January 14, 2021, this Court granted in part, and denied in part, Defendants' motion to dismiss Plaintiffs' Second Amended Complaint for Declaratory and Injunctive Relief (SAC), dismissing Plaintiffs' claims based on allegations of extraterritorial regulation, leaving Plaintiffs with only the portion of their dormant Commerce Clause claim alleging an unconstitutional indirect regulation of interstate commerce.  (2021 Order, 10-11; DSUF 4.)  Plaintiffs subsequently filed the TAC, primarily to address the substitution of Elizabeth Flynt as a plaintiff following the death of Larry C. Flynt.  The TAC is the same for all substantive legal purposes as the SAC, including the carryover inclusion of the previously dismissed claims based on discrimination and extraterritorial regulation.[1]  However, this Court has made it clear that the only remaining claim in this case is Plaintiffs' indirect regulation claim.  (2021 Order, 10-11; DSUF 4.)  That claim is presented to this Court in Plaintiffs' Motion for Summary Judgment, Declaratory Judgment, and Permanent Injunction (Motion) and in Defendants' Cross-Motion and Opposition (Cross-Motion), for evaluation under the criteria established by the Supreme Court in *Pike*.[2]

Plaintiffs' arguments are based almost entirely on hypothetical examples of the alleged effects of the Statutes.[3]  Plaintiffs' hypotheticals are all variations of three different scenarios.  Two of those scenarios involve Plaintiffs hypothetically acquiring more than a one-percent interest in a business that offers gambling that is prohibited in California.  Plaintiffs argue that this would make them ineligible for licensure as a California card room owner.  That is a correct interpretation of the application of the Statutes.  In their third alleged scenario, Plaintiffs rely on a

---

[1] The dismissed claims are Plaintiffs' Counts One and Two in the TAC.  The remaining claim is Plaintiffs' Count Three in the TAC.

[2] In their Motion, Plaintiffs offer arguments based on cases involving discrimination and extraterritoriality principles.  However, they concede that their extraterritoriality claim has been dismissed and is no longer a part of this case (Mot. 1 n.1).  (*See* 2020 Order, 7-9; 2021 Order, 10; DSUF 5.)

[3] Plaintiffs provide only one actual example of the Statutes being applied in a way that supports any of their alleged hypothetical scenarios.  That example involved plaintiff Haig T. Kelegian, Jr. and a Washington casino where he acquired more than one-percent ownership while he was a California card room licensee.  Mr. Kelegian, Jr. was required to reduce that Washington casino ownership interest to one percent in order to retain his California card room license.  (*See* Plfs.' Req. for Judicial Notice (RJN), Ex. K.)  That example illustrates the correct application of the Statutes.

3

Defs.' Not. of Cross-Mot. & Cross-Mot.; Mem. P. & A. in Supp. of Cross-Mot. Summ. J. & Opp. To Plfs.' Mot. Summ. J. (2:16-cv-02831-JAM-JDP)

broad hypothetical application of the Statutes, involving a non-applicant for a California card license who does business with a California card room licensee and who owns or acquires more than a one-percent interest in a business that offers gambling prohibited in California.  That single broad hypothetical application of the Statutes makes them appear to have a much broader reach than a reasonable construction of the Statutes would support.  Plaintiffs provide no evidence that the Statutes have ever been applied that way, and cannot provide any such evidence because the Statutes have not been applied that way by the agencies charged with implementing them.  In support of this Cross-Motion, Defendants have provided indisputable evidence that the Statutes have not been construed or applied that way by the agencies charged with implementing and enforcing them.  (*See* Decl. Stacey Luna Baxter; Decl. Yolanda Morrow; DSUF 6, 7.)  When construed properly, the Statutes have a much narrower reach than Plaintiffs allege.

Plaintiffs have not established, and cannot establish, under *Pike* that there is a substantial burden on interstate commerce and thus a judicial obligation to determine whether California's putative interests in its card room licensing structure outweighs any burden on interstate commerce.  *Nat'l Ass'n of Optometrists & Opticians,* 682 F.3d at 1156.  Recent case law in the Ninth Circuit supports Defendants' argument of no substantial burden in confirming that the regulation of gambling, including card room licensing, does not require a uniform national standard.  *See Monarch Content Mgmt. LLC v. Ariz. Dep't of Gaming*, 971 F.3d 1021, 1031 (9th Cir. 2020) (*Monarch*); *Benson v. Double Down Interactive*, LLC, 527 F. Supp. 3d 1267, 1271 (W.D. Wash. 2021) (*Benson*).  However, even if this Court were to find that Plaintiffs had presented sufficient evidence at this stage of the proceedings to demonstrate that the Statutes impose a substantial burden on interstate commerce, California's interest in regulating card room licensing to prevent potential criminal activity and control the proliferation of gambling outweighs any alleged burden on interstate commerce caused by the Statutes.

The overwhelming thrust of Plaintiffs' allegations is that the restrictions the Legislature has placed on the licensing of California card room owners are no longer necessary.  Plaintiffs' principal claims about burden are purported disadvantages to their own businesses and their desire to run their businesses differently.  But the dormant Commerce Clause does not protect a

4

Defs.' Not. of Cross-Mot. & Cross-Mot.; Mem. P. & A. in Supp. of Cross-Mot. Summ. J. & Opp. To Plfs.' Mot. Summ. J. (2:16-cv-02831-JAM-JDP)

particular business's choice of how to structure its operations.  This is a legislative policy

decision, and the Supreme Court and Ninth Circuit have made it clear that *Pike* does not

contemplate second-guessing of such legislative policy judgments.  The Legislature's decision to

continue these card room licensing restrictions in effect in the manner it has chosen in order to

assure protection against criminal activity and the proliferation of gambling constitutes an

important governmental purpose.  The mere fact that there may be a difference of opinion about

whether that objective is furthered by continued operation of these restrictions on card rooms

constitutes a legislative rather than a judicial question.

## NARRATIVE STATEMENT OF FACTS

The material facts in this case are not genuinely in dispute.[4]  The only issues to be resolved

in this case are the proper interpretation of the Statutes, and their application.  These are matters

of law.  Section 19858, enacted in 1997, bars applicants for California card room owner licenses

from having a financial interest in establishments that offer gambling prohibited by California

Penal Code section 330.  Section 19858.5 was enacted in 2007 and modified the requirement in

section 19858 to allow applicants for California card room owner licenses to be eligible for

licensure even if they own or control up to a one-percent interest in operations that offer gambling

prohibited in California.  The Statutes apply to all license applicants, regardless of whether they

are residents or non-residents of California.  (*See* 2020 Order, 7-9; DSUF 8.)  The Statutes have

not been applied in the broad hypothetical way Plaintiffs assert, and the Defendant entities

charged with implementation of the Statutes do not construe or apply them that way.  (*See* Decl.

Stacey Luna Baxter; Decl. Yolanda Morrow; DSUF 6.)

## LEGAL STANDARD OF PROOF

Federal Rule of Civil Procedure 56 authorizes summary judgment where the movant shows

there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of

---

[4] Plaintiffs' Separate Statement of Undisputed Material Facts contains 137 allegedly
undisputed facts.  Many of Plaintiffs' allegedly undisputed facts are not facts, and are disputed on
that basis.  The remaining facts alleged by Plaintiffs are either undisputed for purposes of this
litigation or not material to the issues in this case.  There are no material facts that are genuinely
in dispute.

law.  Fed. R. Civ. P. 56(a).  The court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).  The issue before the Court is a question of statutory interpretation, the resolution of which does not involve disputed "material" facts, and is appropriate for summary judgment based on the text of the Statutes and evidence of their application.  *See Edwards v. Aguillard*, 482 U.S. 578, 594-95 (1987).  Where, as here, the issue before the court involves the proper interpretation of statutes, and the parties agree on the "material" facts, the case may be resolved as a matter of law on summary judgment.  *See id.*; *Shishido v. SIU-Pac. Dist.-PMA Pension Plan*, 587 F. Supp. 112, 114 (N.D. Cal. 1983).

## SUMMARY OF ARGUMENT

The dormant Commerce Clause does not divest states of the authority to enact laws establishing criteria for suitability for licensure of gambling establishments operating within their borders.  Where, as here, a state enactment does not discriminate against out-of-state commerce or directly regulate commerce occurring wholly outside the jurisdiction, the only relevant questions under the dormant Commerce Clause are whether the law imposes a substantial burden on interstate commerce and, if so, whether that burden is clearly excessive in light of the putative local benefits of the law.  Applying that framework, courts have held that states may determine which licensing requirements apply within their own borders.  Under those authorities, there are no facts that would support Plaintiffs' argument that the Statutes impose a substantial burden on interstate commerce, particularly when the Statutes are interpreted correctly and Plaintiffs' broad hypothetical interpretation of the Statutes is discarded.  Because there is no genuine dispute as to the material facts in this case, and Plaintiffs cannot establish that the Statutes impose a substantial burden on interstate commerce, Plaintiffs' Motion should be denied and Defendants' Cross-Motion should be granted on that basis.

However, even if Plaintiffs could establish a substantial burden on interstate commerce, their claim must still fail because they cannot establish that any such burden is clearly excessive in relation to the putative local benefits of the Statutes.  Courts have long recognized that states

6

Defs.' Not. of Cross-Mot. & Cross-Mot.; Mem. P. & A. in Supp. of Cross-Mot. Summ. J. & Opp. To Plfs.' Mot. Summ. J. (2:16-cv-02831-JAM-JDP)

1  have significant interests in regulating the licensing of businesses operating within their borders,

2  consistent with local values and interests.

3      Finally, this Court has held that, for the purposes of this litigation, the Statutes are not

4  discriminatory and they do they apply extraterritorially.  Plaintiffs' Motion should be denied and

5  Defendants' Cross-Motion should be granted.

6                                    **ARGUMENT**

7      The Commerce Clause authorizes Congress to "regulate Commerce with foreign Nations,

8  and among the several States."  U.S. Const., art. I, § 8, cl. 3.  It includes an implied limitation on

9  states' regulatory authority often referred to as the dormant Commerce Clause.  *Dep't of Revenue*

10  *of Ky. v. Davis*, 553 U.S. 328, 337 (2008) (*Davis*).  The doctrine's central concern is to prevent

11  "economic protectionism—that is, regulatory measures designed to benefit in-state economic

12  interests by burdening out-of-state competitors."  *Id.* at 337-38 (internal quotation marks

13  omitted); *see also Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1135 (9th Cir. 2021).  At the same

14  time, the doctrine reflects the Constitution's federal structure and "accommodate[s] the necessary

15  balance between state and federal power."  *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2090

16  (2018) (*Wayfair*).  As the Supreme Court has explained, the "Framers' distrust of economic

17  Balkanization was limited by their federalism favoring a degree of local autonomy."  *Davis*, 553

18  U.S. at 338.

19      The courts have recognized three different categories of dormant Commerce Clause claims.

20  If a state law discriminates against interstate commerce, it is subject to a form of strict scrutiny.

21  *Davis*, 553 U.S. at 338.  A state statute that "directly regulates conduct that is wholly out of state"

22  is "impermissibly extraterritorial."  *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1029

23  (9th Cir. 2021), cert. granted, 142 S. Ct. 1413 (2022) (*Nat'l Pork Producers*).  But where a state

24  statute "regulates even-handedly to effectuate a legitimate local public interest, and its effects on

25  interstate commerce are only incidental, it will be upheld unless the burden imposed on such

26  commerce is clearly excessive in relation to the putative local benefits."  *Pike*, 397 U.S. at 142;

27  *see also Wayfair*, 138 S. Ct. at 2091 (discussing *Pike*).

28

This Court has already held that, for the purposes of this litigation, the Statutes do not discriminate against out-of-state businesses.  (2020 Order, 7-9; DSUF 9.)  This Court has further held that the Statutes do not directly regulate commerce occurring wholly outside the State.  (2021 Order 10; DSUF 10.)  Accordingly, the only issue left in this case is Plaintiffs' allegation that the Statutes indirectly regulate commerce in a way that creates a substantial burden and that the burden outweighs the putative local benefits of the Statutes, in violation of *Pike*.  A close examination of the language of the Statutes, and their application, leads to the inescapable conclusion that Plaintiffs have failed to establish their case.

Based primarily on Plaintiffs' broad hypothetical interpretation of the Statutes, which was assumed to be true, as required at the pleadings stage, this Court held that Plaintiffs' allegation that the Statutes indirectly regulate commerce in a way that creates a substantial burden and outweighs the putative local benefits of the Statutes was sufficient to survive a motion to dismiss. However, Plaintiffs' Motion does not include any evidence supporting their broad hypothetical interpretation of the Statutes.  Plaintiffs' hypothetical interpretation cannot survive under the summary judgment standard applicable here, where Defendants have provided indisputable evidence of the regulating agencies' interpretation and actual application of the Statutes.

## I.   PLAINTIFFS' MOTION IS BASED PRIMARILY ON A HYPOTHETICAL INTERPRETATION OF THE STATUTES IN A WAY THAT THEY HAVE NOT BEEN APPLIED

Plaintiffs' Motion is based primarily on a hypothetical interpretation of the Statutes in a way that they have not been applied in practice by the agencies charged with implementing them. In their Motion, and in the TAC, Plaintiffs rely on an emphasis on the language at the very beginning of section 19858 describing the persons subject to the Statutes' ownership limitation. (Mot. 9; 15, 22; TAC ¶¶ 4, 25-26, 66-67, 82, 86, 88, 93, 95, 105.)  Plaintiffs broadly construe the application of section 19858 through variations of what is substantively the same hypothetical. Plaintiffs' hypotheticals in this regard are all based on the conclusion that Plaintiffs, or any one of them, cannot enter into a business relationship with any individual or entity that has more than a one-percent interest in a gambling operation prohibited in California, even if that business relationship does not constitute, or has no relation to, a gambling operation prohibited in

California or a California card room.  That conclusion exaggerates the Statutes' coverage and, as discussed below, is incorrect as a matter of law because Plaintiffs cannot establish that the Statutes have ever been applied that way.

California Business and Professions Code sections 19850 and 19851 require that card room owners apply for a license and, where that owner is a non-natural person, California Business and Professions Code section 19852 requires that various entities in connection with the business entity apply.  For instance, for a partnership, every general and limited partner, and for a corporation, every shareholder, officer, and director must seek and obtain licensure.  Cal. Bus. & Prof. Code § 19852(a), (d).  Therefore, section 19858 applies only to **licensees and applicants for a license**, and partners, officers, directors, or shareholders in the **business entity that holds or is applying for a license**.  Cal. Bus. & Prof. Code § 19858(a).  In an effort to make the regulatory scope of the Statutes appear much broader than they have been applied, Plaintiffs misapply that limitation's language.

Section 19858 states in relevant part:

> a person shall be deemed to be unsuitable to hold a state gambling license to own a gambling establishment if the person, or any partner, officer, director, or shareholder of the person, has any [prohibited] financial interest.

Cal. Bus. & Prof. Code § 19858(a).

The term "person" is defined in California Business and Professions Code section 19805, subdivision (ae), to include "a natural person, corporation, partnership, limited partnership, trust, joint venture, association, or any other business organization."  Because "person" is defined to include various business entities in the context of applying for, and holding, a California card room license, section 19858 applies only to individuals and entities, including their partners, in the case of a partnership licensee, and their officers, directors, and shareholders, in the case of a corporate licensee, applying for, and holding, California card room licenses.  The California agencies tasked with implementing the card room licensing scheme, the California Gambling Control Commission (Commission) and the Bureau of Gambling Control (Bureau), have consistently interpreted and applied the Statutes this way, and continue to construe and apply the Statutes this way.  (Decl. Stacey Luna Baxter; Decl. Yolanda Morrow; DSUF 11.)

9

Furthermore, section 19858 does not apply to any individuals or entities that are not applying for, or that do not hold, a California card room license. The California agencies tasked with implementing the card room licensing scheme, the Commission and the Bureau, have consistently interpreted and applied the Statutes this way, and continue to construe and apply the Statutes this way. (Decl. Stacey Luna Baxter; Decl. Yolanda Morrow; DSUF 12.) Plaintiffs' allegations to the contrary are incorrect as a matter of law. Tellingly, Plaintiffs provide no evidence that the Statutes have ever been applied as broadly as Plaintiffs allege through their hypotheticals.[5]

The broad hypothetical interpretation of the Statutes that Plaintiffs put forward would lead to the absurd result where the state agencies implementing the Statutes would be required to review and consider the business interests of every person or entity that a card room license applicant does business with anywhere in the world, when those businesses do not involve gambling. The Legislature could not have intended that result. "If the language is clear, courts must generally follow a statute's plain meaning unless a literal interpretation would result in absurd consequences the legislature did not intend" and "courts 'must look beyond the express language of a statute where the literal interpretation would thwart the purpose of the overall statutory scheme or lead to an absurd result.'" *Deutsche Bank Nat'l Trust Co. v. Old Republic Title Ins. Grp., Inc*., 532 F. Supp. 3d 1004, 1015 (D. Nev. 2021), quoting *Wilshire Westwood Assocs. v. Atl. Richfield Corp*., 881 F.2d 801 (9th Cir. 1989); *see also Encompass Ins. Co. v. Stone Mansion Rest. Inc*., 902 F.3d 147, 152 (3rd Cir. 2018) (it is a basic tenet of statutory construction that courts should interpret statutes to avoid absurd or bizarre results).

While courts remain the ultimate interpreters of statutes, as a matter of California substantive state law, administrative agencies like the Commission and the Bureau, co-defendants

---

[5] As discussed below, Plaintiffs include references to variations of two alternative hypotheticals in various places in their Motion and in the TAC, describing an accurate application of the Statutes. (*See* Mot. 8, 9; TAC ¶ 88, 95, 105.) In those hypotheticals, Plaintiffs become unsuitable for licensure in California by having a financial interest of greater than one percent in a business that conducts gambling prohibited in California. That is because the California card room licensee would be participating in the offering of the gambling activity prohibited in California. That is the limit of the applicability of the Statutes. However, Plaintiffs make it clear that they are basing their claims in large part on their broad hypothetical interpretation of the applicability of the Statutes. (Mot. 9; 15, 22; TAC ¶¶ 25-26, 66-67.)

10

1   in this case, are entitled to deference when they interpret their own governing statute.  *See*

2   *Yamaha Corp. of Am. v. State Bd. of Equalization*, 19 Cal. 4th 1, 6-7 (1998) (*Yamaha*); *Ass'n of*

3   *Cal. Ins. Companies v. Jones*, 2 Cal. 5th 376, 390 (2017); *Californians for Political Reform*

4   *Found. v. Fair Political Practices Comm'n*, 61 Cal.App.4th 472, 484 (1998).  Specifically, when

5   (1) an agency has a comparative advantage due to its expertise in the subject matter, and (2)

6   factors indicate that interpretation is probably correct, a court should defer to an agency's

7   interpretation of its own statute.  *Yamaha*, 19 Cal.4th at 12.  The Commission's and the Bureau's

8   interpretation of the Statutes merits deference.  The Statutes have not been applied in the

9   hypothetical way Plaintiffs assert, and the Commission and the Bureau, the agencies charged with

10  implementation of the Statutes, do not construe or apply them that way.  (Decl. Stacey Luna

11  Baxter; Decl. Yolanda Morrow; DSUF 6.)  As the California public officials charged with

12  implementing and enforcing the Statutes, the Commission and Bureau Defendants' interpretation

13  of the Statutes outweighs the Plaintiffs' implausible hypothetical interpretation of the Statutes,

14  which has no evidentiary support.

15  **II.  PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE STATUTES SHOULD BE**

16       **INVALIDATED UNDER *PIKE***

17       As discussed above, Plaintiffs have taken a misconstruction of the hypothetical applicability

18  of the Statutes and used it to support their arguments in their Motion.  (Mot. 9, 15, 22; TAC ¶¶ 4,

19  25-26, 66-67, 82, 86, 88, 93, 95, 105.)  When examined within the context of their actual

20  applicability, the Statutes have a limited reach that is directly related to the regulation of

21  California card room ownership.  Furthermore, this Court has held that the Statutes are not

22  discriminatory, for the purposes of this litigation, and that they do not regulate extraterritorially.

23  When a statute is nondiscriminatory, has only indirect effects on interstate commerce, and

24  regulates evenhandedly, courts must make a threshold inquiry under *Pike*, as to whether the

25  statute imposes a substantial burden on interstate commerce.  Therefore, as a threshold matter,

26  without a substantial burden on interstate commerce, courts do not engage in *Pike* balancing.

27  *E.g.*, *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1156-57.  "A critical requirement for

28

proving a violation of the dormant Commerce Clause is that there must be a *substantial burden on interstate commerce.*"  *Id.* at 1148 (emphasis in original).  Only if a plaintiff adequately establishes a substantial burden does the court examine whether the burden on interstate commerce is clearly excessive in relation to the putative local benefits.  *Id.* at 1155.

Plaintiffs have not, and cannot, establish that the Statutes impose a substantial burden on interstate commerce.  First, "most statutes that impose a substantial burden on interstate commerce do so because they are discriminatory," and, for the purposes of this litigation, this Court has held that the Statutes are not discriminatory.  2020 Order, 7-9; *see Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 952 (9th Cir. 2013) (*Ass'n des Eleveurs de Canards et d'Oies du Quebec*).  Second, in the small number of cases where courts have invalidated statutes as impermissible burdens on interstate commerce, those burdens typically arose from inconsistent regulation of activities requiring a nationally uniform system.  *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1148.  The gambling market is not inherently national and does not require a uniform system of regulation.  *See Monarch*, 971 F.3d at 1031; *Benson*, 527 F. Supp. 3d at 1271.  Plaintiffs have failed to demonstrate that regulating gambling is inherently national.

In denying in part Defendants' motion to dismiss the SAC, this Court determined that the indirect regulation issues could not be resolved at the pleading stage.  That holding was based in large part on allegations in the SAC that the Statutes apply to out-of-state business ventures involving California card room licensees and applicants, where that business venture does not involve gambling prohibited in California.  (2021 Order, 6-8.)  As discussed herein, while Plaintiffs' alleged broad hypothetical interpretation of the Statutes was deemed by this Court to be sufficient to survive a motion to dismiss, Defendants' have provided indisputable evidence in connection with this Cross-Motion that the Statutes do not apply as Plaintiffs have alleged.  (Decl. Stacey Luna Baxter; Decl. Yolanda Morrow.)  The Statutes do not apply to any individuals or entities that are not applying for, or holding, a California card room license.  *Id.*; DSUF 12.  The Statutes merely provide that a California card room licensee or applicant not have more than a

12

Defs.' Not. of Cross-Mot. & Cross-Mot.; Mem. P. & A. in Supp. of Cross-Mot. Summ. J. & Opp. To Plfs.' Mot.
Summ. J. (2:16-cv-02831-JAM-JDP)

one-percent ownership interest in a business that offers gambling prohibited in California to be suitable for licensure.

With the correct interpretation of the Statutes' applicability, Plaintiffs are left with only their claim that the Statutes substantially burden interstate commerce because the licensing scheme forces card room licensees or applicants to decide between investing in card rooms in California or in establishments in which gambling activity is conducted that is not allowed in California. (*See* Mot. 6-9; TAC ¶ 60.) Even if accepted as true, Plaintiffs' alleged burden does not create a substantial burden on interstate commerce. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec*, 729 F.3d at 952; *Monarch*, 971 F.3d at 1031. Because Plaintiffs have not established a substantial burden on interstate commerce, their motion fails. However, even if the Court were to find adequate evidence of a substantial burden on interstate commerce, California's interest in regulating card room licensing in the manner it deems necessary is legitimate and any consequent burden on interstate commerce is not "clearly excessive in relation to the putative local benefits." *See Pike*, 397 U.S. at 142.

### A. Plaintiffs Have Not and Cannot Establish a Substantial Burden on Interstate Commerce

Plaintiffs have failed to establish that the Statutes impose a substantial burden on interstate commerce. To prevail on a *Pike* claim, a plaintiff must establish that the statute places a significant burden on interstate commerce. *See, e.g., Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1147-49.

Only a "small number" of Supreme Court "cases have invalidated state laws under the dormant Commerce Clause that appear to have been genuinely nondiscriminatory[.]" *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 n.12 (1997) (*General Motors*). As the Ninth Circuit has explained, statutes have been held to impose a substantial burden "only in rare cases." *Nat'l Pork Producers*, 6 F.4th at 1032. In those few cases in which laws have been struck down as unduly burdensome on interstate commerce, the statutes generally have implicated concerns about discrimination against out-of-state entities or have regulated activities that "are inherently

1   national or require a uniform system of regulation." *Id.* (internal quotation marks omitted); *see*

2   *also Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1146 (9th Cir. 2015) (*Chinatown*

3   *Neighborhood Ass'n*); *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1015 (9th Cir. 1994)

4   (*Pac. Nw. Venison Producers*) ("certain types of impacts on interstate commerce are of special

5   importance" in Commerce Clause analysis).  While "most statutes that impose a substantial

6   burden on interstate commerce do so because they are discriminatory," the Statutes are not

7   discriminatory, as this Court has held for the purposes of this litigation.  2020 Order, 7-9; DSUF

8   1, 2; *see Ass'n des Eleveurs de Canards et d'Oies du Quebec*, 729 F.3d at 952.  Furthermore, the

9   gambling market is not inherently national and does not require a uniform system of regulation.

10   *Monarch*, 971 F.3d at 1031; *Benson*, 527 F. Supp. 3d at 1271.  Plaintiffs have made no allegation

11   that regulating gambling is inherently national.[6]

12        Although these are not the exclusive categories of "substantial burdens," to establish a

13   claim under the *Pike* framework, a plaintiff must plausibly argue that the challenged law

14   "otherwise impair[s] the free flow of materials and products across state borders."  *Nat'l Ass'n of*

15   *Optometrists & Opticians*, 682 F.3d at 1154-55; *see also Ward v. United Airlines, Inc.*, 986 F.3d

16   1234, 1242 (9th Cir. 2021) (*Ward*); *Nat'l Pork Producers*, 6 F.4th at 1033.

17        Under these standards, the Statutes do not impose a substantial burden on interstate

18   commerce.  This Court has already held that, for the purposes of this litigation, the Statutes do not

19   discriminate against out-of-state applicants and that the Statutes do not regulate extraterritorially.

20   Plaintiffs have not argued that the regulation of gambling implicates a need for national

21   uniformity, or that the Statutes interfere with nationwide commerce in other, similar ways—nor

22   could they plausibly make such arguments.  Instead, Plaintiffs appear to argue that state licensing

23   criteria necessarily imposes a substantial burden on interstate commerce because it would "block

24   the flow" of commerce into and out of the regulating jurisdiction.  (Mot. 1.)  That argument is

25   _____

26        [6] Plaintiffs cite *Healy v. Beer Institute*, 491 U.S. 324, 336 (1989) , *General Motors*, 519
     U.S. at 298-300, and *Tennessee Wine and Spirits Retailers Association v. Thomas*, 139 S. Ct.
27   2449 (2019) in support of an argument cautioning against "economic Balkanization among
     States."  (Mot. 22-23.)  However, none of the cases cited by Plaintiffs involve gambling and
28   nothing in the current summary judgment record suggests that the Statutes cause any sort of such
     economic Balkanization.

1   untenable.  Licensing criteria within the regulating jurisdiction does not impede the flow of

2   commerce in other states or localities.  And even-handed licensing criteria, like California's, that

3   applies without regard to the domicile or residence of the license applicant, does not implicate

4   concerns about economic protectionism that are at the heart of the dormant Commerce Clause.

5   *See Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-338 (2008); *Bernstein v. Virgin Am.,*

6   *Inc.*, 3 F.4th 1127, 1135 (9th Cir. 2021).

7        Plaintiffs devote substantial space in their Motion in an effort to support their allegation in

8   the TAC that the Statutes substantially burden interstate commerce because, in their view, the

9   licensing scheme forces gambling owners and investors to choose between investing in card

10  rooms in California or in gambling establishments in which gambling activity is conducted that is

11  not allowed in California.  (Mot. 6-9; TAC ¶ 60.)  But the Statutes do not bar investors from

12  investing in out-of-state gambling establishments that offer gambling not permitted in California.

13  The Statutes only require that owners of California card rooms not have the prohibited investment

14  and ownership interests.  When California makes licensing decisions about who can own and

15  operate card rooms, it should not be compelled to accept the standards of other states.

16       Plaintiffs' arguments describing the alleged burden created by the Statutes are based almost

17  entirely on hypothetical examples of the alleged effects of the Statutes.  Plaintiffs' hypotheticals

18  are all variations of three scenarios.

19       In the first hypothetical scenario, one of the Plaintiffs acquires more than one-percent

20  ownership in a business offering gambling that is prohibited in California.  (Mot. 8-9, 15.)  In that

21  hypothetical, that Plaintiff would need to reduce that ownership interest to one percent in order to

22  retain his or her California card room license.  This was what happened in the one non-

23  hypothetical example of the application of the Statutes that Plaintiffs have offered, where plaintiff

24  Haig T. Kelegian, Jr. acquired more than one-percent ownership in a Washington casino while he

25  was a California card room licensee.  Mr. Kelegian, Jr. was required to reduce his Washington

26  casino ownership interest to one percent in order to retain his California card room license.  (*See*

27  RJN, Ex. K.)  That example illustrates the correct application of the Statutes.

28

1   In the second hypothetical scenario, one of the Plaintiffs acquires 100 percent ownership in

2   a business offering gambling that is prohibited in California.  (Mot. 15.)  In effect, that

3   hypothetical is no different than Plaintiffs' first hypothetical.[7]  That Plaintiff would need to

4   reduce his or her ownership interest down from 100 to one percent in order to retain his or her

5   California card room license.

6   In their third alleged scenario, Plaintiffs argue a broad hypothetical application of the

7   Statutes, where the California card room licensee does business with a non-licensee in a business

8   unrelated to gambling or to the California card room, and that non-licensee owns or acquires

9   more than a one-percent interest in a business that offers gambling prohibited in California.  (Mot.

10  9, 15.)  Plaintiffs argue that the ownership interest of the person they would be doing business

11  with would disqualify Plaintiffs from California card room licensure.  That is incorrect.

12  Tellingly, Plaintiffs provide no evidence that the Statutes have ever been applied that way, and

13  Plaintiffs cannot provide any such evidence because the Statutes have not been applied that way

14  by the California agencies that implement them.  In support of this Cross-Motion, Defendants

15  have provided indisputable evidence that the Statutes have never been construed or applied that

16  way.  (*See* Decl. Stacey Luna Baxter; Decl. Yolanda Morrow.)  When construed properly, the

17  Statutes have a much narrower reach than Plaintiffs allege in their broad hypothetical.

18  Other than the one example involving a casino in Washington, there is no evidence that the

19  other scenarios alleged by Plaintiffs even exist, and it is Plaintiffs' burden to marshal evidence of

20  actual substantial burdens at this stage of the proceeding.  Furthermore, the one example where

21  there is actual evidence, involving the Washington casino, is insufficient to establish a substantial

22  burden on commerce because it concerns one individual, Mr. Kelegian, Jr., who prefers to operate

23  in a different way.  That is not evidence of an impermissible burden on commerce.

24

25  _____

26  [7] Plaintiffs also argue that this hypothetical scenario supports their argument that the
Statutes serve no purpose because there would be no owner of the business offering gambling
prohibited in California other than the California card room licensee.  (Mot. 15.)  However, that
argument fails because it ignores the point that the nature of the casino operation itself, which is

27  prohibited in California, is also cause for criminal activity concerns, not merely the identity of its
owner.  This concern is identified by the same report that Plaintiffs rely on so heavily in their

28  Motion.  (Plfs.' RJN, Ex. G.)

16

Defs.' Not. of Cross-Mot. & Cross-Mot.; Mem. P. & A. in Supp. of Cross-Mot. Summ. J. & Opp. To Plfs.' Mot.
Summ. J. (2:16-cv-02831-JAM-JDP)

1        Plaintiffs argue at length, through their various hypotheticals, that the Statutes place a

2   substantial burden on interstate commerce because they force a choice between holding an

3   interest greater than one-percent in a casino or holding a California card room license.  (Mot. 6-

4   9.)  But the Ninth Circuit has held that a plaintiff cannot establish a substantial burden on

5   interstate commerce merely by arguing that a non-discriminatory statute regulates in a way that

6   precludes a preferred method of operating.  *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at

7   1154-55.  Plaintiffs do not address or distinguish this Ninth Circuit precedent.  Instead, Plaintiffs

8   argue that the Statutes prevent them from taking advantage of business opportunities because they

9   are California card room licensees.  (Mot. 7-9.)  However, that Plaintiffs may suffer lost business

10  opportunities is insufficient to establish a dormant Commerce Clause claim.  The Commerce

11  Clause is concerned with interstate *commerce*, not individual economic interests.  *See Exxon*, 437

12  U.S. at 127-128; *Nat'l Ass'n of Optometrists*, 682 F.3d at 1152 n.11.  To be sure, lost economic

13  opportunities are legitimate policy concerns that state and local legislators may weigh against

14  other objectives.  But those concerns relate to "the wisdom of the statute, not to its burden on

15  commerce."  *Exxon*, 437 U.S. at 128.

16       Furthermore, none of the cases cited by Plaintiffs support their substantial burden argument.

17  As they did in their opposition to Defendants' most recent motion to dismiss, Plaintiffs rely on

18  *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608 (9th Cir. 2018) (*Daniels*) to support their

19  arguments.  (Mot. 17.)  *Daniels* is an extraterritoriality case, and this Court has already explicitly

20  rejected its applicability here in holding that the Statutes do not regulate extraterritorially.[8]  (2021

21  Order 9.)

22       In support of their substantial burden argument, Plaintiffs seek to analogize this case to

23  *Daniels*, as well as other cases that they cite to support their arguments of a substantial burden on

24  interstate commerce, including *Norwegian Cruise Line Holdings, Ltd. v. Rivkees*, 553 F. Supp. 3d

25  1143, 2021 WL 3471585, at *20-22 (S.D. Fla. 2021) (*Norwegian Cruise Line*), *Alliant Energy*

26

27  [8] Plaintiffs also cite to *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) (en banc) (Mot. 16-17), in support of the same argument, but, like *Daniels*, it is an extraterritoriality case and this Court has already rejected Plaintiffs' extraterritoriality claim.

28

1    *Corp. v. Bie*, 330 F.3d 904, 912-914 (7th Cir. 2003) (*Alliant Energy*), and *Pike*.  (Mot. 16.)  As

2    they have done previously in this litigation, Plaintiffs again argue the theoretical concept that they

3    would like to transport capital and intellectual property out of state, which they refer to as the

4    "transfer of investments and expertise."[9]  (Mot. 15.)  As this Court found, the theoretical concept

5    Plaintiffs create is not at all analogous to the facts in *Daniels*, nor is it analogous to the other

6    cases Plaintiffs cite in support of their argument.  In *Daniels*, the direct subject of regulation was

7    a product – medical waste – when that product was entirely outside the state.  *Daniels*, 889 F.3d

8    at 616.  In *Norwegian Cruise Line*, the direct subject of regulation by a Florida statute was a

9    cruise ship, when that cruise ship was an instrumentality of interstate and international

10   transportation that left the state, and a non-uniform regulation imposed a substantial burden.  In

11   *Pike* and in *Alliant Energy*, the challenged statutes required that business activity be performed

12   within the state rather than in another state.  *Pike*, 397 U.S. at 144; *Alliant Energy*, 330 F.3d at

13   912.  The statutes at issue in those cases regulated in a discriminatory way that is completely

14   different from the Statutes here, where the Statutes are licensing statutes that only regulate

15   suitability for licensure to do business within California, in a non-discriminatory fashion.[10]

16        In contrast to the application of the statutes at issue in *Daniels*, *Alliant Energy*, and *Pike*,

17   the Statutes are even-handed provisions adopted to protect against harm that can occur in

18   California due to business operations that occur in California.  Other states remain free to regulate

19   card room licensing and, in fact, all types of gambling licensing within their jurisdictions,

20   however they see fit.

21

22   _____

23        [9] Plaintiffs also refer to the alleged effects that the Statutes have to "prohibit the formation
     of business ventures, and place existing ventures and investments at risk."  (Mot. 1.)  Plaintiffs
24   argue that these effects result from the alleged effects the Statutes have on the "transfer of
     investments and expertise."  (Mot. 15.)  In other words, Plaintiffs argue that the alleged effects
25   caused by the Statutes are all due to the purported restrictions on the transfer of investments and
     expertise.

26        [10] Plaintiffs also cite *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 39 (1980), in
     support of their substantial burden argument.  (Mot. 16.)  However, that case involved a statute
27   that discriminated against out-of-state entities, something that this Court has already held that the
     Statutes do not do.  (2020 Order, 7-9; DSUF 1, 2.)
28

18

Defs.' Not. of Cross-Mot. & Cross-Mot.; Mem. P. & A. in Supp. of Cross-Mot. Summ. J. & Opp. To Plfs.' Mot.
Summ. J. (2:16-cv-02831-JAM-JDP)

1    Plaintiffs also cite *United States v. Funmaker*, 10 F.3d 1327, 1331 (7th Cir. 1993) in

2  support of their substantial burden argument.  (Mot. 15.)  But the Court in that case merely held

3  that a "bingo hall and casino designed to attract tourists from surrounding states undeniably

4  affects interstate commerce for Commerce Clause purposes."  As discussed below, the Supreme

5  Court has made it clear that the dormant Commerce Clause does not invalidate state laws that

6  merely *affect* interstate commerce.  *See, e.g., Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429,

7  440 (1978) (*Raymond Motor*); *Pac. Nw. Venison Producers*, 20 F.3d at 1015 ("Evidence that

8  interstate and foreign commerce is in some way affected by the regulations is not enough to meet

9  [plaintiffs'] burden").

10    Courts have consistently recognized that the dormant Commerce Clause was never intended

11  to strip states of their authority to regulate matters of local concern, even if the legislation has

12  indirect effects on national commerce.  *See Huron Portland Cement Co. v. City of Detroit, Mich.*,

13  362 U.S. 440, 443-444 (1960).  To the contrary, the Constitution reflects an accommodation of

14  state and federal power, distinguishing between "those subjects that by their nature imperatively

15  demand a single uniform rule, operating equally on the commerce of the United States," and

16  "those that demand the diversity, which alone can meet local necessities."  *Wayfair*, 138 S. Ct. at

17  2090 (internal quotation marks, alterations, and ellipses omitted).  Here, where a state adopts a

18  nondiscriminatory law governing criteria for licensing to own and operate gambling

19  establishments within its borders, it acts well within its recognized authority to promote local

20  needs and policy objectives.

21    A plaintiff must demonstrate that the claimed burdens on interstate commerce are

22  substantial.  The Supreme Court has made it clear that the dormant Commerce Clause is not

23  concerned with state laws that merely *affect* interstate commerce.  *E.g.*, *Raymond Motor*, 434 U.S.

24  at 440.  Were that the rule, innumerable state and local laws would be subject to potential

25  invalidation.  Plaintiffs have failed to demonstrate, and cannot demonstrate, that the Statutes

26  impose a substantial burden on interstate commerce.  Where a state enactment does not impose a

27  substantial burden on interstate commerce "it would be inappropriate" to determine the law's

28  constitutionality based on a judicial assessment "of the benefits of the law and the State's wisdom

19

1   in adopting it[.]" *Chinatown Neighborhood Ass'n*, 794 F.3d at 1147 (alterations and internal

2   quotation marks omitted).  Because Plaintiffs have not and cannot establish a substantial burden,

3   the Statutes should be upheld as constitutional on that basis.

**B.      Plaintiffs Fail To Establish that Any Burden that the Statutes Might Cause Is Clearly Excessive in Relation to the Putative Local Benefits of the Statutes**

6        The Ninth Circuit has explained that "[i]f a regulation merely has an effect on interstate

7   commerce, but does not impose a significant burden on interstate commerce, it follows that there

8   cannot be a burden on interstate commerce that is 'clearly excessive in relation to the putative

9   local benefits' under *Pike*."  *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1155; *see also*

10  *Ward*, 986 F.3d at 1242 (similar); *Union Pac. R.R. Co. v. Cal. Pub. Utilities Comm'n*, 346 F.3d

11  851, 870 (9th Cir. 2003) (state laws vulnerable to dormant Commerce Clause challenge if they

12  "impede substantially the free flow of commerce from state to state") (internal quotation marks

13  omitted).  However, even if the Statutes were found to impose a substantial burden on interstate

14  commerce, Plaintiffs' Motion still fails.  Only where a state adopts a measure with burdens on

15  interstate commerce significant enough to clearly exceed the putative local benefits will the

16  Constitution foreclose an exercise of a State's police power within its territory.  *See Raymond*

17  *Motor*, 434 U.S. at 447 ("challenged regulations violate the Commerce Clause because they place

18  a substantial burden on interstate commerce" and do not "make more than the most speculative

19  contribution to" the State's interests).

20       While not establishing that the Statutes create a substantial burden, Plaintiffs argue that the

21  Court should scrutinize the putative benefits of the Statutes.  However, such an approach would

22  be contrary to numerous Ninth Circuit decisions holding that courts should not assess the utility

23  of state policy judgments unless a plaintiff has first established that the challenged law imposes a

24  substantial burden on interstate commerce.  *Pharm. Research & Mfrs. v. Cty. of Alameda*, 768

25  F.3d 1037, 1044 (9th Cir. 2014); *Nat'l Pork Producers*, 6 F.4th at 1033; *Nat'l Ass'n of*

26  *Optometrists & Opticians*, 682 F.3d at 1155-56; *Rosenblatt v. City of Santa Monica*, 940 F.3d

27  439, 452-453 (9th Cir. 2019).  Plaintiffs' approach also could not be reconciled with the Supreme

28

1   Court's admonition that courts should not second-guess the empirical judgment of state

2   legislatures. *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 92 (1987) (*CTS Corp.*); *see also*

3   *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1156.

4   "A facially neutral statute may violate the Commerce Clause if 'the burdens of the

5   statute . . . so outweigh the putative benefits as to make the statute unreasonable or irrational.'"

6   *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189, 1196 (9th Cir. 2007) (quoting *Alaska*

7   *Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir. 1991) (per curiam)).  A statute is

8   unreasonable or irrational when "the asserted benefits of the statute are in fact illusory or relate to

9   goals that evidence an impermissible favoritism of in-state industry over out-of-state industry."

10  *Id*.  That is not the case here.  In fact, California's evaluation of the gambling interests held by

11  license applicants in determining suitability for licensure is no different than the evaluation of

12  criminal convictions, including out-of-state convictions, applicants may have, something that the

13  California Gambling Control Act, of which the Statutes are a part, contemplates, and that

14  Plaintiffs do not challenge as a violation of the dormant Commerce Clause.

15  Regulating gambling activity, particularly in regard to the licensing of gambling

16  establishment ownership and operations, is unquestionably an important state interest.  *See*

17  *Northville Downs v. Granholm*, 622 F.3d 579, 587 (6th Cir. 2010); *Payne v. Fontenot*, 925 F.

18  Supp. 414, 421 (M.D. La. 1995); *Rhode Island Chapter of Nat'l Women's Pol. Caucus, Inc. v.*

19  *Rhode Island Lottery Comm'n*, 609 F. Supp. 1403, 1413 (D. R.I. 1985).  The state also has a

20  substantial interest in providing for public health and morals.  *See Barnes v. Glen Theatre, Inc*.,

21  501 U.S. 560, 569 (1991) ("The traditional police power of the States is defined as the authority

22  to provide for the public health, safety, and morals, and we have upheld such a basis for

23  legislation.").  Among other purposes, the Statutes form part of a legitimate licensing scheme

24  designed to protect against the infiltration of crime and the proliferation of gambling in

25  California.  The California Legislature has clearly identified these purposes, and others, in the

26  California Gambling Control Act, of which the Statutes form a part.  *See* Cal. Bus. & Prof. Code,

27  § 19801.  In fact, Plaintiffs themselves recognize these multiple purposes of the Statutes (Mot. 9-

28  10), and the very documents that Plaintiffs offer in support of their Motion also identify the

21

1    multiple purposes of the Statutes, including not only to prevent links with criminal activity and as

2    a deterrent to crime, but also to protect the integrity of the gambling industry as a whole, to limit

3    the financial resources available to card rooms, and as a protection of the public from corruption,

4    such as being cheated when visiting gambling establishments. (*See* Plfs.' RJN, Exs. G, at 6, H, at

5    1.)

6         Plaintiffs contend that protection against the infiltration by organized crime is not, or no

7    longer is, a legitimate state interest. (Mot. 19; TAC ¶¶ 35-47.) Whether the infiltration by

8    organized crime or other putative benefits, such as protection against the proliferation of

9    gambling, are currently, or were at the time the Statutes were enacted, worthy of prohibition is a

10   decision for the Legislature, and a disagreement on this point does not render the benefits of the

11   Statutes illusory. "Even in the context of dormant commerce clause analysis, the Supreme Court

12   has frequently admonished that courts should not 'second-guess the empirical judgments of

13   lawmakers concerning the utility of legislation.'" *Pac. Nw. Venison Producers*, 20 F.3d at 1017

14   (quoting *CTS Corp.*, 481 U.S. at 92).

15        Any burdens that the Statutes might create are clearly not excessive in relation to the

16   putative local benefits from the Statutes in the advancement of these interests. The scope of the

17   licensing requirements embodied by the Statutes is limited—they only apply to those individuals

18   and entities choosing to invest in and own card rooms in California, a very minor sector of the

19   California economy.[11] While expressing doubts about whether *Pike* balancing was even required,

20   circuit courts have also consistently upheld state licensing schemes, despite the alleged burden on

21   interstate commerce. *See Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1154-55

22   (California optician licensing scheme restricting joint ventures with eyewear companies is not a

23   significant burden on commerce despite acknowledged restrictions on the investments by out-of-

24   state companies); *Wine and Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1, 15 (1st Cir. 2007)

25

26        [11] Plaintiffs argue that California card rooms are a "large, lawful, and regulated sector of the economy." (Mot. 6.) However, there were only 113 card rooms in California as of 2002 (Pls.' RJN, Ex. G, at 2), and only 84 active card room licenses as of May 2022. Active Gambling

27   Establishments in California, California Gambling Control Commission, http://www.cgcc.ca.gov/?pageID=ActiveGEGE (last visited May 31, 2022).

28

1    (Rhode Island statutory scheme prohibiting retail liquor licensees from maintaining out-of-state

2    franchise and chain-store arrangements upheld despite acknowledged burden on commerce).

3        As with the other statutory licensing schemes discussed herein, the Statutes pass the *Pike*

4    balancing test because any burden they might conceivably impose does not clearly exceed the

5    benefits they provide to California.

6        The cases cited by Plaintiffs do not support their contrary view.  In *Raymond Motor*, the

7    state regulation at issue applied to truck trailers that traveled across state lines.  (Mot. 22.)  The

8    Supreme Court pointed to, among other things, the fact that "the regulations slow[ed] the

9    movement of goods in interstate commerce by forcing appellants to haul doubles across the State

10   separately" or "to haul doubles around the State altogether."  *Raymond Motor*, 434 U.S. at 445.

11   The Court also noted that "[t]o comply with Wisconsin law, however, an interstate double bound

12   for Wisconsin must stop before entering the State and detach one of its two trailers."  *Id*. at 438.

13   The Statutes at issue here only apply to license applicants for card rooms located within

14   California and do not create any such burdens on interstate commerce.  Plaintiffs also cite *Bibb v.*

15   *Navajo Freight Lines, Inc*., 359 U.S. 520, 529 (1959) (*Bibb*), another case involving a statute

16   regulating trucks and trailers that travel across state lines.  (Mot. 22.)  In that case, the Supreme

17   Court struck down a requirement for a specific type of mud flaps on trailers that conflicted with

18   other states' mud flap requirements, thereby necessitating that drivers stop and change mud flaps

19   at state lines.  *Bibb*, 359 U.S. at 527-530.  In doing so, the Supreme Court noted that the law

20   would have been valid if the Court had confronted "only a question whether the cost of adjusting"

21   to a new state regulation was a violation, rather than a law that physically disrupted the movement

22   of goods interstate.  *Id*. at 526.  That case is inapplicable to support Plaintiffs' claims here for the

23   same reason that *Raymond Motor* is inapplicable.  The laws at issue in *Raymond Motor* and *Bibb*

24   regulated instrumentalities of interstate commerce in ways that were inconsistent with other state

25   laws and that caused physical disruption to those instrumentalities.  There is no evidence of that

26   kind of disruption or burden here.

27       Plaintiffs also cite *Edgar v. MITE Corp.*, 457 U.S. 624 (1982) (Mot. 17, 22.), where the

28   Supreme Court held that an Illinois statute regulating tender offers for corporate securities

1    impermissibly burdened interstate commerce, reasoning in part that the statute purported to

2    control securities transactions between out-of-state sellers and out-of-state buyers. *Edgar v.*

3    *MITE Corp.*, 457 U.S. at 643-646.  In contrast here, the Statutes only apply to license applicants

4    for card rooms within the State.  Plaintiffs' reliance on *Hunt v. Washington State Apple*

5    *Advertising Commission*, 432 U.S. 333 (1977), is also misplaced.  (Mot. 22).  There, the Supreme

6    Court considered the availability of nondiscriminatory alternatives after concluding that the state

7    law discriminated against out-of-state producers and that heightened scrutiny therefore applied.

8    *See Hunt*, 432 U.S. at 353.  Here, this Court has already held that, for the purposes of this

9    litigation, the Statutes do not discriminate against out-of-state applicants, and there is thus no

10   basis for applying heightened scrutiny.

11        Plaintiffs also cite *Island Silver & Spice, Inc. v. Islamorada*, 475 F. Supp. 2d 1281, 1293

12   (S.D. Fla. 2007), where a restrictive zoning ordinance establishing a "small town community"

13   was found not to be a legitimate local benefit because of numerous exceptions to the ordinance.

14   (Mot. 21.)  In addition, the ordinance in that case was found to be discriminatory.  *Id.* at 1290.

15   That is not the case here, where this Court has already found that the Statutes are not

16   discriminatory and there was only one narrow exception to the Statutes for a race track card room,

17   and that exception has expired.[12]

18        Without any factual or logical support, Plaintiffs also argue that "the Statutes were nothing

19   more than a protectionist measure" and that "[e]conomic protectionism is not a legitimate putative

20   benefit," citing *Maine v. Taylor*, 477 U.S. 131, 148 (1986).  (Mot. 20.)  However, Plaintiffs fail to

21   explain how the Statutes are protectionist in any way.  The Statutes apply equally to in-state and

22

23

24        [12] Plaintiffs devote substantial space in their Motion to arguing that the alleged proliferation
     of Indian casinos in California is proof of an exception to the ownership limitation in the Statutes.
25   However, Plaintiffs' Motion fails to appreciate that tribal casinos are located on tribal land, which
     is exempt from the application of state civil regulatory laws such as the Statutes.  *See California*
26   *v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987).  Indian reservations are governed by
     independent sovereign Indian tribes, and not by the State of California, or any other state.
27   Furthermore, the federal Indian Gaming Regulatory Act prevents California from prohibiting
     Indian tribes from locating casinos on land eligible for tribal gaming.  *See* 25 U.S.C. §§ 2701, *et*
28   *seq.*

1    out-of-state residents in a nondiscriminatory way, as this Court has found.  (2020 Order, 7-9;

2    DSUF 1, 2.)  The Statutes merely regulate licensing criteria for card rooms located in California.

3         Plaintiffs cite several cases, including *Southern Pacific Company v. Arizona*, 325 U.S. 761,

4    779 (1945), *U & I Sanitation v. City of Columbus*, 205 F.3d 1063, 1070-71 (8th Cir. 2000), *Pike*,

5    and *Raymond Motor*, for the proposition that illusory putative benefits are not legitimate putative

6    benefits.  (Mot. 19-20.)  Although the *Pike* standard only requires an examination of the putative

7    benefits of the Statutes, the Statutes also provide actual benefits that Plaintiffs have failed to

8    refute.  Plaintiffs rely on the idea that with the advent of large publicly traded companies

9    dominating the gambling markets in other states and with their actual presence on some

10   California Indian reservations, concerns about the risk of unlawful activity are minimal because

11   other states, as well as the federal government, have complex regulatory schemes to control such

12   companies.  (Mot. 21; TAC ¶¶ 37-41.)  Plaintiffs' contentions, however, necessarily recognize

13   that the potential for criminal infiltration of gambling exists.[13]  In fact, while they identify other

14   means to regulate the risk, the very documents that Plaintiffs offer in support of their Motion

15   identify the same risks of unlawful activity, including not only potential links with criminal

16   activity, but also potential corruption, which could lead to the public being cheated when visiting

17   gambling establishments, among other undesirable effects.  (*See* Plfs.' RJN, Exs. G, at 6, 17, H, at

18   2.)

19        Plaintiffs rely heavily on the conclusions from a 2002 report that discusses the risk of crime

20   in connection with gambling in California.  (Mot. 3, 5, 11, 12, 13, 18, 19; Plfs.' RJN, Ex. G.)

21   _____

22        [13] Plaintiffs argue that Defendants' discovery responses indicate that there is only a limited
     number of documents evidencing the association of organized crime with card rooms.  (Mot. 11.)

23   However, the discovery propounded by Plaintiffs was limited to "organized crime."  Defendants
     objected to Plaintiffs' discovery on the grounds of relevance, proportionality, and the equal

24   availability to public information in this regard.  However, in the spirit of cooperative discovery,
     Defendants did provide several examples of publicly available information regarding the

25   association of organized crime with card rooms.  But the list was explicitly made non-exhaustive
     pending Plaintiffs' clarification of the relevance of their requests.  Plaintiffs did not follow up

26   with any clarification.  Plaintiffs' discovery is not particularly useful in this context because their
     discovery requests in this regard were limited to "organized crime."  Even so, if there are only a

27   limited number of incidents, as Plaintiffs allege, that would be evidence of the effectiveness of the
     Statutes in preventing criminal activity associated with card rooms.

28

25

Defs.' Not. of Cross-Mot. & Cross-Mot.; Mem. P. & A. in Supp. of Cross-Mot. Summ. J. & Opp. To Plfs.' Mot.
Summ. J. (2:16-cv-02831-JAM-JDP)

1    However, that report is 20 years old, and is thus outdated and of little or no relevance today.

2    Furthermore, the Legislature had the information contained in the 2002 report at the time the

3    current statutory scheme was instituted in 2007, through the enactment of section 19858.5.  As a

4    result, it cannot be genuinely disputed that the Legislature already modified the statutory scheme

5    through the enactment of section 19858.5 with knowledge of the identical changed circumstances

6    that Plaintiffs claim were identified in the 2002 report and that Plaintiffs now argue in support of

7    their Motion.[14]

8        Plaintiffs' preferred regulatory solution is heavy regulation of large enterprises with an

9    interest in protecting their business reputation across the nation.  Thus, Plaintiffs do not assert that

10    California's interest in protecting against crime is not substantial.  Rather, they dispute the

11    method that California has chosen.[15]  It is beside the point that California could have chosen a

12    different approach to regulating card rooms.  The Ninth Circuit has recognized that, even if

13    alternatives are relevant in the case of a nondiscriminatory law, a challenger must first establish a

14    substantial burden before a court can conclude "that the State's purposes could be served as well

15    with alternative laws." *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1157; *see also*

16    *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 731 F.3d 843, 848 n.3 (9th Cir. 2013)

17    (same).  As explained above, Plaintiffs have not done so here.

18        California should be allowed to determine the means by which it will protect the public

19    against criminal activity, corruptive elements, and unsuitable persons associated with gambling.

20    It should also be allowed to determine whether it wishes to rely on the regulatory schemes of

21    other states and the federal government, or if not, to create the type of institutional regulatory

22

23    [14] Plaintiffs allege that they were licensed card room owners that participated in the process and supported the enactment of section 19858.5 in 2007.  (TAC Ex. E; Plfs.' RJN, Ex. G.)  Thus,

24    Plaintiffs, along with the Legislature, had the information contained in the 2002 report at the time they supported the current statutory scheme that was enacted in 2007.  It is an ironic twist that

25    Plaintiffs seek relief now against the very statute they urged the Legislature to adopt in 2007.

26    [15] Plaintiffs cite *Medigen of Kentucky, Inc. v. Public Services Commission of West Virginia*, 985 F.2d 164, 167 (4th Cir. 1993) (Mot. 21), to support their argument for the existence of less

27    burdensome alternatives.  However, that case is inapplicable because it involved a direct regulation statute that the defendant conceded imposed a substantial burden on commerce.  *Id*. at

28    166.  That statute is clearly more restrictive than the licensing statutes at issue here.

1    structure necessary to audit and control larger multi-state companies that do business in

2    California.  The Legislature's decision to continue with the card room licensing restrictions

3    established by the Statutes represents the manner it has chosen in order to assure protection

4    against criminal activity and the proliferation of gambling.  That constitutes a legitimate and

5    important governmental purpose.  That there may be a difference of opinion about the continued

6    operation of these restrictions on card rooms reflects a legislative rather than a judicial question.

7    The state's interest is substantial and is sufficient to outweigh any interest that California card

8    room licensees might have in simultaneously offering games in California while offering games

9    unlawful in California elsewhere.  The validity of the Statutes should be upheld.[16]

10                                              **CONCLUSION**

11           For all of the above reasons and authorities, Defendants respectfully request that this

12    Court grant summary judgment in their favor and against Plaintiffs on the parties' cross-motions

13    for summary judgment.

14

15    Dated:  May 31, 2022                          Respectfully Submitted,

16                                                  ROB BONTA
                                                    Attorney General of California
17                                                  SARA J. DRAKE
                                                    Senior Assistant Attorney General
18                                                  T. MICHELLE LAIRD
                                                    Supervising Deputy Attorney General
19
                                                    /s/ James G. Waian
20
                                                    JAMES G. WAIAN
21                                                  Deputy Attorney General
                                                    *Attorneys for Defendants*
22

23

24

25

26

27    _____

       [16] Plaintiffs also present arguments in favor of the Court granting injunctive and declaratory
       relief.  The Court need not reach those arguments because Plaintiffs have failed to establish that
28    the Statutes create a substantial burden on interstate commerce and that even if they did, that
       burden would be clearly excessive in relation to the putative local benefits of the Statutes.

                                                    27