PAUL J. CAMBRIA, JR., State Bar No. 177957
ERIN E. MCCAMPBELL (*pro hac vice*)
    pcambria@lglaw.com
    emccampbell@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, NY 14202
Telephone:  (716) 849-1333
Fax:  (716) 855-1580
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELIZABETH FLYNT, HAIG KELEGIAN, SR., and HAIG T. KELEGIAN, JR.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California; YOLANDA MORROW, in her official capacity as the Acting Director of the California Department of Justice, Bureau of Gambling Control; PAULA D. LaBRIE, in her official capacity as Chair of the California Gambling Control Commission; ERIC C. HEINS, in his official capacity as Commissioner of the California Gambling Control Commission; EDWARD YEE, in his official capacity as Commissioner of the California Gambling Control Commission; CATHLEEN GALGIANI, in her official capacity as Commissioner of the California Gambling Control Commission; WILLIAM LIU, in his official capacity as Commissioner of the California Gambling Control Commission,**<br><br>Defendants. | 2:16-cv-02831-JAM-JDP<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DECLARATORY JUDGMENT, AND PERMANENT INJUNCTION AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Courtroom:    6<br>Judge:          The Honorable John A. Mendez<br>Trial Date:     November 14, 2022<br>Action Filed:  November 30, 2016 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

   I.   Defendants' attempts at deflection should be ignored. ................................................. 2

      A.   Defendants have mischaracterized the Motion.................................................... 2

      B.   Defendants have ignored evidence of the real, concrete burdens imposed. ...................... 2

      C.   Defendants seek untimely reconsideration of this Court's settled ruling........................ 5

      D.   Defendants invoke doctrines that do not apply here. ...................................................... 6

   II.   *Pike* balancing is required here. ........................................................................................ 7

      A.   Defendants have not provided this Court with a single case that endorses a regulatory scheme like the Statutes. ............................................................................................. 7

      B.   The limitations that Defendants seek to impose on *Pike* are misplaced.......................... 10

      C.   Dismissal of direct regulation claims under the per se rule of invalidity does not mean that evidence of direct regulation or discrimination is irrelevant under *Pike*. ...................... 13

      D.   This is the rare case where a statute must be invalidated under *Pike* even if the Court were to find an absence of discrimination or extraterritorial application. ............................. 14

   III.   The Statutes should be struck under *Pike* because the significant burdens imposed on interstate commerce are clearly excessive to the putative benefits............................................. 15

      A.   The Statutes provide no legitimate benefits. ................................................................. 15

      B.   The burdens imposed on interstate commerce are clearly excessive to the non-existent local benefits. ........................................................................................................... 19

   III.   Declaratory and permanent injunctive relief should be granted..................................... 20

CONCLUSION................................................................................................................... 20

1

**TABLE OF AUTHORITIES**

2

**Page**

3

4

CASES

5

*Alaska Airlines, Inc. v. City of Long Beach*,

6

   951 F.2d 977 (9th Cir. 1991) --------------------------------------------------------------------------11

7

*Assoc. des Eleveurs de Canards et d'Oies du Quebec v. Harris*,

   729 F.3d 937 (9th Cir. 2013) ---------------------------------------------------------------------------8

8

*Benson v. Double Down Interactive, LLC*,

9

   527 F. Supp. 3d 1267 (W.D. Wash. 2021)----------------------------------------------------------8-9

10

*Bernstein v. Virgin Am., Inc.*,

11

   3 F.4th 1127 (9th Cir. 2021)----------------------------------------------------------------------------9

12

*Celotex Corp. v. Catrett*,

13

   477 U.S. 317 (1986) ------------------------------------------------------------------------------------19

14

*CTS Corp. v. Dynamics Corp. of Am.*,

   481 U.S. 69 (1987)--------------------------------------------------------------------------------------11

15

*Dennis v. Higgins*,

16

   498 U.S. 439 (1991) ------------------------------------------------------------------------------------15

17

*Dep't of Rev. of Ky. v. Davis*,

18

   553 U.S. 328 (2008) --------------------------------------------------------------------------------------9

19

*Doe v. San Diego*,

20

   313 F. Supp. 3d 1212 (S.D. Cal. 2018) ----------------------------------------------------------------6

21

*Edgar v. MITE Corp.*,

   457 U.S. 624 (1982) ------------------------------------------------------------------------------------16

22

*Flynt v. Shimazu*,

23

   940 F.3d 457 (9th Cir. 2019) ----------------------------------------------------------------------19-20

24

*Kassel v. Consol. Freightways Corp.*,

25

   450 U.S. 662 (1981) ------------------------------------------------------------------------------------16

26

*Kona Enters., Inc. v. Estate of Bishop*,

   229 F.3d 877 (9th Cir. 2000) ---------------------------------------------------------------------------5

27

28

*Lewis v. BT Inv. Mgrs., Inc.*,
447 U.S. 27  (1980)------------------------------------------------------------------------------- passim

*Nat'l Pork Prods. Council v. Ross*,
6 F.4th 1021 (9th Cir. 2021),----------------------------------------------------------------------11

*NCL v. Rivkees*,
F. Supp. 3d, 2021 WL 3471585 (S.D. Fla. Aug. 8, 2021) -----------------------------------10, 14, 16

*Pac. Nw. Venison Prods. v. Smitch*,
20 F.3d 1008 (9th Cir. 1994) ---------------------------------------------------------------------12

*Pharm. Research & Mfrs. v. Alameda*,
768 F.3d 1037 (9th Cir. 2014)---------------------------------------------------------------------11

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970) ------------------------------------------------------------------------- passim

*Raymond Motor Transp., Inc. v. Rice*,
434 U.S. 429 (1978) ------------------------------------------------------------------------- passim

*Rosenblatt v. City of Santa Monica*,
940 F.3d 439 (9th Cir. 2019) -----------------------------------------------------------------------9

*Steffel v. Thompson*,
415 U.S. 452 (1974) --------------------------------------------------------------------------------6

*Tenn. Wine & Spirits Retail Assoc. v. Thomas*,
587 U.S.___, 139 S. Ct. 2449 (2019) -----------------------------------------------------------15

*UFO Chuting of Haw., Inc. v. Smith*,
508 F.3d 1189 (9th Cir. 2007)--------------------------------------------------------------------11

*United States v. Alexander*,
106 F.3d 874 (9th Cir. 1997) -----------------------------------------------------------------------5

*United States v. Hansen*,
25 F.4th 1103 (9th Cir. 2022) ----------------------------------------------------------------------6

*Whitman v. Am. Trucking Assocs.*,
531 U.S. 457 (2001) --------------------------------------------------------------------------------6

*Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*,
731 F.3d 843 (9th Cir. 2013) --------------------------------------------------------------- 11, 16

iii

1

2 **STATUTES**

3 California Business and Professions Code

4 §§ 19858, 19858.5 ------------------------------------------------------------------------- passim

§   19800 ------------------------------------------------------------------------------------18

5 California Penal Code

6 §§ 67-68, 92-100, 182-85, 186, 503-515, 518-527 ------------------------------------ 18

7 § 330 ------------------------------------------------------------------------------------ passim

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

**INTRODUCTION**

Plaintiffs[1] submit the instant Memorandum of Points and Authorities in Further Support of Plaintiffs' Notice of Motion and Motion for Summary Judgment, Declaratory Judgment, and Permanent Injunction ("Motion," Doc. 86), and in Opposition to Defendants' Notice of Cross-Motion and Cross-Motion for Summary Judgment ("Cross-Motion," Doc. 94).   In the Motion, Plaintiffs established that the Statutes must be invalidated under the balancing test articulated in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), because the Statutes impose significant burdens on interstate commerce that are clearly excessive to the purported local benefits.   Plaintiffs submitted declarations, government reports, and other evidence establishing that there could not be a more lopsided analysis under *Pike* as indicated by the teachings from *Pike* and its progeny.

The Cross-Motion is a non-responsive pleading.  It was designed to shift focus away from the factors this Court must assess – whether the Statutes impose a significant burden on interstate commerce that is clearly excessive to its claimed local benefits – to a variety of issues that have no application here.  Rather than provide one piece of evidence indicating that the Statutes provide benefits of any kind, Defendants have rested on the Legislature's pronouncement that the Statutes were necessary to prevent crime and the proliferation of gambling in California.  This Court should look past those pronouncements to what actually occurs for two reasons.  First, the Supreme Court has said that, when a State enacts exceptions to a statute, or when the benefits to be provided by the statute are illusory, the legislature's findings are not entitled to deference.  Second, in denying, in part, Defendants' fourth motion to dismiss, and allowing the Third Count to proceed on its merits, this Court sent the message that the case was past the stage of assumptions about legislators' thoughts.  The parties proceeded to discovery to enable this Court to resolve the Third Count on the evidence.  Plaintiffs have answered this call.  Defendants have defaulted on their burden because they have not provided this Court with one fact relevant to the analysis this Court must engage in under *Pike*.  They are on no better footing under the law.  They have not provided this Court with a single case that involves a statutory scheme remotely on par with the substantial burdens imposed by the Statutes.  This Court should grant the Motion and deny the Cross-Motion.

---

[1]   For brevity, Plaintiffs incorporate all abbreviations and designations set in the Motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.    Defendants' attempts at deflection should be ignored.**

As discussed in the Motion, the Statutes impose a substantial burden on interstate commerce that is clearly excessive to the putative local benefits.  (Dkt. 86 at 3-23.)  Defendants have provided no evidence and no relevant authorities to refute this assertion.

**A.    Defendants have mischaracterized the Motion.**

Defendants' main contention is that Plaintiffs have failed to establish that the Statutes impose a substantial burden on interstate commerce because the Motion "is based primarily on a hypothetical interpretation of the Statutes in a way that they have not been applied in practice." (Dkt. 94 at 8-11.)   Defendants have vastly overstated the significance of the "hypothetical interpretation" to Plaintiffs' Motion by spinning ***one paragraph*** from Plaintiffs' 25-page Motion (Dkt. 86 at 9 (lines 13-24)) into Plaintiffs' ***sole basis*** for asserting that the Statutes impose a substantial burden on interstate commerce.  No fair reading of the Motion supports that contention. Instead, the "hypothetical interpretation" was ***one of dozens of examples*** of the ways that the Statutes impose substantial burdens on interstate commerce.  (*Id*. at 6-9.)  And it was the ***last example*** in a four-page subsection of the Motion.  (*Id*.)[2]

**B.    Defendants have ignored evidence of the real, concrete burdens imposed.**

While quick to spin Plaintiffs' Motion as nothing more than one "hypothetical" or "exaggerate[ion]" after another, Defendants have failed to address (let alone provide evidence that disputes) the ***actual***, very ***real*** examples Plaintiffs provided as to how the Statutes impose substantial burdens on interstate commerce, including the undisputed facts that:

- Mrs. Flynt cannot use revenue generated from the dozens of Hustler Hollywood stores located outside of California, to invest in casinos that operate lawfully outside of California, even if the capital at issue ***never passes through California***;

---

[2]    Further, this is not a case about whether the State has the right to regulate gambling as a general matter.  Instead, Plaintiffs challenge the narrow issue of the ownership restriction found in the Statutes because this particular regulation violates the dormant Commerce Clause.

2

- Mr. Kelegian, Jr. cannot use revenue generated from an out-of-state restaurant to invest in casinos that operate lawfully outside of California, even if the capital at issue *never passes through California*;

- Mrs. Flynt's trust has a minority ownership interest in an exotic dance establishment that is at risk because, if the majority owner opts to install slot machines at the establishment, the trust must automatically divest its interest, a disadvantageous but necessary accommodation that the trust was forced to seek from the majority owner when the majority owner expressed an interest in the *possibility* of adding slot machines;

- Mr. Kelegian, Jr. and his wife were forced to divest their interest in an out-of-state casino, even though, they had *no other business partners*, and thus, their interest in that casino presented *no risk of an affiliation with an out-of-state casino owner* (or the organized crime claimed to be associated with such individuals), and *did nothing to expand gambling within California*;

- Licensees, like Plaintiffs, cannot make substantial investments in publicly traded companies that operate casinos, investments that are lawful where they occurs, in lawful entities, and are available to all other citizens, if their investment exceeds 1% of the publicly traded company's ownership;

- Licensees, like Plaintiffs, are precluded from obtaining investments in their cardrooms from individuals who are affiliated with out-of-state casinos; and,

- Licensees, like Plaintiffs, are forced to decline lucrative investment opportunities in casinos that operate lawfully where located.

(*See* Doc. 86 at 6-9, 14-17.)   Thus, Plaintiffs have not relied "primarily" on "hypothetical" examples, but rather, have provided information about the ways that the Statutes impose significant burdens on interstate commerce on a regular basis.[3]

---

[3]   Other than making the conclusory claim that the facts concerning these transactions are "disputed," Defendants have provided no evidence to controvert the facts underlying these transactions, nor could they. (Defs.' Resp. to Pls.' SUF at ¶¶ 45-74.)  As a result, this Court should

It cannot be denied that the Statutes erect a wall around California with respect to the gambling industry.  Under the plain text of the Statutes, you can either invest in California's gaming market or the market outside of California, but you cannot do both, *see* Cal. Bus. & Prof. Code §§ 19858, 19858.5, unless you qualify for one of the exceptions discussed below.  Notably, ***while this Motion was pending***, Mr. Kelegian, Jr. was invited to attend and did attend a meeting where he was offered the opportunity to invest in an out-of-state casino to be built in Reno, Nevada.  (Jun. 14, 2022 Kelegian, Jr. Decl. ¶ 5.)  This meeting was not open to the public, but instead, was limited to those in the gambling industry, like Mr. Kelegian, Jr., who have a stellar reputation and are known for their expertise.  (*Id.*)  At the meeting, he expressed an interest in the opportunity, but will be unable to participate if the Statutes remain in effect.  (*Id.* ¶ 6.)

Further, it cannot be disputed that the Statutes prohibit transactions that do not implicate the State's interests at issue – the prevention of the proliferation of casinos in California and organized crime affiliated with casinos.  It is undisputed that Defendants forced Mr. Kelegian, Jr. and his wife to divest their interest in a Washington casino due to the Statutes.  (Dkt. 94-4 ("Resp.") ¶¶ 69-71, 73.)  This divestiture was mandated even though the transaction at issue did not implicate the purposes for enactment of the Statutes (the prevention of the proliferation of casinos in California and the prevention of the entry of organized crime in California (purportedly affiliated with out-of-state casino owners)) because the Washington casino would not have added to the number of casinos located within California and the transaction did not involve Mr. Kelegian taking on a business partner who had an ownership interest in a casino.  The same would be true if any California cardroom licensee acquired a 100% interest in an out-of-state casino,[4] even in a scenario

treat those facts as undisputed.  *See, e.g.*, *Buyer's Direct, Inc. v. J.Y. Designs & Creations, Inc.*, 2019 WL 13039643, at * n.2 (C.D.C.A. Jun. 3, 2019) (treating "facts as undisputed" when the non-moving party "fail[ed] to controvert the proffered 'undisputed' fact" or "fail[ed] to cite evidence in support of the disputing party's position"); *see also* E.D.C.A. L.R. 260(b).

[4]     Rather than address the fact that the Statutes prohibit transactions that do not implicate the stated purposes for enactment, Defendants apparently claim that such transactions could implicate "criminal activity concerns" related to "the nature of the casino operation itself," which would be at odds with Penal Code §330.  (Dkt. 94 at 16 n.7.)  This exercise in deflection ignores the fact that the Statutes target the ***casino ownership interests*** of licensees and their partners, officers, and shareholders (however the term "person" is interpreted).  That is what is at issue in this case, not

4

1  wherein the capital used to acquire the casino was earned outside of California, such as the revenue

2  generated by Mrs. Flynt's out-of-state Hustler Hollywood stores or Mr.Kelegian's restaurant.

3  **C.   Defendants seek untimely reconsideration of this Court's settled ruling.**

4      This Court has already embraced Plaintiff's interpretation of the scope of the Statutes,

5  correctly ruling that the "plain language" of Section 19858 prohibits licensees "from forming a

6  business partnership, unrelated to gambling, with a person who has an interest in a casino" because

7  licensees cannot have a "business affiliation with *any* person or entity that has gambling interests

8  prohibited in California." *See* Jan. 14, 2021 Order (Dkt. 67) at 6-8 (emphasis added).  If Defendants

9  found this Court's ruling to be "hypothetical," an "exaggerate[ion]," or "incorrect as a matter of

10  law," as they now claim (Dkt. 94 at 8-9), they could have and should have timely filed a motion for

11  reconsideration in *January of 2021*.  Instead, they did nothing.

12      Defendants should not be permitted to seek reconsideration *18 months late*, well after

13  discovery concluded, and Plaintiffs filed their Motion. It would be an abuse of discretion to depart

14  from that ruling – as Defendants now request – when the ruling was settled law under the doctrine

15  of the law of the case for 18 months, no exceptions to the doctrine are applicable, Defendants have

16  made no showing that an exception applies, Defendants have offered *no explanation* for why they

17  raised this issue at this late stage in this case, and the plain text of the Statute supports the Court's

18  interpretation.  *See, e.g.*, *United States v. Alexander*, 106 F.3d 874, 876-78 (9th Cir. 1997)

19  (reversing district court's departure from prior ruling as an abuse of discretion under the doctrine

20  of the law of the case because "a court is generally precluded from reconsidering an issue that has

21  already been decided by the same court, or a higher court in the identical case").  Moreover, this

22  Court should disregard the new arguments and authorities Defendants raised for the first time in

23  their Cross-Motion concerning interpretation of Section 19858 (Dkt. 94 at 10-11), because

24  reconsideration "may *not* be used to raise arguments or present evidence for the first time when

25  they could reasonably have been raised earlier in the litigation." *E.g.*, *Kona Enters., Inc. v. Estate*

26  *of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original).

27  Penal Code § 330.  More fundamentally, California has no jurisdiction to apply Penal Code §330's

28  ban on gambling to conduct occurring in Washington. *See, e.g.*, *BMW of N. Am., Inc. v. Gore*, 517
U.S. 559, 571 (1996) ("No State can legislate except with reference to its own jurisdiction.").

5

**D.    Defendants invoke doctrines that do not apply here.**

Defendants' suggestion that Plaintiffs were required to violate the Statutes and subject themselves to enforcement actions prior to bringing their challenges to the Statutes is nothing but a red herring.  A party is not required to violate a regulation prior to bringing a facial challenge to that regulation, as Plaintiffs have done here.  *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.").  Nonetheless, it is undisputed that, the one Plaintiff who attempted an investment in an out-of-state casino – Mr. Keleigan, Jr. – was immediately subjected to an enforcement proceeding.  (Dkt. 94-4 ¶¶ 69-71.)  On this record, there can be no serious argument that, if the Plaintiffs (or any licensees) pursued any of the commercial transactions identified above, transactions that they are eager to pursue, they would not face an immediate enforcement action.  (*See id*.)  Accordingly, Defendants suggestion that Plaintiffs have somehow not met their burden of establishing that the prohibition on those transactions constitutes a substantial burden on interstate commerce because they did not subject themselves to enforcement action is nothing more than an attempt to distract this Court from the importance of this undisputed evidence to the Court's analysis.

Defendants' contention that Section 19858 has never been enforced by any State regulators in the manner interpreted by this Court is equally unavailing.  Courts do "not uphold an unconstitutional statute merely because the government promised to use it responsibly."  *United States v. Hansen*, 25 F.4th 1103, 1111 (9th Cir. 2022); *Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 473 (2001) ("The idea that an agency can cure an unconstitutionally standardless delegation of power by declining to exercise some of that power seems to us internally contradictory . . . . Whether the statute delegates legislative power is a question for the courts, and an agency's voluntary self-denial has no bearing upon the answer.").  This is because enforcement actions "are subject to change," "irrelevant," and, more importantly, "do not change the plain meaning of a statute."  *Hansen*, 25 F.4th at 1111; *see also Doe v. San Diego*, 313 F. Supp. 3d 1212, 1217 (S.D. Cal. 2018) ("[A] facial attack does not raise questions of fact related to the enforcement of the statute in a particular instance.").  Moreover, although Plaintiffs have not identified examples of

the Statutes being applied in this manner, they have presented undisputed proof that they carefully vet all business partners to ensure that they do not run afoul of the Statutes in this manner. (Resp. ¶ 77.) Consequently, it is undisputed that the Statutes impose a burden on interstate commerce whether enforced in that manner or not. (*See id*.) Critically, it is the burden imposed on interstate commerce by the plain text of the Statutes that is at issue here – not – as Defendants complain – the limitations on their resources to enforce the Statutes to their full extent as enacted.

## II.   *Pike* balancing is required here.

Defendants spill much ink over the claim that this Court is not required to engage in *Pike* balancing because the Statutes do not discriminate or regulate extraterritorially, which Defendants say is a necessary prerequisite to *Pike* balancing. (Dkt. 94 at 11-20.) Defendants are wrong on the applicable law and disingenuously downplay the undisputed evidence in this case.

### A.   Defendants have not provided this Court with a single case that endorses a regulatory scheme like the Statutes.

Defendants have not provided a single case that involves a statute that prohibits market participants from engaging in conduct outside of the state whose regulation is at issue, that is lawful where it occurs, or that prohibits the forming business relationships with people who engage in conduct outside of the state that is lawful where it occurs *as a condition to entering or participating in the state's market*.[5] Instead, Defendants have cherry-picked lines from legal standards articulated by courts in the context of analysis of very different statutory schemes and have asked this Court to apply them here, without acknowledging that those standards were made when courts analyzed statutes that allowed the regulated parties to do whatever they wanted outside California, including associating with whomever they desired.

---

[5]   This lack of authority could be due to state legislatures striving to draft laws that comply with the well-settled principle that a state "may not impose conditions which require the relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guarantees embedded in the Constitution of the United States may thus be manipulated out of existence." *W. & S. Life Ins. Co. v. St. Bd. of Equalization of Cal.*, 451 U.S. 648, 664-65 (1981) (quoting *Frost v. R.R. Comm'n of State of Cal.*, 271 U.S. 583, 592 (1926)); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 608 (2013) (recognizing that a state lacks the power "to condition permit approval on petitioner's forfeiture of his constitutional rights"); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 (1996) (plurality) (holding that state could not condition liquor license on advertising prohibition that violated First Amendment).

For example, Defendants' lead case – *Assoc. des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013) – does not involve a statute remotely on par with the Statutes.  In that case, the statute at issue concerned the practice of force feeding ducks to produce foie gras.  California prohibited farmers located within California from force feeding ducks.  California also prohibited the sale of products in California that were produced outside the State by force feeding.  *See id.* at 942, 942 n.1.  That's it.  There is a critical piece missing from that statutory scheme that is present here.  California did not mandate out-of-state farmers who sell products in California that were prepared without force feeding to also refrain from selling products prepared by force feeding in states where the sale of such products was lawful.  Nor did California prohibit them from selling their products in California if they associated with other duck farmers who used force feeding to raise their ducks.  If the Statutes regulated gambling in the same manner that California regulated foie gras, Plaintiffs (and all cardroom licensees) would be free to invest in, own, and operate casinos outside of California where gambling is lawful, and would be free to associate with casino owners in any manner that they desired.  Similarly, out-of-state casino owners who operate casinos lawfully where located would be able to obtain cardroom licenses in California.  Consequently, it does not matter if the foie gras statute withstood a dormant Commerce Clause challenge because that statute in no way places the substantial burdens on interstate commerce that the Statutes impose.[6]

Other cases are readily distinguishable for a far more fundamental reason – all of the conduct at issue giving rise to the dormant Commerce Clause challenge occurred in California.  In *Benson*

---

[6]     The same is true of *Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136 (9th Cir. 2015), which involved analysis of California's in-state ban on the sale of shark fins.  Fishermen were prohibited from harvesting shark fins in California, but there was no limitation whatsoever on their fishing outside of California as a condition for obtaining a fishing license in California.  *Nat'l Assoc. of Optometrists & Opticians v. Harris*, 682 F.3d 1144 (9th Cir. 2012), which prohibited opticians located in California from selling eye glasses and performing eye exams at the same store, also lacked any restriction on the conduct or business relationships of opticians outside of California.  Similarly, *Monarch Content Mgmt. LLC v. Arizona Dep't of Gaming*, 971 F.3d 1021 (D. Ariz. 2020) has no application here because the statute at issue only limited what simulcast race broadcasters could do within Arizona.  *See id.* at 1025.  They were free to operate as they saw fit *outside* of Arizona, and what they did *outside* of Arizona had *no impact* on their ability to offer simulcast races *in* Arizona.  *See id.* at 1025, 1031.

---

*v. Double Down Interactive, LLC*, 527 F. Supp. 3d 1267 (W.D. Wash. 2021), the parties, the facts, and the circumstances giving rise to the dormant Commerce Clause challenge all occurred *in* the state that had imposed the regulation.  Similarly, *Rosenblatt v. City of Santa Monica*, 940 F.3d 439 (9th Cir. 2019), involved a challenge to a municipal prohibition on short-term rentals brought by a resident of Santa Monica concerning the renting of her home.  The statute at issue in that case – a prohibition on short-term rentals – is akin to Penal Code § 330's prohibition on in-State gambling (although that statute in that case did not include the rule-swallowing exceptions that are at issue here).  There was no corresponding provision prohibiting what homeowners did with properties located outside of California.  Again, in *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1135 (9th Cir. 2021), the Plaintiffs were *California residents* who worked for an airline that had 88-99% of its flights depart or land in California.  *Id*. at 1133.  The Ninth Circuit found no dormant Commerce Clause violation due to "the parties' various contacts with the state," finding that the airline did not have contact of a similar nature with any other State, and noting that there was no proof that, if other States enacted similar overtime, payment, and meal-break laws, airline operations would be impeded.  *Id*. at 1135-36.  It should have been obvious to Defendants that these cases have no application here.

　　To further add to the confusion, Defendants inexplicably rely on a case addressing the market-participant exception to the dormant Commerce Clause.  (Dkt. 94 at 15 (citing *Dep't of Rev. of Ky. v. Davis*, 553 U.S. 328, 337-28 (2008)).)  That exception has never been at issue here because there can be no credible argument that California is acting like a market participant rather than a market regulator concerning the Statutes.

　　In sharp contrast with all of Defendants' cases, Plaintiffs have provided numerous examples of how the Statutes prohibit them from engaging in conduct *outside* of California that is *lawful where it occurs*, and how such a regulatory scheme has been found by numerous courts to violate the dormant Commerce Clause under *Pike* balancing (and even as a per se invalid regulation).  (*See* Doc. 86 at 6-9, 14-23.)  Defendants' attempts to distinguish these cases fall flat, as discussed below.  Plaintiffs have not, as Defendants contend, premised their argument on cases that invalidated statutes under the rule of *per se* invalidity.  (Dkt. 94 at 17.)  Instead, Plaintiffs discussed two *per se*

9

cases, in just eight lines, indicating that "[l]ess burdensome regulations have been struck as *per se* invalid." (*Compare* Dkt. 86 at 14-17; *with id*. at 16-17.)[7]  Plaintiffs' discussion of those cases does not transform the Motion into a brief based on *per se* cases.

**B.     The limitations that Defendants seek to impose on *Pike* are misplaced.**

Defendants appear to urge this Court to impose a bunch of pre-requisites on *Pike* balancing claims before conducting *Pike* balancing, which is unsupported by the law.  *First*, the Supreme Court has not limited *Pike* balancing in the manner advocated by Defendants.  In *Pike*, itself, the Court flatly rejected the argument that dormant Commerce Clause challenges should be limited to statutes "whose express or concealed purpose was" protectionism or favoring of in-state interests over out-of-state interests because "a burden upon interstate commerce is unconstitutional ***even in the absence of such a purpose***."  *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 145 (1970) (emphasis added); *see also Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 443 (1978) (acknowledging that there was language in some of its decisions "which read in isolation from later decisions would suggest that no showing of burden on interstate commerce is sufficient to invalidate local safety regulations in the absence of some element of discrimination against interstate commerce," but that articulation of the test for indirect regulation claims, like Plaintiffs' in this case, was "rejected," and "weighing of the asserted safety purpose against the degree of interference with instate commerce" was required").  Instead, the Court recognized that a dormant Commerce Clause challenge lies when the statute at issue regulates "even-handedly" and has "only incidental effects on interstate commerce."  *Id*. at 142.  This type of statute is scrutinized under the balancing test articulated in *Pike*, rather than the rule of per se invalidity applicable to statutes that either discriminate or regulate extraterritorially on their face.  *See Lewis v. BT Inv. Mgrs., Inc.*, 447 U.S. 27, 36-37 (1980) (identifying regulations involving "simple economic protectionism" as subject to a "per se rule of invalidity," and those that regulate "evenhandedly" as subject to *Pike* balancing).  Defendants attempt to conflate these distinct inquiries should be rejected.

---

[7]     Defendants mischaracterize *NCL Holdings, Ltd. v. Rivkees*, 2021 WL 3471585 (S.D. Fla. Aug. 8, 2021) as invalidating a Florida statute under the *per se* rule of invalidity for direct regulation (Dkt. 94 at 18); as the court expressly rejected the direct regulation claim, and instead, invalidated the statute under *Pike* balancing.  *See NCL*, 2021 WL 3471585, at * 17-23.

Instead, as Defendants' own authorities indicate, *Pike* balancing is appropriate when, like here, a regulation, among other things, "substantially impedes the flow of interstate commerce," *Nat'l Pork Prods. Council v. Ross*, 6 F.4th 1021, 1033 (9th Cir. 2021), or "the burdens of the statute so outweigh the putative benefits as to make the statute unreasonable or irrational" *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189, 1196 (9th Cir. 2007) (quoting *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir. 1991)).  Further, Defendants' own authorities indicate that courts must engage in *Pike* balancing ***even when the burden on interstate commerce is a fairly light one***, when, like here, the statute at issue provides nothing more than ***illusory local benefits***. *See Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 731 F.3d 843, 848-48 (9th Cir. 2013) ("Our conclusion that the burden on interstate commerce is insignificant would normally end the constitutional inquiry. . . .  Nonetheless, because Memorial claims that the safety benefits of the [regulation] are not just minimal, but illusory or nonexistent, we address this argument.").  Moreover, even when the Ninth Circuit has articulated Defendants' narrow application of *Pike*, and has expressly found that the plaintiff failed to establish a substantial burden on interstate commerce, the Circuit has, in some instances, nonetheless engaged in *Pike* analysis, assessing the burdens and benefits.  *E.g., Pharm. Research & Mfrs. v. Alameda*, 768 F.3d 1037, 1045-46 (9th Cir. 2014).[8] Notably, these different tests for the application of *Pike* have likely emerged due to the complexity of dormant Commerce Clause analysis, which the Supreme Court has conceded is "not . . . easy to follow." *E.g.*, *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987).

*Second*, on occasion, the full text of the opinions from which Defendants have cherry-picked lines does not support their view on the law.  For example, the Ninth Circuit did not hold that evidence that a regulation affects interstate commerce, perhaps only minimally, means that courts can skip *Pike* balancing, as Defendants claimed.  (Dkt. 94 at 19.)  Instead, the Ninth Circuit's full statement supports Plaintiffs' view of the law that *Pike* balancing must occur regardless of the size or scope of the burden imposed on interstate commerce:

---

[8]   Like all of Defendants' other cases, this case is readily distinguishable on its facts.  In sharp contrast with the Plaintiffs, the plaintiff in *Pharm. Research & Mfrs.* presented "no evidence" of any burdens on interstate commerce, stating, in conclusory fashion, that the regulation at issue "imposes some burdens on [manufacturers] engaged in interstate commerce." *Id.* at 1045.  It is unsurprising that the Ninth Circuit found no burden on interstate commerce on that record.

> Evidence that interstate and foreign commerce is in some way affected by the regulations is not enough to meet this burden; what is required is evidence that ***these effects are of a type or an extent that could support a determination that they are "clearly excessive" in relation to the state's interest*** . . . .

*Pac. Nw. Venison Prods. v. Smitch*, 20 F.3d 1008, 1015 (9th Cir. 1994) (emphasis added).  Thus, Plaintiffs are not required to meet some initial threshold on the burdens, prior to balancing. Plaintiffs simply must show that the burdens at issue are "clearly excessive" in relation to the State's putative local benefits, something that the undisputed and heavily lopsided evidence establishes.

*Third*, in evaluating the burdens imposed by the Statutes, the Court should review the Statutes through the lens of the burdens imposed on those ***within the gambling industry***, rather than society at large, as Defendants suggest.  (Dkt. 94 at 15.)  It does not matter if a California resident without a cardroom license has the ability to buy a casino in Las Vegas or that a resident of Nevada with no ties to the casino industry can procure a cardroom license in California.  The Statutes are unconstitutional because they target the "firms with the kinds of resources and business interests that make them likely" to participate in the gambling industry, whether inside or outside of California.  *See Lewis*, 447 U.S. at 39; *Raymond Motor Transp*., 434 U.S. at 445-46 (evaluating the substantial burden that Wisconsin's mud flap regulation imposed on members of the ***trucking industry***, alone).  The Statutes are unconstitutional because they wall off California's gambling industry from the rest of the country (and world).  *See, e.g.*, *Lewis*, 447 U.S. at 39-44.  Defendants' attempt to cabin the undisputed evidence of the burdens on interstate commerce as nothing more than Plaintiffs' gripes about their "individual economic interests," or "preferred method of operating" (Dkt. 94 at 17), is misplaced because no court ignores, and in fact, courts instead focus on, the impact that the regulation has ***on the industry sought to be regulated***.

*Finally*, this Court should reject the idea that the dormant Commerce Clause does not protect commercial transactions.  Defendants make the unsupported claim that "[l]icensing criteria" do "not impede the flow of commerce in other states or localities" (Dkt. 94 at 15), which simply is not true.  Plaintiffs have provided numerous examples of how the Statutes impede investment opportunities, commercial transactions, and commercial relationships on a daily basis in other

---

states.  (Resp. ¶¶ 45-77.)  Defendants' suggestion that commercial transactions are not protected by the dormant Commerce Clause because they do not involve goods or the transportation of goods is unsupported by the law.  Numerous courts have recognized that these types of commercial transactions are protected by the dormant Commerce Clause as part of interstate commerce.  (Dkt. 86 at 16-17.)  Defendants have not provided a single case to the contrary.  Defendants assertion that cases that address restrictions on trucking are inapplicable here because the Statutes do not impact "instrumentalities of interstate commerce" like the trucking regulations at issue in those cases (Dkt. 94 at 23), is too narrow of a reading of those cases. Instead, those cases stand for the general proposition that a state cannot erect barriers to commerce at its borders.  But, to the extent that there is any doubt about the application of that principle to commercial transactions, *Lewis* makes it clear that the imposition of such barriers on commercial transactions, too, violates the dormant Commerce Clause.  *See Lewis*, 447 U.S. 27, 42-44.

### C. Dismissal of direct regulation claims under the per se rule of invalidity does not mean that evidence of direct regulation or discrimination is irrelevant under *Pike*.

This Court has not held, as Defendants suggest, that there is no evidence of the Statutes regulating extraterritorially.  To the contrary, when evaluating the text of Section 19858, the Court declined to find that the Statutes targeted and directly regulated out-of-state conduct on their face, which would have rendered the Statutes per se invalid.  (Dkt. 67 at 8-10.)  In reaching that result concerning Plaintiffs' per se claims, with which Plaintiffs respectfully disagree, this Court nonetheless recognized that "[t]hese provisions have extraterritorial effects, such as requiring Plaintiffs to restructure out-of-state business deals or forego them entirely."  (*Id*. at 9-10.)  Since this ruling, Plaintiffs have amassed an undisputed record as to the various ways that the Statutes "have extraterritorial effects," none of which were disputed by Defendants, and all of which support Plaintiffs' remaining claim that the burdens imposed on interstate commerce are "clearly excessive" to the non-existent local benefits.  Further, Defendants offer nothing to dispute that the legislative record contains evidence of simple economic protectionism (Dkt. 86 at 4 n.3; Resp. ¶¶ 14-15), even if not in sufficient quantities to result in the per se invalidation of the Statutes.

Thus, while this Court dismissed Plaintiffs' per se claims, this Court did not preclude itself from consideration of the facts underlying those claims, which also can be considered under *Pike* analysis, and which have been developed as part of the summary judgment record.  Indeed, there are numerous decisions where a court has held that the plain text of a regulation would not be invalidated under the per se rule of invalidity because it did not discriminate or regulate extraterritorially on its face, but the court nonetheless considered evidence of direct regulation or discrimination when invalidating a regulation under *Pike* balancing.  *See, e.g.*, *NCL v. Rivkees*, ___ F. Supp. 3d ___, 2021 WL 3471585, at *20-22 (S.D. Fla. Aug. 8, 2021).  This Court is not required to ignore the facts that are well-documented in Plaintiffs' declarations and exhibits simply because this Court previously dismissed Plaintiffs' per se claims based on the plain text of the Statutes.  This is true particularly when, as here, Defendants have advocated that proof of discrimination or direct regulation are pre-requisites to *Pike* balancing (which, as discussed above, is an incorrect statement of the law aimed at discouraging this Court from conducting *Pike* balancing altogether, which this Court cannot do based on the record here).

### D. This is the rare case where a statute must be invalidated under *Pike* even if the Court were to find an absence of discrimination or extraterritorial application.

To the extent that this Court finds that there is no evidence at any level of discrimination or extraterritorial application of the Statutes, and Defendants' limited interpretation of *Pike* balancing is controlling, this case nonetheless is ***the rare case*** where a law should be struck under *Pike* balancing absent those factors.  California has taken an industry – gambling – and has isolated it by purporting to build a wall at its borders.  If you participate in the industry in California by owning an interest in a cardroom, you cannot participate in the gambling market anywhere else in the world, even though the operation of a gambling facility, such as a casino, would be lawful where operated.  *See* Cal. Bus. & Prof. Code §§ 19858, 19858.5.  Conversely, if you participate in the gambling industry outside of California, you cannot enter California to participate in California's gambling industry.  *See id*.  Defendants have provided ***no case*** that has blessed such a regulation.  In contrast, Plaintiffs have provided numerous cases that have invalidated regulations that impose barriers such

1   as these, including barriers to investment opportunities, commercial transactions, and commercial

2   relationships.  (Dkt. 86 at 16-23.)

3         This is the economic Balkanization from which the dormant Commerce Clause protects our

4   nationwide economy.  (Dkt. 86 at 22-23.)  If States regulated the industries that operate within their

5   borders in this manner, we would have a patchwork of small, isolated industries, rather than a

6   strong, vibrant, national economy even though "removing state trade barriers was a principal reason

7   for the adoption of the Constitution." *Tenn. Wine & Spirits Retail Assoc. v. Thomas*, 587 U.S. ___,

8   139 S. Ct. 2449, 2460; *accord Dennis v. Higgins*, 498 U.S. 439, 446 (1991) (recognizing that the

9   dormant Commerce Clause "limits the power of the States to erect barriers against interstate

10  trade.").  An endorsement of the Statutes – and the barriers to a national industry that the Statutes

11  impose – is an affront to the Framers' ideals and to the dormant Commerce Clause.

**III.   The Statutes should be struck under *Pike* because the significant burdens imposed on interstate commerce are clearly excessive to the putative benefits.**

13        As discussed in the Motion, the Statutes do not survive *Pike* balancing.  (Dkt. 86 at 14-23.)

14  The Statutes serve no legitimate purpose.  As an independent State agency found, the Statutes do

15  not serve any valid purpose (a conclusion embraced by a predecessor to one of the Defendants),

16  and the burdens the Statutes impose on interstate commerce are so clearly excessive that it would

17  be, in the words of the State agency, "illogical" for the Statutes to remain in effect.  (*See id*.)  The

18  Defendants have not presented ***any*** evidence to undercut this well-supported conclusion or to

19  affirmatively establish that the Statutes provide local benefits or that those local benefits could not

20  be achieved through the less restrictive alternative means identified by Plaintiffs.  If any party is in

21  the position to know whether crime-prevention measures are effective, and to provide the Court

22  with such evidence, it would be the Defendants.  Defendants' silence on this issue is telling.

**A.   The Statutes provide no legitimate benefits**.

24        In an effort to distract this Court from the lopsided and undisputed evidence relevant to this

25  Court's *Pike* balancing analysis, Defendants appear to advocate for a deferential standard of review

26  of the State's claimed local benefits, that ignores reality and focuses solely on conjecture as to

27  whether it was possible for the legislature, at the time of enactment, to believe that the Statutes

28

15

would serve the identified purpose.  (Dkt. 94 at 21-22.)  Further, Defendants urge this Court to refrain from "second-guess[ing] the empirical judgment of state legislatures." (Dkt. 94 at 21.) Defendants are wrong.

First, courts are not required to blindly accept legislative findings as to governmental interests in a vacuum, divested from consideration of how the statute at issue serves (or does not serve) its purposes in the real world.  The Supreme Court has repeatedly held that, when a State's interest is "illusory" or when the "state statute [at issue] contains exemptions," the "deference traditionally accorded to a state" concerning its asserted governmental interests is not appropriate.  *See Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 671 n.12 (1981) (plurality); *Edgar v. MITE Corp.*, 457 U.S. 624, at 644 (1982) (recognizing that an exception that is "at variance" with a challenge regulation "undermine[s]" the asserted governmental interest); *Raymond Motor Transp., Inc.*, 434 U.S. at 445 (discounting governmental interest that was "undercut by a maze of exemptions").  Defendants' own authorities direct this Court to look past the legislative findings, too.  *See Yakima Valley*, 731 F.3d at 849 (recognizing that "the incantation of a purpose to promote the public health or safety does not insulate a state law from [a] Commerce Clause attack" (quoting *Kassal*, 450 U.S. at 670 (plurality))).

Here, California cannot "hold out as legitimate a local purpose that other, existing laws, regulations, and practices clearly contradict[]."  *NCL*, 2021 WL 3471585, at *19.  California has enacted so many exceptions to the Statutes that those exceptions have swallowed the prohibition not only on casino-owners affiliating with California's gambling industry (as prohibited by the Statutes), but also the general prohibition on gambling in California (purportedly barred by Cal. Penal Code § 330).  (Resp. ¶¶ 16-33.)  California is no longer a gambling-free state, but instead, has the second largest gambling market in the country.  (Resp. ¶ 22.)  In response, Defendants claim that the legislatively-enacted exceptions to the Statutes are "not material" or "not relevant" to this Court's analysis of the Statutes.  (Resp. ¶¶ 16-17, 25, 29-30, 32-33.)  But they provide no support for that position and it is in direct contravention of the Supreme Court's explicit instructions to courts to consider exceptions when assessing governmental interests.  Due to the "maze of exemptions" to the Statutes, this Court must look beyond the legislative findings to whether there

16

is any evidence that the Statutes serve their purposes.  On this issue, Plaintiffs have demonstrated that the Statutes serve no valid purpose, and Defendants have submitted not one fact to the contrary. Here, like in *Lewis*, the State "demonstrated no basis" and gave no "reason to conclude" that "the interest" at issue was "well served by the present legislation."  *Lewis*, 447 U.S. at 43-44.

Defendants' attempt to deflect attention from the significance of the gaping exception for tribally-owned casinos within California is misplaced.  By placing Proposition 1A on the ballot, the Legislature and upon passage, the voters, ***authorized gambling on tribal lands within California***, something the Legislature was not required to do.  Proposition 1A is a direct repudiation of the governmental interests that purportedly underlie the Statutes.  Moreover, although it is unclear, Defendants appear to offer a second basis for this Court to ignore the existence of dozens of tribally-owned casinos within California's borders, contending that casinos located on the land of "independent sovereign Indian tribes" should not be imputed to or equated with casinos in California.  (Dkt. 94 at 24 n.12.)  To the extent that Defendants' position can be construed in that manner, it should be summarily rejected.  The California Attorney General's Office has taken a different view in prior litigation, claiming that it is settled law that "an Indian reservation is considered part of the territory of the State."  (Jun. 14, 2022 Cambria Decl. ¶ 4, Ex. A.)

Moreover, the Statutes do not offer anything more than illusory local benefits.  The Statutes cannot protect California from the proliferation of gambling or the organized crime purportedly affiliated with people who hold interests in casinos because casinos and the people affiliated with them are and will remain widespread throughout California regardless of whether the Statutes are in effect or not.  (Resp. ¶¶ 81-85.)  In recognition of this rule-swallowing exception, and the existence of federal and state laws that target organized crime, as well as California's extensive regulations of cardrooms, and the transparency that publicly-traded companies have brought to the casino industry through their ownership of the vast majority of casinos, an independent State agency concluded that the governmental interests to be served by Section 19858 were "no longer

17

valid."[9]  (Resp. 121.)  When, as here, the plaintiffs "produce[] a massive array of evidence to disprove the State's assertion that the regulations make some contribution" to the identified purpose for enactment, the State cannot rest on its legislative findings, along.  *See Raymond Motor Transp., Inc.*, 434 U.S. at 444.

Critically, in the event that the Statutes are invalidated, ***nothing will change*** with respect to the State's ability to prevent crime or the proliferation of casinos.  Cardroom licensees will not be able to open new casinos in California.  *See* Cal. Penal Code § 330.  They will not be able to offer casino-style, banked, or percentage gambling to their patrons at their existing cardrooms.  *See id*. They will not be allowed to engage in organized crime.  *See* Cal. Penal Code §§ 67-68, 92-100, 182-85, 186, 503-515, 518-527.  They will not be allowed to commit crimes of any kind through operation of their cardrooms.  *See id*.  They will not be allowed to form partnerships with individuals engaged in organized crime or otherwise hide the commercial relationships concerning their cardrooms.  *See* Cal. Bus. & Prof. Code §§ 19800 *et seq*.  They will not be allowed to cheat their cardroom patrons.  *See id*.  There already is a law or multiple laws in effect that address and achieve each of State's claimed interests.

*Second*, even if Defendants' more deferential standard is applied, the Statutes still should be invalidated under *Pike* because the illusory benefits are so outweighed by the significant burdens imposed on interstate commerce that it would be irrational, or as the Little Hoover Commission found "illogical," for the Statutes to remain in effect.  Although in theory, Defendants could have produced studies, records, or affidavits from regulators as to the benefits the Statutes provide, they opted to rest their entire defense of the Statutes on the Legislature's findings at the time of

---

[9]    Defendants ask this Court to ignore the findings of an independent State agency – the Little Hoover Commission – because the Commission's report was issued 20 years ago (Dkt. 94 at 25-26), except where those findings suit Defendants (Dkt. 94 at 22 (citing Pls.' RJN Exs. G, H)). Defendants provide this Court with no authority for ignoring a government-generated report simply because it is 20 years old.  More importantly, in this instance, the reasons underlying the Commission's findings have only been amplified by the time that has passed since issuance of the report; namely, there are more casinos, there are more regulations covering and providing the benefits at issue – the prevention of crime and proliferation of gambling, and more publicly-traded companies have invested in casinos, thereby providing greater transparency as to ownership.  (Resp. ¶¶ 20, 26-28, 35-44, 99-115.)

1  enactment.  This conjecture stands in contrast with Plaintiffs' evidence showing that the Statutes

2  provide no local benefits.  Indeed, Plaintiffs' evidence is the only evidence in the summary

3  judgment record about the local benefits.

4

5       **B.**    **The burdens imposed on interstate commerce are clearly excessive to the non-existent local benefits.**

6       As discussed in the Motion, there could not be a stronger record for invalidating a statute

7  under the *Pike* balancing inquiry.  (Dkt. 86 at 14-23.)  Defendants have done nothing to enable this

8  Court to tip the scales in their favor.  They have not provided proof that controverts Plaintiffs

9  evidence, nor have they provided any affirmative proof for this Court's consideration.  "The State,

10  for its part, virtually defaulted in its defense of the [Statutes] as a safety measure." *Raymond Motor*

11  *Transp., Inc.*, 434 U.S. at 444.  Instead, the Court's entire analysis rises and falls on the record that

12  Plaintiffs have amassed, and that record is crystal clear – the burdens imposed on interstate

13  commerce are clearly excessive in comparison to the non-existent local benefits.  Under these

14  circumstances, the Defendants have defaulted on their burden, and this Court should grant summary

15  judgment in Plaintiffs' favor.  *See, e.g.*, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ("Rule

16  56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

17  against a party who fails to make a showing sufficient to establish the existence of an element

18  essential to that party's case, and on which that party will bear the burden of proof at trial.").

19       In a final effort to cast aspersion on the righteousness of Plaintiffs' claim, Defendants suggest,

20  yet again, that it is somehow improper for Plaintiffs to challenge Section 19858.5 because they

21  advocated for its enactment (which provided minor relief from the absolute ban on casino interests

22  found in Section 19858).  (*See* Dkt. 94 at 26.)  As the Ninth Circuit has already told Defendants,

23  there is no "theory of *judicial* estoppel that would preclude relief on the basis of a

24  litigant's *legislative* lobbying." *Flynt v. Shimazu*, 940 F.3d 457, 456 (9th Cir. 2019) (emphasis

25  added).  It was understandable to the Ninth Circuit that Plaintiffs would challenge Section 19858.5,

26  notwithstanding their prior lobbying because Plaintiffs support for the "adoption of § 19858.5's

27  one-percent limitation at a time when § 19858 completely banned investment in out-of-state

28  casinos is not inconsistent with their position later that even the one-percent exception violates the

19

1  Constitution." *Id*.  What is not understandable is why Defendants continue to cling to this non-
2  existent theory of estoppel long after it was expressly rejected by the Ninth Circuit, particularly
3  because Plaintiffs have reminded Defendants of the Ninth Circuit's rebuke on more than one
4  occasion (Dkt. 51 at 9 n.8; Dkt. 63 at 14).  It is baffling that this argument continues to make its
5  way into submissions.

6  **III.   Declaratory and permanent injunctive relief should be granted.**

7      In the Motion, Plaintiffs established that the Statutes should be declared invalid under the
8  dormant Commerce Clause and permanently enjoined.  (Dkt. 86 at 23-25.)  By electing to ignore
9  these portions of the Motion (Dkt. 94 at 27 n.16), Defendants have conceded that these remedies –
10  declaratory and permanent injunctive relief – are appropriate if Plaintiffs prevail on the Motion.

11                      **CONCLUSION**

12      For all these reasons, Plaintiffs respectfully request that this Court grant the Motion, thereby
13  declaring the Statutes unconstitutional, and permanently enjoining Defendants from enforcing the
14  Statutes.

15  Dated:  June 14, 2022                    Respectfully Submitted,

16
17                                     LIPSITZ GREEN SCIME CAMBRIA LLP

18                                     By:    /s/ Paul Cambria
19                                     *Attorneys for Plaintiffs*

20
21
22
23
24
25
26
27
28