PAUL J. CAMBRIA, JR.  (State Bar No. 177957)
ERIN MCCAMPBELL PARIS (*pro hac vice*)
   pcambria@lglaw.com
   emccampbell@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware, Suite 120
Buffalo, New York 14202-3924
Telephone: (716) 849-1333

*Attorneys for Plaintiffs*
*Elizabeth Flynt, Haig Kelegian, Sr.,*
*and Haig T. Kelegian, Jr.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO BRANCH

ELIZABETH FLYNT, HAIG KELEGIAN, SR., and HAIG T. KELEGIAN, JR.,

                 Plaintiffs,

vs.

ROB BONTA, in his official capacity as Attorney General of the State of California; NATHAN DaVALLE, in his official capacity as the Acting Director of the California Department of Justice, Bureau of Gambling Control; PAULA D. LaBRIE, in her official capacity as Chair of the California Gambling Control Commission; ERIC C. HEINS, in his official capacity as Commissioner of the California Gambling Control Commission; EDWARD YEE, in his official capacity as Commissioner of the California Gambling Control Commission, CATHLEEN GALGIANI, in her official capacity as Commissioner of the California Gambling Control Commission; WILLIAM LIU, in his official capacity as Commissioner of the California Gambling Control Commission,

                 Defendants.

CIVIL CASE NO. 16-CV-02831-JAM-EFB

**DECLARATION OF PAUL J. CAMBRIA, JR. IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, PERMANENT INJUNCTION, DECLARATORY JUDGMENT**

1

## DECLARATION OF PAUL J. CAMBRIA, JR.

## <u>DECLARATION OF PAUL J. CAMBRIA, JR.</u>

I, Paul J. Cambria, Jr., hereby declare and state:

1.　　I am an attorney licensed to practice law in the State of California, and an attorney at the law firm of Lipsitz, Green, Scime, Cambria, LLP, counsel to Plaintiffs Elizabeth Flynt, Haig Kelegian, Sr., and Haig T. Kelegian, Jr. ("Plaintiffs") in this action.  I am over the age of eighteen.  I have personal and first-hand knowledge of the facts set forth herein, and if called upon to testify, I could and would competently testify to the following.

2.　　I make this declaration in further support of Plaintiffs' Motion for Summary Judgment, Declaratory Judgment, and Permanent Injunction ("Motion," Dkt. 86), and in opposition to the Defendants' Notice of Cross-Motion and Cross-Motion for Summary Judgment ("Cross-Motion," Dkt. 94).

3.　　In the Cross-Motion, Defendants appear to suggest that this Court should ignore the existence of dozens of casinos located throughout the State of California because those casinos are located on "tribal land" that is "governed by independent sovereign Indian tribes, and not by the State of California, or any other state."  (Dkt. 94 at 24 n.12.)

4.　　This position stands in stark contrast with the position the California Attorney General has taken in prior, unrelated litigation, wherein the Attorney General was dismissive of the principle of sovereignty, asserting that "an Indian reservation is considered part of the territory of the state."  (A true and correct copy of the Attorney General's reply brief in *People v. Native Supply Wholesale Company*, Cal. Case No. 34-2008-00014593.)


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this June 14, 2022, at Buffalo, New York

　　　　　　　　　　　　　　　　　 */s/ Paul J. Cambria, Jr.*
　　　　　　　　　　　　　　　　　PAUL J. CAMBRIA, JR.

2

**DECLARATION OF PAUL J. CAMBRIA, JR.**

# EXHIBIT A

EXHIBIT A

1  KAMALA D. HARRIS
   Attorney General of California
2  KAREN LEAF
   Senior Assistant Attorney General
3  MICHAEL M. EDSON, SBN 177858
   MICHELLE HICKERSON, SBN 199748
4  Deputy Attorneys General
   600 West Broadway, Suite 1800
5  San Diego, CA 92101
   Telephone:  (619) 738-9307
6  Fax:  (619) 645-2012
   Email:  Michelle.Hickerson@doj.ca.gov
7  *Attorneys for Plaintiff*
   *People of the State of California*

8

   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

   COUNTY OF SACRAMENTO

10

11

12

| | |
|---|---|
| 13  **PEOPLE OF THE STATE OF CALIFORNIA EX REL. KAMALA D.** | Case No. 34-2008-00014593 |
| 14  **HARRIS, ATTORNEY GENERAL,** | **REPLY MEMORANDUM IN SUPPORT OF PEOPLE'S MOTION FOR** |
| 15                    Plaintiff, | **SUMMARY JUDGMENT** |
| 16            v. | |
| 17  **NATIVE WHOLESALE SUPPLY** | Date:          November 17, 2016 |
| 18  **COMPANY, et al.,** | Time:          2:00 p.m.<br>Dept:          53 |
| 19                    Defendant. | Judge:         Hon. David I. Brown<br>Trial Date:    Feb. 21, 2017 |
| 20 | Action Filed:  June 30, 2008 |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 2

I.  There are no Triable Issues and the People are Entitled to Judgment on the
    Merits of All Causes of Action ............................................................................. 2

    A.  There are No Triable Issues of Fact Precluding Summary Judgment.......... 2

    B.  The Directory Statute Applies to NWS....................................................... 4

II. NWS's Affirmative Defenses Lack Merit............................................................. 6

    A.  Preemption ................................................................................................. 6

    B.  Equal Protection ......................................................................................... 7

III. NWS's Arguments Regarding Civil Penalties and an Injunction are Based
     on Misstatements of Law and Inadmissible Evidence .......................................... 8

    A.  Civil Penalties ............................................................................................ 8

    B.  Injunction .................................................................................................. 9

CONCLUSION .............................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Abdu-Brisson v. Delta Airlines, Inc.*
(2d Cir. 2001) 239 F.3d 456 .................................................................................8

*Acosta v. San Diego County*
(1954) 126 Cal.App.2d 455 .................................................................................4

*Aguilar v. Atlantic Richfield Co.*
(2001) 25 Cal.4th 826 .......................................................................................3, 8

*B.H. v. County of San Bernardino*
(2015) 62 Cal.4th 168 .........................................................................................4

*Brockey v. Moore*
(2003) 107 Cal.App.4th 86 ................................................................................10

*Cahill v. San Diego Gas & Elec. Co.*
(2011) 194 Cal.App.4th 939 ............................................................................2, 4

*Celotex Corp. v. Catrett*
(1986) 477 U.S. 317 ............................................................................................1

*Chemehuevi Indian Tribe v. California State Bd. of Equalization*
(9th Cir. 1986) 800 F.2d 1446 ............................................................................4

*Colgan v. Leatherman Tool Group, Inc.*
(2006) 135 Cal.App.4th 663 ...............................................................................9

*Department of Ag. v. Tide Oil Co.*
(1969) 269 Cal.App.2d 145 ...............................................................................10

*FCC v. Beach Communications, Inc.*
(1993) 508 U.S. 307 ............................................................................................7

*Hewlett v. Squall Valley*
(1997) 54 Cal.App.4th 499 ................................................................................10

*In re Firearm Cases*
(2005) 126 Cal.App.4th 959 ...............................................................................6

*Kimco Staffing Services, Inc. v. State*
(2015) 236 Cal.App.4th 875 ...............................................................................7

*Lee v. Davis*
(1983) 141 Cal.App.3d 989 ...............................................................................10

ii

1

## TABLE OF AUTHORITIES
(continued)

2

Page

3

*Lewis v. Ascension Parish School Bd.*
(5th Cir. 2015) 806 F.3d 344 ...................................................................................... 7

4

*Nevada v. Hicks*
(2001) 533 U.S. 353 .................................................................................................. 4

5

6

*North Coast Business Park v. Nielsen Construction Co.*
(1993) 17 Cal.App.4th 22 .......................................................................................... 2

7

8

*Paul v. Milk Depots Inc.*
(1964) 62 Cal.2d 129 ............................................................................................. 9, 10

9

*People v. Arcadia Machine & Tool, Inc.*
(Cal. Super. Ct., Apr. 10, 2003, No. 4095) 2003 WL 21184117 ............................... 6

10

11

*People v. JTH Tax, Inc.*
(2013) 212 Cal.App.4th 1219 ................................................................................... 10

12

13

*People v. National Association of Realtors*
(1981) 120 Cal.App.3d 459 .................................................................................... 9, 10

14

*People v. Salazar-Merino*
(2001) 89 Cal.App.4th 590 ........................................................................................ 5

15

16

*People v. Super. Ct.*
(2015) 234 Cal.App.4th 1360 ..................................................................................... 8

17

18

*Phillips v. Anderson County School Dist. Five*
(D.S.C. 1997) 987 F.Supp. 488 ................................................................................. 1

19

*Reeves v. Safeway Stores, Inc.*
(2004) 121 Cal.App.4th 95 ........................................................................................ 2

20

21

*Rubio v. Superior Court*
(1979) 24 Cal.3d 93 ................................................................................................... 7

22

23

*Santa Ana Unified School Dist. v. Orange County Development Agency*
(2001) 90 Cal.App.4th 404 ........................................................................................ 6

24

25

26

27

28

REPLY MEMORANDUM IN SUPPORT OF PEOPLE'S MSJ (34-2008-00014593

# TABLE OF AUTHORITIES
**(continued)**

**Page**

**STATUTES**

Business & Professions Code
    § 17206................................................................................................................8

Health & Safety Code
    § 104555 et seq. ............................................................................................5, 6
    § 104556, subd (j) ............................................................................................5

Revenue & Taxation Code
    § 30013................................................................................................................4
    § 30165.1............................................................................................................6
    § 30165.1, subd. (b) ..........................................................................................6
    § 30165.1, subd. (e)..........................................................................................4
    § 30165.1, subd. (e)(2) & (3) ..........................................................................5

**COURT RULES**

California Rules of Court,
    3.1113............................................................................................................2, 6
    3.1350(e) & (f) ..................................................................................................6
    3.1350(f)(2) ......................................................................................................2

iv

# INTRODUCTION

One of the main purposes of summary judgment is to "dispose of factually unsupported claims or defenses" (*Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323–324), in other words, to "dispos[e] of meretricious, pretended claims before the court and parties become entrenched in a frivolous and costly trial" (*Phillips v. Anderson County School Dist. Five* (D.S.C. 1997) 987 F.Supp. 488, 491-492).  Nothing in NWS's opposition creates a triable issue of fact or otherwise warrants denial of the People's motion for summary judgment.  Nor does it warrant denial of a permanent injunction or the total amount of civil penalties requested.  As to summary judgment:

- Despite labeling several facts as "disputed," NWS fails to properly demonstrate that there are any issues of material fact that require a trial.  Among other things, the evidence NWS relies on is inadmissible and, even if it were admissible, it is insufficient to create a triable issue regarding any material fact.

- The only legal argument NWS makes concerning the merits of the People's claims (that the Directory Stature did not apply to NWS) is foreclosed by the unambiguous text of the statute, which states that it applies to "any person" without exception.

- The only affirmative defenses that NWS even attempts to carry its burden about – preemption and equal protection – fail as a matter of law because, among other reasons, NWS misstates the standard for preemption.  Under the correct standard, NWS has not carried its burden.

On the basis of the above, the Court can and should grant summary judgment.  As to penalties and an injunction:

- Penalties:  NWS argues that a trial is required to determine how many cigarettes were sold to non-Indians.  There is, however, no dispute that every sale that NWS is charged with was made by NWS to only one entity: Big Sandy.  If NWS has a legal argument that it may not be held liable for these sales, NWS does not make it, except perhaps in connection with its preemption defense, which (a) lacks merit, and (b) does not create a triable issue either.

- Injunction:  Under the correct legal standard, which NWS fails to cite, the Court

1

1    should issue an injunction *unless* there is "no reasonable possibility" that NWS will

2    restart illegal sales in California.  The undisputed evidence shows that there is such a

3    possibility, and hence an injunction should issue.

4        For the foregoing reasons, the People respectfully request that the Court grant them

5    summary judgment, order NWS to pay $4,292,500 in civil penalties, and issue a permanent

6    injunction in the form specified in the People's moving papers.

## ARGUMENT

**I.    THERE ARE NO TRIABLE ISSUES AND THE PEOPLE ARE ENTITLED TO JUDGMENT ON THE MERITS OF ALL CAUSES OF ACTION**

### A.    There are No Triable Issues of Fact Precluding Summary Judgment

Simply labeling a fact as "disputed" in the separate statement is not enough to create a triable issue that precludes summary judgment.  The purpose of the separate statement, and the rules about it, is to ease the "burdens imposed upon the trial court."  (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 31.)  To promote this purpose, a party's separate statement opposing summary judgment may not simply say that a fact is "disputed."  It also must explain the "nature of the dispute" and cite evidence that supports its position by "reference to the exhibit, title, page, and line numbers" where the allegedly supporting evidence may be found.  (Cal. Rules of Court, rule 3.1350(f)(2).)  NWS failed to satisfy either requirement.  These failures alone are fatal to NWS's opposition.  (See *North Coast, supra,* 17 Cal.App.4th at p. 31; *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 105-106 ["courts have the inherent power to strike proposed 'undisputed facts' that fail to comply with the statutory requirements and that are formulated so as to impede rather than aid an orderly determination whether the case presents triable material issues of fact"].)  Not only does NWS's separate statement fail to explain the nature of the alleged "dispute" and cite evidence to support it, but so does its memorandum, a separate violation sufficient to reject NWS's arguments outright.  (See, e.g., *Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956 [points not supported by reasoned argument and citation to authority waived]; Cal. Rules of Court, 3.1113.)

More importantly, a court can find a triable issue of fact "if, *and only if,* the evidence would

2

1    allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the

2    motion." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Here, none of NWS's

3    allegedly "disputed" facts satisfy this standard:

4         First, all of NWS's "disputes" are non-sequiturs that do not show any genuine dispute. For

5    example, Fact 22 states that the Fire Marshall has no record of any required certifications

6    submitted pursuant to the Fire Safety Act. NWS's "dispute" of this fact (that NWS allegedly

7    relied in good faith on the manufacturer's markings) is not in conflict with the evidence about the

8    Fire Marshall's records and so would not allow a fact-finder to find in favor of NWS on this

9    point. Similarly, Fact 11 states that 15 NWS employees promoted cigarettes in California. NWS

10   "disputes" this fact by asserting "NWS sold cigarettes to Big Sandy" and other facts unrelated to

11   promotions. Even if NWS's assertions were true and admissible (see below), they do not create a

12   triable issue as to whether NWS promoted cigarettes in California. The same sort of fatal defect

13   is found in NWS's opposition to Facts 5-12, 15, 21, 23, and 29.

14        Second, several of NWS's "disputes" conflict with NWS's own admissions, and thus are

15   insufficient to create a triable issue. (See Weil and Brown, Cal. Practice Guide: Civil Procedure

16   Before Trial (The Rutter Group 2015) ¶ 10:155 ["when discovery has produced an admission or

17   concession, controverting affidavits submitted by that party may be disregarded"].) For example,

18   Fact 7 quotes and is based on NWS's admission that, "NWS admits that it arranged for GRE-

19   CIGARETTES to be shipped or transported to CALIFORNIA." (See evidentiary citation to Fact

20   7.) Yet NWS now disputes its own admission. The same is true for the People's Facts 5-12, 15,

21   21, 23, and 29, which simply quote or paraphrase NWS's own discovery responses.

22        Third, NWS's evidence in support of the alleged "disputes" is all inadmissible. NWS's

23   disputes of Facts 5-12, 15, 23, and 29 all are based on exactly the same boilerplate paragraphs 4-6

24   of the Declaration of Erlind Hill, which are inadmissible. (See Reply Objections to Evidence

25   ("Reply Obj. Evid.") ¶¶ 1-4, filed herewith.) Similarly, NWS's disputes of Facts 21-22 are based

26   solely on citation to NWS's answer, which also is inadmissible. (See Reply Obj. Evid., ¶ 7.) And

27   Exhibits A and B to the Hill declaration, cited only in NWS's memorandum, are inadmissible

28   because they are hearsay and irrelevant. (See Reply. Obj. Evid., ¶¶ 5-6.)

1    Finally, NWS's "disputes" of Facts 5-12, 15, and 29 suffer from one further defect, in

2 addition to all the fatal defects noted above.  In each instance, NWS states, "Big Sandy . . . is

3 separate from California," apparently attempting to argue that it is not liable under the first cause

4 of action (shipping, selling, and/or importing, off-Directory cigarettes in or into California, or the

5 third cause of action (selling non-fire-safe-certified cigarettes in California).  NWS, however,

6 already has admitted that its sales, shipments, promotions, and so forth all were geographically in

7 or into California, as defined by the laws at issue.  (See NWS's admissions cited in support of

8 Facts 5-12, 15, and 29; see also NWS's response to Fact 3 [undisputed that Big Sandy is in

9 California within the meaning of the laws at issue; Rev. & Tax. Code, §§ 30165.1, subd. (e)

10 [defining violation]; 30013 [defining "this state"].)  There is, therefore, no genuine dispute about

11 this fact.  (NWS's response to Fact 23 uses different language but suffers from the same defect.)

12    In any event, as a matter of law, NWS's statement is false.  Not only does California law

13 specify Indian land as being part of California for the purpose of liability under the statutes at

14 issue (Rev. & Tax. Code, § 30013), but even outside that context, every court with jurisdiction in

15 California has rejected NWS's position.  (See *Nevada v. Hicks* (2001) 533 U.S. 353, 362 ["an

16 Indian reservation is considered part of the territory of the State"]; *Acosta v. San Diego County*

17 (1954) 126 Cal.App.2d 455, 463; *Chemehuevi Indian Tribe v. California State Bd. of*

18 *Equalization* (9th Cir. 1986) 800 F.2d 1446, 1450.)  NWS makes no argument and cites no

19 authority to the contrary, thus waiving the issue.  (See *Cahill, supra,* 194 Cal.App.4th at p. 956.)

20    **B.    The Directory Statute Applies to NWS**

21    The only argument that NWS makes that goes to the merits of the People's affirmative case

22 is that the Directory Statute did not apply to NWS's cigarette sales during the time at issue (June

23 29, 2004 to May 25, 2012).  Because the "meaning and construction of a statute is a question of

24 law," NWS's argument, even if it had merit, could not create a triable issue.  (*B.H. v. County of*

25 *San Bernardino* (2015) 62 Cal.4th 168, 189.)  And the short answer to whether NWS's argument

26 has merit is that the Directory Statute clearly and unambiguously applies to NWS's conduct at

27 issue.  Consequently, there is no need or authority to wade into the convoluted and confusing

28 recitation of the legislative histories that NWS offers.  "Courts may look to extrinsic evidence to

4

1   construe a statute *only* when the statutory language is susceptible of more than one reasonable

2   interpretation." (*People v. Salazar-Merino* (2001) 89 Cal.App.4th 590, 596, italics in original.)

3          The Directory Statute provides (and has provided at all relevant times) that "***No person***

4   shall [sell, ship, and all the other things listed in the statute] cigarettes of a tobacco product

5   manufacturer or brand family not included in the [Attorney General's Directory]" (Rev. & Tax.

6   Code, § 30165.1, subd. (e)(2) & (3), emphasis added), and as noted above, applies everywhere "in

7   this state" including Indian country.  The statute does not carve out an exception for certain kinds

8   of persons, or for manufacturers who may or may not have to comply with other statutes.  NWS

9   does not argue the statute is ambiguous or unclear in this regard, or otherwise demonstrate how

10  the Court is authorized to disregard the plain text of the statute and even consider NWS's

11  convoluted argument based on extrinsic evidence.

12         Even if the Court were to consider NWS's extrinsic evidence, it would still have to reject

13  NWS's argument.  First, key pieces of that evidence lack foundation, are hearsay, and otherwise

14  are inadmissible.  (See Reply Obj. Evid., ¶¶ 5-6.)  Second, NWS's argument is fallacious on its

15  face.  NWS argument is based entirely on its claim that, prior to its amendment (by SB 680

16  (2013), effective Jan. 1, 2014), the Escrow Statute (Health & Saf. Code, § 104555 et seq.) did not

17  apply to "tribal land."  (NWS Opp. Mem., p. 8.) [1]  NWS then says:

18         Because the "loophole"[in the Escrow Statute] was not corrected until 2013 [sic],
           NWS was under no legal obligation to comply with the mandates of the Directory and
19         Escrow Statutes at the time of the cigarette sales at issue in this case (i.e. 2004-2012).
           Indeed, those statutes specifically exempted NWS cigarette sales. Thus, NWSC
20         cannot be penalized for the alleged off-Directory sales in made from 2004 to 2012.

21  (*Ibid.*)  Everything after the first eight words is an ipse dixit.  NWS does not, and cannot, explain

22  how a "loophole" in the Escrow Statute affects NWS's (or anyone's) obligations under the

23  Directory Statute.  The text of the statutes shows that the statement that "those statutes [Escrow

24  and Directory] specifically exempted NWS cigarette sales" – for which NWS cites no authority –

25  _____

26         [1] This is false.  The "loophole" was for any cigarettes *on which tax was not paid*; it had
    nothing to do with tribal land.  (See Exh A, p. 4 [pre-2014 version of § 104556, subd (j)]) The
27  amendment to that statute closed this loophole for all cigarettes except those cigarettes that are
    *tax-exempt*.  (The pre-2014 statute and SB 680, amending it effective 2014, are attached for the
28  Court's convenience as Exhibits A & B.)

1  is false. (See Health & Saf. Code, 104555 et seq. (2012) [attached hereto as Exh. A for the

2  Court's convenience]; SB 680 (2013) [Exh. B hereto]; Rev. & Tax Code, § 30165.1.)

3       Regardless of what the Escrow Statute may or may not require, the Directory Statute

4  requires "every" tobacco product manufacturer (not just those to whom the Escrow Statute

5  applies) whose cigarettes are sold in this state to be on the Directory, and prohibits "any person"

6  from selling cigarettes whose manufacturer and brand is not listed. (Rev. & Tax. Code,

7  § 30165.1, subd. (b).) NWS does not dispute that the manufacturer of cigarettes it sold, shipped,

8  etc. was not on the Directory. (See NWS Opp. UF 2.) Nor does NWS point to any exception for

9  entities like NWS in the Directory Statute.

10  **II.   NWS'S AFFIRMATIVE DEFENSES LACK MERIT**

11       NWS has the burden of establishing the elements of any affirmative defense. (*Santa Ana*

12  *Unified School Dist. v. Orange County Development Agency* (2001) 90 Cal.App.4th 404, 411.)

13  Here, NWS has offered no argument and no evidence regarding any of its affirmative defenses

14  except preemption and equal protection, and thus the People are entitled to judgment on all the

15  rest. NWS fairs no better on the two defenses it does discuss:

16      **A.   Preemption**

17       Every point must be supported by reasoned argument and citation to authority in a party's

18  memorandum. (See Cal. Rules of Court, rule 3.1113.) Nothing in the rules allows for a party

19  simply to cross-reference the argument made in another motion. (See *People v. Arcadia Machine*

20  *& Tool, Inc.* (Cal. Super. Ct., Apr. 10, 2003, No. 4095) 2003 WL 21184117, at *17, fn. 2, aff'd

21  sub nom. *In re Firearm Cases* (2005) 126 Cal.App.4th 959.) Indeed, allowing a party to do so

22  would be a license to ignore the statutory page limits for memoranda. Moreover the rules require

23  that a party opposing a motion for summary judgment include a separate statement asserting all

24  material facts on which it relies. (See, e.g., Cal. Rules of Court, rule 3.1350(e) & (f).)

25  Accordingly, NWS's preemption argument, which simply refers the Court to NWS's argument

26  and evidence in another motion, should be rejected. If the Court permits incorporation by

27  reference, NWS's preemption defense should be rejected for all the reasons stated in the People's

28  Memorandum in Opposition to NWS's Motion for Summary Judgment, dated August 30, 2016.

6

1    **B.    Equal Protection**

2    As explained in the People's opening papers, NWS's equal protection defense fails

3    because: NWS does not allege in its answer that it is a member of any of the classes it claims the

4    statutes at issue discriminate against except the class of persons who want to sell cigarettes to

5    Indian tribes or their members; discrimination against that class is subject only to rational basis

6    review; and under rational basis review, NWS's defense fails as a matter of law.  (See *Rubio v.*

7    *Superior Court* (1979) 24 Cal.3d 93, 103 ["charge of unconstitutional discrimination can only be

8    raised . . . by . . . a member of the class of persons discriminated against"].)  NWS does nothing to

9    address these failures, neither attempting to argue that its failure to plead that it is the member of

10   a protected class is not fatal, nor attempting to "negative every conceivable rational basis that

11   could support [the challenged statute]."  (*FCC v. Beach Communications, Inc.* (1993) 508 U.S.

12   307, 315.)  Even if NWS had attempted to do these things, that still would not have created a

13   triable issue of fact, as NWS contends, because rational basis review is a question of law and "not

14   subject to courtroom fact-finding."  (*Ibid.*).

15   NWS complains that summary judgment is inappropriate when a defendant has raised an

16   equal protection defense that alleges that a statute was enacted with a discriminatory purpose.

17   This contention fails for three reasons.  First, NWS makes no argument and offers no evidence

18   that the statutes at issue have a discriminatory effect, which is an essential element of its equal

19   protection defense.  (See *Kimco Staffing Services, Inc. v. State* (2015) 236 Cal.App.4th 875, 884

20   [first step in equal protection analysis is to determine whether challenged statute has

21   discriminatory effect]; *Lewis v. Ascension Parish School Bd.* (5th Cir. 2015) 806 F.3d 344, 359,

22   cert. denied (2016) 136 S.Ct. 1662 ["To subject a facially race neutral government action to strict

23   scrutiny, the plaintiff must establish both discriminatory intent and a disproportionate adverse

24   effect upon the targeted group"]; see also Answer [dated Sept. 18, 2014], p. 8, lines 2-7 [equal

25   protection defense alleging discriminatory purpose *and* effect].)  NWS's defense therefore fails

26   without even reaching the issue of statutory purpose.

27   Second, as noted in the People's opening papers, the purpose of a statute is not relevant to

28   rational basis review and only is an issue if the alleged discrimination is against a suspect

7

1 classification (race, nationality, alienage), which NWS fails to establish or even argue.

2      Third, even if the statutes at issue were subject to more than rational basis review, NWS's

3 mere allegation that the statutes were enacted with a discriminatory purpose, without facts

4 sufficient to support such a finding, does not create a triable issue.  A court can find a triable issue

5 of material fact "if, and only if, the evidence would allow a reasonable trier of fact to find the

6 underlying fact in favor of the party opposing the motion in accordance with the applicable

7 standard of proof."  (*Aguilar, supra,* 25 Cal.4th at p. 850.)  NWS has not satisfied this standard

8 here, and its mere claim of unconstitutional discrimination is insufficient to bar summary

9 judgment.  "The salutary purposes of summary judgment – avoiding protracted, expensive and

10 harassing trials – apply no less to discrimination cases than to . . . other areas of litigation."

11 (*Abdu-Brisson v. Delta Airlines, Inc.* (2d Cir. 2001) 239 F.3d 456, 466.)

## III. NWS'S ARGUMENTS REGARDING CIVIL PENALTIES AND AN INJUNCTION ARE BASED ON MISSTATEMENTS OF LAW AND INADMISSIBLE EVIDENCE

13      As an initial matter, NWS does not dispute that civil penalties and injunctive relief are

14 remedies – not part of any cause of action – and thus a factual dispute as to these issues would not

15 justify denial of summary judgment.  (See *People v. Super. Ct.* (2015) 234 Cal.App.4th 1360,

16 1372-1377.)  If there are any disputed material facts, the Court may grant summary judgment and

17 then hold a simple evidentiary hearing to resolve factual issues pertaining to remedies.  (See *ibid.*)

18 In any event, however, there are no such disputed facts:

### A. Civil Penalties

20      Regarding the factors used to determine the magnitude of the penalty imposed (Bus. &

21 Prof. Code, § 17206), NWS does not dispute any part of the discussion in the People's opening

22 papers that demonstrates that the Court should impose a $2,500 penalty per invoiced transaction.

23 Instead, NWS argues that there is a triable issue of fact regarding how many cigarettes at issue

24 were sold to "non-Indians."  This argument fails for several reasons.  First, the People's argument

25 – which NWS does not dispute – is that the penalty should be imposed on a per-transaction basis,

26 regardless of the number of cigarettes involved.  This is unlike *Huber* on which NWS relies,

27 where the penalty imposed was based on the number of cigarettes sold.  Second, *there is no*

28

8

1  *factual dispute* as to whom NWS sold all the cigarettes at issue: Big Sandy. (See NWS Opp. UF

2  4.) If there is any dispute, it is a legal one about whether NWS can be held liable for those sales.

3  But NWS makes no argument that it is not liable for such sales, except to the extent that its

4  preemption defense might suggest that conclusion. That defense, however, also does not create a

5  triable issue, and indeed fails as a matter of law for reasons discussed above (p. 6.)

6  **B.    Injunction**

7      Under the correct standard, "[i]njunctive relief will be denied [only] if . . . there is ***no***

8  ***reasonable probability*** that the past acts complained of will recur." (*Colgan v. Leatherman Tool*

9  *Group, Inc.* (2006) 135 Cal.App.4th 663, 702, citations and quotations omitted, emphasis added.)

10  The case on which NWS relies states the same rule, although NWS fails to apprise the Court of

11  this. (See *People v. National Association of Realtors* (1981) 120 Cal.App.3d 459, 476.)

12      Under this standard, NWS's arguments fail. NWS appears to contend that because (a) it

13  ceased selling cigarettes in California in 2012, (b) it is "a bankrupt company," and (c) an

14  individual described only as "a manager" of NWS states that "NWS does not intend to restart

15  such sales," then injunctive relief is unavailable as a matter of law.

16      To begin, NWS's recitation of the facts is, at best, disingenuous. NWS says it is "a

17  bankrupt company," but fails to mention that it successfully emerged from bankruptcy over two

18  years ago. (See *In re Native Wholesale Supply Co.* (U.S. Bankr. W.D.N.Y., no. 11-14009-CLB),

19  Order Confirming Bankruptcy Plan [July 29, 2014] & Disclosure Statement [June 13, 2014].)

20  NWS makes no argument and offers no evidence that it ceased selling cigarettes in California

21  because of its bankruptcy, or that its current financial condition impairs its ability to restart such

22  sales, or that its past bankruptcy is relevant to any issue in this action.

23      *Paul v. Milk Depots Inc.* (1964) 62 Cal.2d 129, NWS's only authority, does not dictate a

24  different conclusion. It is true that the court in that case denied an injunction, holding that it

25  would be "unnecessary" and "ineffectual." But not, as NWS falsely claims, because the entity at

26  issue was "bankrupt." Rather, (1) the company had lost its license to distribute milk, and so could

27  no longer sell in the state at any price, making it impossible for it to violate in the future the price

28  restrictions it had violated in the past (*id.,* at p. 133); and (2) the pricing regulation the defendant

1   had violated had been repealed (*id.*, at pp. 133-134).  NWS offers no argument and no evidence

2   that its situation is similar to that in *Milk Depot* in any material respect.

3          The only other fact on which NWS bases its argument is equally devoid of significance:

4   That NWS allegedly has no intent to start reselling cigarettes in California.  (NWS Opp. UF 34,

5   last sentence.)  The only evidence supporting this alleged fact (Declaration of Erlind Hill [dated

6   Oct. 19, 2016] ¶ 4, p. 2, lines 7-8) is inadmissible.  (See Reply Obj. Evid, ¶ 1.)  Moreover, even if

7   what Mr. Hill states were admissible, it would not be sufficient to support NWS's argument.

8   Under the applicable standard – whether there is "no reasonable possibility" that NWS will

9   resume its unlawful conduct – a statement of NWS's present intent is not sufficient to conclude

10  that NWS will not resume that conduct.  (See, e.g., *Department of Ag. v. Tide Oil Co.* (1969) 269

11  Cal.App.2d 145, 150 ["a permanent injunction may be issued where a guilty party retains the

12  means of continuing his transgressions, even though he testifies that he no longer intends to do

13  so"]; *Brockey v. Moore* (2003) 107 Cal.App.4th 86, 103 [same]; *Hewlett v. Squall Valley* (1997)

14  54 Cal.App.4th 499, 540-542 [same]; *People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1256

15  ["without an injunction, Liberty could easily and indeed unilaterally change its policies"].)

16         The cases NWS cites are not to the contrary.  In both cases, the court based its decision to

17  deny an injunction on several factors including a finding that the defendant has discontinued its

18  illegal behavior in "good faith"; not on the defendant's statement of present intent alone.  (See

19  *National Association of Realtors, supra*, 120 Cal.App.3d at pp. 476-477; *Lee v. Davis* (1983) 141

20  Cal.App.3d 989, 993-994.)  NWS makes no argument that any such factors apply here.  For

21  example, NWS offers no explanation as to why it ceased California sales in 2012, much less

22  evidence that its cessation was in good faith.  In fact, the People's opening papers cited

23  substantial evidence that there is a high probability that NWS will resume its illegal sales in

24  California, none of which NWS acknowledges, much less disputes.  (See People's Mem. in

25  Support of MSJ [dated Aug. 30, 2016], pp. 15-16.)

26                                    **CONCLUSION**

27         Therefore, the People request that the Court grant them summary judgment, order NWS to

28  pay civil penalties, and issue a permanent injunction as specified in the People's moving papers.

REPLY MEMORANDUM IN SUPPORT OF PEOPLE'S MSJ (34-2008-00014593

1    Dated:  November 3, 2016

2

3

4

5

6

7

8    SD2011302386

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAMALA D. HARRIS
Attorney General of California
KAREN LEAF
Senior Assistant Attorney General
MICHAEL M. EDSON
MICHELLE HICKERSON
Deputy Attorney General


MICHELLE HICKERSON
*Attorneys for Plaintiff*
*People of the State of California*

REPLY MEMORANDUM IN SUPPORT OF PEOPLE'S MSJ (34-2008-00014593

# EXHIBIT A

| West's Annotated California Codes |
| --- |
| Health and Safety Code (Refs & Annos) |
| Division 103. Disease Prevention and Health Promotion (Refs & Annos) |
| Part 3. Risk Reduction (Refs & Annos) |
| Chapter 1. Tobacco Control (Refs & Annos) |
| Article 3. Master Settlement Agreement (Refs & Annos) |

West's Ann.Cal.Health & Safety Code § 104555

§ 104555. Findings and declarations of the Legislature

Effective: January 1, 2000
Currentness

The Legislature finds and declares all of the following:

(a) Cigarette smoking presents serious public health concerns to the state and to the citizens of the state. The Surgeon General has determined that smoking causes lung cancer, heart disease, and other serious diseases, and that there are hundreds of thousands of tobacco-related deaths in the United States each year. These diseases most often do not appear until many years after the person in question begins smoking.

(b) Cigarette smoking also presents serious financial concerns for the state. Under certain health care programs, the state may have a legal obligation to provide medical assistance to eligible persons for health conditions associated with cigarette smoking, and those persons may have a legal entitlement to receive such medical assistance.

(c) Under these programs, the state pays millions of dollars each year to provide medical assistance for these persons for health conditions associated with cigarette smoking.

(d) It is the policy of the state that financial burdens imposed on the state by cigarette smoking be borne by tobacco product manufacturers rather than by the state to the extent that those manufacturers either determine to enter into a settlement with the state or are found culpable by the courts.

(e) On November 23, 1998, leading United States tobacco product manufacturers entered into a settlement agreement, entitled the Master Settlement Agreement, with the state. The Master Settlement Agreement obligates these manufacturers, in return for a release of past, present, and certain future claims against them as described therein, to pay substantial sums to the state (tied in part to their volume of sales); to fund a national foundation devoted to the interests of public health; and to make substantial changes in their advertising and marketing practices and corporate culture, with the intention of reducing underage smoking.

(f) It would be contrary to the policy of the state if tobacco product manufacturers who determine not to enter into such a settlement could use a resulting cost advantage to derive large, short-term profits in the years before liability may arise without ensuring that the state will have an eventual source of recovery

from them if they are proved to have acted culpably. It is thus in the interest of the state to require that these manufacturers establish a reserve fund to guarantee a source of compensation and to prevent those manufacturers from deriving large, short-term profits and then becoming judgment proof before liability may arise.

**Credits**
(Added by Stats.1999, c. 780 (S.B.822), § 1.)

| West's Annotated California Codes |
| --- |
| Health and Safety Code (Refs & Annos) |
| Division 103. Disease Prevention and Health Promotion (Refs & Annos) |
| Part 3. Risk Reduction (Refs & Annos) |
| Chapter 1. Tobacco Control (Refs & Annos) |
| Article 3. Master Settlement Agreement (Refs & Annos) |

West's Ann.Cal.Health & Safety Code § 104556

§ 104556. Definitions

Effective: January 1, 2001
Currentness

The definitions contained in this section shall govern the construction of this article.

(a) "Adjusted for inflation" means increased in accordance with the formula for inflation adjustment set forth in Exhibit C to the Master Settlement Agreement.

(b) "Affiliate" means a person who directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, another person. Solely for purposes of this definition, the terms "owns," "is owned," and "ownership" mean ownership of an equity interest, or the equivalent thereof, of 10 percent or more, and the term "person" means an individual, partnership, committee, association, corporation, or any other organization or group of persons.

(c) "Allocable share" means allocable share as that term is defined in the Master Settlement Agreement.

(d) "Cigarette" means any product that contains nicotine, is intended to be burned or heated under ordinary conditions of use, and consists of or contains (1) any roll of tobacco wrapped in paper or in any substance not containing tobacco; (2) tobacco, in any form, that is functional in the product, which because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a cigarette; or (3) any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a cigarette described in this section. "Cigarette" also includes "roll-your- own" tobacco, meaning any tobacco which, because of its appearance, type, packaging, or labeling is suitable for use and likely to be offered to, or purchased by, consumers as tobacco for making cigarettes. For purposes of this definition of "cigarette," 0.09 ounces of " roll-your-own" tobacco shall constitute one individual " cigarette."

(e) "Master Settlement Agreement" means the settlement agreement and related documents entered into on November 23, 1998, by the state and leading United States tobacco product manufacturers.

(f) "Qualified escrow fund" means an escrow arrangement with a federally or state chartered financial institution having no affiliation with any tobacco product manufacturer and having assets of at least one

billion dollars ($1,000,000,000) where the arrangement requires that the financial institution hold the escrowed funds' principal for the benefit of releasing parties and prohibits the tobacco product manufacturer placing the funds into escrow from using, accessing, or directing the use of the funds' principal except as consistent with subdivision (b) of Section 104557.

(g) "Released claims" means released claims as that term is defined in the Master Settlement Agreement.

(h) "Releasing parties" means releasing parties as that term is defined in the Master Settlement Agreement.

(i) "Tobacco product manufacturer" means an entity that after the date of enactment of this article directly, and not exclusively through any affiliate:

(1) Manufactures cigarettes anywhere that the manufacturer intends to be sold in the United States, including cigarettes intended to be sold in the United States through an importer (except where the importer is an original participating manufacturer as that term is defined in the Master Settlement Agreement, that will be responsible for the payments under the Master Settlement Agreement with respect to such cigarettes as a result of the provisions of subsection II(mm) of the Master Settlement Agreement and that pays the taxes specified in subsection II(z) of the Master Settlement Agreement, and provided that the manufacturer of such cigarettes does not market or advertise such cigarettes in the United States); or

(2) Is the first purchaser anywhere for resale in the United States of cigarettes manufactured anywhere that the manufacturer does not intend to be sold in the United States; or

(3) Becomes a successor of an entity described in paragraph (1) or (2).
The term "tobacco product manufacturer" shall not include an affiliate of a tobacco product manufacturer unless the affiliate itself falls within any of paragraphs (1) to (3) of this subdivision.

(j) "Units sold" means the number of individual cigarettes sold in the state by the applicable tobacco product manufacturer, whether directly or through a distributor, retailer, or similar intermediary or intermediaries, during the year in question, as measured by excise taxes collected by the state on packs, or "roll-your-own" tobacco containers, bearing the excise tax stamp of the state. The State Board of Equalization shall adopt any regulations as are necessary to ascertain the amount of state excise tax paid on the cigarettes of the tobacco product manufacturer for each year.

**Credits**
(Added by Stats.1999, c. 780 (S.B.822), § 1. Amended by Stats.2000, c. 135 (A.B.2539), § 102.)

HISTORICAL AND STATUTORY NOTES

| West's Annotated California Codes |
| Health and Safety Code (Refs & Annos) |
| Division 103. Disease Prevention and Health Promotion (Refs & Annos) |
| Part 3. Risk Reduction (Refs & Annos) |
| Chapter 1. Tobacco Control (Refs & Annos) |
| Article 3. Master Settlement Agreement (Refs & Annos) |

West's Ann.Cal.Health & Safety Code § 104557

§ 104557. Tobacco manufacturer's sale of cigarettes; requirements

Effective: January 1, 2004
Currentness

(a) Any tobacco product manufacturer selling cigarettes to consumers within the state, whether directly or through a distributor, retailer or similar intermediary or intermediaries, after the date of enactment of this article shall do one of the following:

(1) Become a participating manufacturer as that term is defined in Section II(jj) of the Master Settlement Agreement and generally perform its financial obligations under the Master Settlement Agreement; or

(2) Place into a qualified escrow fund by April 15 of the year following the year in question the following amounts, as such amounts are adjusted for inflation:

(A) For 1999: $0.0094241 per unit sold during that year, after the date of the enactment of this article.

(B) For 2000: $0.0104712 per unit sold during that year.

(C) For each of 2001 and 2002: $0.0136125 per unit sold during the year in question.

(D) For each of 2003 through 2006: $0.0167539 per unit sold during the year in question.

(E) For each of 2007 and each year thereafter: $0.0188482 per unit sold during the year in question.

(b) Any tobacco product manufacturer that places funds into escrow pursuant to paragraph (2) of subdivision (a) shall receive the interest or other appreciation on the funds as earned. The funds, other than the interest or other appreciation, shall be released from escrow only under the following circumstances:

(1) To pay a judgment or settlement on any released claim brought against that tobacco product manufacturer by the state or any releasing party located or residing in the state. Funds shall be released from escrow under this subdivision (i) in the order in which they were placed into escrow and (ii) only to the extent and at the time necessary to make payments required under that judgment or settlement.

(2) To the extent that a tobacco product manufacturer establishes that the amount it was required to

Case 2:16-cv-02831-JAM-JDP   Document 95-3   Filed 06/14/22   Page 26 of 33

§ 104557. Tobacco manufacturer's sale of cigarettes;..., West's Ann.Cal.Health...

place into escrow on account of units sold in this state in a particular year was greater than the Master Settlement Agreement payments, as determined pursuant to section IX(i) of the agreement including after the final determination of all adjustments, that the manufacturer would have been required to make on account of the units sold had it been a participating manufacturer, the excess shall be released from escrow and revert back to that tobacco product manufacturer; or

(3) To the extent not released from escrow under paragraph (1) or (2) of subdivision (b), funds shall be released from escrow and revert back to the tobacco product manufacturer 25 years after the date on which they were placed into escrow.

(c) Each tobacco product manufacturer that elects to place funds into escrow pursuant to paragraph (2) of subdivision (a) shall annually certify to the Attorney General that it is in compliance with paragraph (2) of subdivision (a), and subdivision (b). The Attorney General may bring a civil action on behalf of the state against any tobacco product manufacturer that fails to place into escrow the funds required under this section. Any tobacco product manufacturer that fails in any year to place into escrow the funds required under this section shall:

(1) Be required within 15 days to place the funds into escrow as shall bring it into compliance with this section. The court, upon a finding of a violation of paragraph (2) of subdivision (a), or subdivision (b), may impose a civil penalty to be paid to the General Fund of the state in an amount not to exceed 5 percent of the amount improperly withheld from escrow per day of the violation and in a total amount not to exceed 100 percent of the original amount improperly withheld from escrow.

(2) In the case of a knowing violation, be required within 15 days to place the funds into escrow as shall bring it into compliance with this section. The court, upon a finding of a knowing violation of paragraph (2) of subdivision (a), or subdivision (b), may impose a civil penalty to be paid to the General Fund in an amount not to exceed 15 percent of the amount improperly withheld from escrow per day of the violation and in a total amount not to exceed 300 percent of the original amount improperly withheld from escrow.

(3) In the case of a second knowing violation, be prohibited from selling cigarettes to consumers within the state, whether directly or through a distributor, retailer, or similar intermediary, for a period not to exceed two years.

(d) Each failure to make an annual deposit required under this section shall constitute a separate violation.

**Credits**
(Added by Stats.1999, c. 780 (S.B.822), § 1. Amended by Stats.2000, c. 135 (A.B.2539), § 103; Stats.2003, c. 890 (A.B.71), § 3.)

§ 104557.1. Assignment of funds placed into escrow by..., West's Ann.Cal.Health...

| West's Annotated California Codes |
| Health and Safety Code (Refs & Annos) |
| Division 103. Disease Prevention and Health Promotion (Refs & Annos) |
| Part 3. Risk Reduction (Refs & Annos) |
| Chapter 1. Tobacco Control (Refs & Annos) |
| Article 3. Master Settlement Agreement (Refs & Annos) |

West's Ann.Cal.Health & Safety Code § 104557.1

§ 104557.1. Assignment of funds placed into escrow by manufacturer; withdrawal of funds

Effective: January 1, 2011
Currentness

(a) Notwithstanding subdivision (b) of Section 104557, a tobacco product manufacturer that elects to place funds into escrow pursuant to paragraph (2) of subdivision (a) of Section 104557 may make an irrevocable assignment of its interest in the funds to the benefit of the State of California. Such assignment shall be permanent and apply to all funds in the subject escrow account or that may subsequently come into the account, including those deposited into the escrow account prior to the assignment being executed, those deposited into the escrow account after the assignment is executed, and interest or other appreciation on the funds. The tobacco product manufacturer, the Attorney General, and the financial institution where the escrow amount is maintained may make such amendments to the qualified escrow account agreement as may be necessary to effectuate an assignment of rights executed pursuant to this subdivision or a withdrawal of funds from the escrow amount pursuant to subdivision (b). An assignment of rights executed pursuant to this section shall be in writing, signed by a duly authorized representative of the tobacco products manufacturer making the assignment, and shall become effective upon delivery of the assignment to the Attorney General and the financial institution where the escrow account is maintained.

(b) Notwithstanding subdivision (b) of Section 104557, any escrow funds assigned to the state pursuant to subdivision (a) shall be withdrawn by the state upon the request by the Treasurer and approval of the Attorney General. Any funds withdrawn pursuant to this subdivision shall be deposited into the General Fund and shall be calculated on a dollar-for-dollar basis as a credit against any judgment or settlement described in subdivision (b) of Section 104557 which may be obtained against the tobacco product manufacturer who has assigned the funds in the subject escrow account. Nothing in this section shall be construed to relieve a tobacco product manufacturer from any past, current, or future obligations the manufacturer may have pursuant to this chapter.

**Credits**
(Added by Stats.2010, c. 265 (A.B.2496), § 4.)

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

§ 104558. Limitation on undertaking, bond, or equivalent..., West's Ann.Cal.Health...

| West's Annotated California Codes |
| Health and Safety Code (Refs & Annos) |
| Division 103. Disease Prevention and Health Promotion (Refs & Annos) |
| Part 3. Risk Reduction (Refs & Annos) |
| Chapter 1. Tobacco Control (Refs & Annos) |
| Article 3. Master Settlement Agreement (Refs & Annos) |

West's Ann.Cal.Health & Safety Code § 104558

§ 104558. Limitation on undertaking, bond, or equivalent surety; purpose of limitation;
authority to rescind limitation

Effective: January 1, 2005
Currentness

(a) In order to secure and protect the moneys to be received as a result of the Master Settlement Agreement, as defined in subdivision (e) of Section 104556, in civil litigation under any legal theory involving a signatory, successor of a signatory, or an affiliate of a signatory to the Master Settlement Agreement that has not been brought to trial as of the effective date of this section, the amount of the required undertaking, bond, or equivalent surety to be furnished during the pendency of an appeal or any discretionary appellate review of any judgment granting legal, equitable, or any other form of relief in order to stay the execution thereon during the entire course of the appellate review shall be set in accordance with applicable laws and rules of the court, except that the total undertaking, bond, or equivalent surety that is required per case, whether individual, aggregate, or otherwise, of all appellants, collectively, may not exceed 100 percent of the verdict or one hundred fifty million dollars ($150,000,000) whichever is less, regardless of the value of the judgment.

(b) Nothing in this section or any other provision of law shall be construed to eliminate the discretion of the court, for good cause shown, to set the undertaking or bond on appeal in an amount lower than that otherwise established by law.

(c) If the appellee proves by a preponderance of the evidence that a party bringing an appeal or seeking a stay of execution of judgment and for whom the undertaking has been limited under this section, is intentionally dissipating or diverting assets outside the ordinary course of its business for the purpose of avoiding ultimate payment of the judgment, any limitation under subdivision (a) may be rescinded and the court may order any actions necessary to prevent dissipation or diversion of the assets.

**Credits**
(Added by Stats.2003, c. 225 (A.B.1752), § 19.3, eff. Aug. 11, 2003. Amended by Stats.2004, c. 183 (A.B.3082), § 226.)

# EXHIBIT B

Case 2:16-cv-02831-JAM-JDP Document 95-3 Filed 06/14/22 Page 30 of 33

**TOBACCO AND TOBACCO PRODUCTS—ESCROWS AND..., 2013 Cal. Legis. Serv....**

2013 Cal. Legis. Serv. Ch. 168 (S.B. 680) (WEST)

CALIFORNIA 2013 LEGISLATIVE SERVICE

2013 Portion of 2013-2014 Regular Session

Additions are indicated by **Text**; deletions by
* * *
Vetoes are indicated by ~~Text~~;
stricken material by ~~Text~~.

## CHAPTER 168
S.B. No. 680
TOBACCO AND TOBACCO PRODUCTS—ESCROWS AND ESCROW AGENTS—RULES AND REGULATIONS

AN ACT to amend Section 104556 of the Health and Safety Code, relating to tobacco settlement moneys.

[Filed with Secretary of State August 27, 2013.]

### LEGISLATIVE COUNSEL'S DIGEST

SB 680, Wolk. Tobacco Master Settlement Agreement: qualified escrow funds.

Under existing law, states' attorneys general and various tobacco product manufacturers have entered into a Master Settlement Agreement (MSA), in settlement of various lawsuits, that provides for the allocation of money to the states and certain territories.

Existing law requires a tobacco product manufacturer selling cigarettes to consumers within the state to either become a participating manufacturer, as defined, and generally perform its financial obligations under the MSA, or to place specified amounts into a qualified escrow fund, which are calculated on a per unit sold basis, as specified. For each tobacco product manufacturer that places amounts into a qualified escrow fund, existing law requires that manufacturer to certify to the Attorney General that the manufacturer has complied with existing law, and the failure to place all required funds into escrow subjects the manufacturer to civil penalties, as specified.

This bill would, for the purposes of calculating the amount a tobacco product manufacturer is required to place in the qualified escrow fund, revise the definition of "units sold" to specify that it means the number of cigarettes sold to a consumer, regardless of whether the state excise tax was due or collected, but would exclude, among other things, cigarettes sold at federal military installations.

The people of the State of California do enact as follows:

SECTION 1. Section 104556 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 104556 >>

104556. The definitions contained in this section shall govern the construction of this article.

(a) "Adjusted for inflation" means increased in accordance with the formula for inflation adjustment set forth in Exhibit C to the Master Settlement Agreement.

**WESTLAW** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

(b) "Affiliate" means a person who directly or indirectly owns or controls, is owned or controlled by, or is under common ownership or control with, another person. Solely for purposes of this definition, the terms "owns," "is owned," and "ownership" mean ownership of an equity interest, or the equivalent thereof, of 10 percent or more, and the term "person" means an individual, partnership, committee, association, corporation, or any other organization or group of persons.

(c) "Allocable share" means allocable share as that term is defined in the Master Settlement Agreement.

(d) "Cigarette" means any product that contains nicotine, is intended to be burned or heated under ordinary conditions of use, and consists of or contains (1) any roll of tobacco wrapped in paper or in any substance not containing tobacco; (2) tobacco, in any form, that is functional in the product, which because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a cigarette; or (3) any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a cigarette described in this section. "Cigarette" also includes "roll-your-own" tobacco, meaning any tobacco which, because of its appearance, type, packaging, or labeling is suitable for use and likely to be offered to, or purchased by, consumers as tobacco for making cigarettes. For purposes of this definition of "cigarette," 0.09 ounces of "roll-your-own" tobacco shall constitute one individual "cigarette."

(e) "Master Settlement Agreement" means the settlement agreement and related documents entered into on November 23, 1998, by the state and leading United States tobacco product manufacturers.

(f) "Qualified escrow fund" means an escrow arrangement with a federally or state chartered financial institution having no affiliation with any tobacco product manufacturer and having assets of at least one billion dollars ($1,000,000,000) where the arrangement requires that the financial institution hold the escrowed funds' principal for the benefit of releasing parties and prohibits the tobacco product manufacturer placing the funds into escrow from using, accessing, or directing the use of the funds' principal except as consistent with subdivision (b) of Section 104557.

(g) "Released claims" means released claims as that term is defined in the Master Settlement Agreement.

(h) "Releasing parties" means releasing parties as that term is defined in the Master Settlement Agreement.

(i) "Tobacco product manufacturer" means an entity that after the date of enactment of this article directly, and not exclusively through any affiliate:

(1) Manufactures cigarettes anywhere that the manufacturer intends to be sold in the United States, including cigarettes intended to be sold in the United States through an importer (except where the importer is an original participating manufacturer as that term is defined in the Master Settlement Agreement, that will be responsible for the payments under the Master Settlement Agreement with respect to such cigarettes as a result of the provisions of subsection II(mm) of the Master Settlement Agreement and that pays the taxes specified in subsection II(z) of the Master Settlement Agreement, and provided that the manufacturer of such cigarettes does not market or advertise such cigarettes in the United States); or

(2) Is the first purchaser anywhere for resale in the United States of cigarettes manufactured anywhere that the manufacturer does not intend to be sold in the United States; or

(3) Becomes a successor of an entity described in paragraph (1) or (2).

The term "tobacco product manufacturer" shall not include an affiliate of a tobacco product manufacturer unless the affiliate itself falls within any of paragraphs (1) to (3) of this subdivision.

(j) "Units sold" means the number of individual cigarettes sold **to a consumer** in the state by the applicable tobacco product manufacturer, whether directly or through a distributor, retailer, or similar intermediary or intermediaries, during the year in question, ~~* * *~~ **regardless of whether the state excise tax was due or collected. "Units sold" shall not include cigarettes sold on federal military installations, sold by a Native American tribe to a member of that tribe on that tribe's land, or that are otherwise exempt from state excise tax pursuant to federal law**. The State Board of Equalization shall adopt any

regulations as are necessary to ascertain the amount of state excise tax paid on the cigarettes of the tobacco product manufacturer for each year.

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

## <u>DECLARATION OF SERVICE BY E-MAIL and OVERNIGHT COURIER</u>

Case Name:    **PEOPLE v. NATIVE WHOLESALE SUPPLY COMPANY, et al.**
Case No.:      **34-2008-00014593 CU--CL-GDS**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is: 600 West Broadway, Suite 1800, P.O. Box 85266, San Diego, CA 92186-5266. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for overnight mail with the **FEDERAL EXPRESS**. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the overnight courier that same day in the ordinary course of business.

On <u>November 3, 2016</u>, I served the attached:

**REPLY MEMORANDUM IN SUPPORT OF PEOPLE'S MOTION FOR SUMMARY JUDGMENT**

by transmitting a true copy via electronic mail. In addition, I placed a true copy thereof enclosed in a sealed envelope, in the internal mail system of the Office of the Attorney General, for overnight delivery, addressed as follows:

Paul J. Cambria Jr. Esq.
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3901
**E-mail Address**: pcambria@lglaw.com
**Attorney for Native Wholesale Supply Company**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on November 3, 2016, at San Diego, California.

| Charlette Sheppard | | *[signature]* | |
| --- | --- | --- | --- |
| Declarant | | Signature | |

SA2008303415
71249849.doc