1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  SARA J. DRAKE, State Bar No. 102565
   Senior Assistant Attorney General
3  T. MICHELLE LAIRD, State Bar No. 162979
   Supervising Deputy Attorney General
4  JAMES G. WAIAN, State Bar No. 152084
   Deputy Attorney General
5    600 West Broadway, Suite 1800
     San Diego, CA 92101
6    P.O. Box 85266
     San Diego, CA 92186-5266
7    Telephone:  (619) 738-9335
     Fax:  (619) 645-2271
8    E-mail:  James.Waian@doj.ca.gov
   *Attorneys for Defendants*
9

10              IN THE UNITED STATES DISTRICT COURT

11              FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13  **ELIZABETH FLYNT, HAIG KELEGIAN,**        2:16-cv-02831-JAM-JDP
    **SR., and HAIG T. KELEGIAN, JR.,**
14
                                    Plaintiffs,
15                                              **DEFENDANTS' REPLY IN SUPPORT**
         v.                                     **OF THEIR CROSS-MOTION FOR**
16                                              **SUMMARY JUDGMENT**

17  **ROB BONTA, in his official capacity as**  Date:       June 28, 2022
    **Attorney General of the State of California;** Time:   10:00 a.m.
18  **YOLANDA MORROW, in her official**         Courtroom:  6
    **capacity as the Acting Director of the**  Judge:      The Honorable John A.
19  **California Department of Justice, Bureau of**              Mendez
    **Gambling Control; PAULA D. LaBRIE, in**   Trial Date: November 14, 2022
20  **her official capacity as Chair of the**   Action Filed: November 30, 2016
    **California Gambling Control Commission;**
21  **ERIC C. HEINS, in his official capacity as**
    **Commissioner of the California Gambling**
22  **Control Commission; EDWARD YEE, in**
    **his official capacity as Commissioner of the**
23  **California Gambling Control Commission;**
    **CATHLEEN GALGIANI, in her official**
24  **capacity as Commissioner of the California**
    **Gambling Control Commission; WILLIAM**
    **LIU, in his official capacity as**
25  **Commissioner of the California Gambling**
    **Control Commission,**
26

27                                   Defendants.

28

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 1

I.      Summary Judgment Should Be Granted in Favor of Defendants Because Plaintiffs Have Failed To Prove that the Statutes Are Unconstitutional ............... 1

        A.      Any Burden on Interstate Commerce Caused by the Statutes Is Far Less than Plaintiffs Claim and Certainly Not Substantial ......................... 2

        B.      Plaintiffs' Arguments Fail To Negate the Putative Local Benefits of the Statutes................................................................................................. 4

        C.      Plaintiffs Have Failed To Provide Applicable Legal Authority in Support of Their Arguments ....................................................................... 6

II.     Plaintiffs' Declarations Should Be Disregarded Because They Are Not Permitted by the Local Rules and this Court's Status Order ............................... 10

Conclusion........................................................................................................................... 10

Defs.' Reply in Supp. of Cross-Mot. Summ. J. (2:16-cv-02831-JAM-JDP)

# TABLE OF AUTHORITIES

**Page**

CASES

*Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*
729 F.3d 937 (9th Cir. 2013) ................................................................................. 6, 7

*Benson v. Double Down Interactive, LLC*
527 F. Supp. 3d 1267 (W.D. Wash. 2021) ............................................................... 6

*Bernstein v. Virgin American, Incorporated*
3 F.4th 1127 (9th Cir. 2021) .................................................................................. 6, 8

*California v. Cabazon Band of Mission Indians*
480 U.S. 202 (1987) ................................................................................................... 5

*Chinatown Neighborhood Association v. Harris*
794 F.3d 1136 (9th Cir. 2015) .................................................................................. 6

*Department of Revenue of Kentucky v. Davis*
553 U.S. 328 (2008) ................................................................................................... 8

*Deutsche Bank National Trust Company v. Old Republic Title Insurance Group, Incorporated*
532 F. Supp. 3d 1004 (D. Nev. 2021) ....................................................................... 3

*Edward J. DeBartolo Corporation v. Florida Gulf Coast Building and Construction Trades Council*
485 U.S. 568 (1988) ................................................................................................... 3

*Encompass Insurance Company v. Stone Mansion Restaurant Incorporated*
902 F.3d 147 (3d Cir. 2018) ...................................................................................... 3

*Exxon Corporation v. Governor of Maryland*
437 U.S. 117 (1978) ................................................................................................... 9

*Lewis v. BT Investment Managers, Incorporated*
447 U.S. 27 (1980) ..................................................................................................... 9

*Monarch Content Management LLC v. Arizona Department of Gaming*
971 F.3d 1021 (9th Cir. 2020) .................................................................................. 6

*National Association of Optometrists and Opticians v. Harris*
682 F.3d 1144 (9th Cir. 2012) ........................................................................ *passim*

ii

1

## TABLE OF AUTHORITIES
### (continued)

2
**Page**

3
*Pacific Northwest Venison Producers v. Smitch*
    20 F.3d 1008 (9th Cir. 1994) ...................................................................... 4

4

5
*Pharmaceutical Research and Manufacturers v. County of Alameda*
    768 F.3d 1037 (9th Cir. 2014) ..................................................................... 8

6

7
*Pike v. Bruce Church, Incorporated*
    397 U.S. 137 (1970) ...................................................................... 1, 2, 4, 7

8
*Provenz v. Miller*
    102 F.3d 1478 (9th Cir. 1996) ................................................................... 10

9

10
*Rosenblatt v. City of Santa Monica*
    940 F.3d 439 (9th Cir. 2019) ...................................................................... 6

11

12
*Wine and Spirits Retailers, Incorporated v. Rhode Island*
    481 F.3d 1 (1st Cir. 2007) .......................................................................... 7

13
*Yamaha Corporation of America v. State Board of Equalization*
    19 Cal. 4th 1 (1998) ................................................................................... 2

14

15
**STATUTES**

16
United States Code, title 25
    §§ 2701-2721 ............................................................................................. 5
17
    § 2710(d) ................................................................................................... 5

18
California Business and Professions Code
    § 19858 ...................................................................................................... 1
19
    § 19858.5 ............................................................................................... 1, 4

20
**CONSTITUTIONAL PROVISIONS**

21
United States Constitution, article I
    § 8, cl. 3 ..................................................................................................... 1
22

23
**COURT RULES**

24
Eastern District of California Rule 260(a), (b) ............................................ 10

25

26

27

28

1

**INTRODUCTION**

Defendants Rob Bonta, in his official capacity as Attorney General of the State of California, Yolanda Morrow, in her official capacity as Acting Director of the California Department of Justice, Bureau of Gambling Control, Paula D. LaBrie, in her official capacity as Chair of the California Gambling Control Commission (Commission), Eric C. Heins, in his official capacity as Commissioner of the Commission, Edward Yee, in his official capacity as Commissioner of the Commission, Cathleen Galgiani, in her official capacity as Commissioner of the Commission, and William Liu, in his official capacity as Commissioner of the Commission, (Defendants) respectfully submit the following reply in support of Defendants' Cross-Motion for Summary Judgment in their favor and against Plaintiffs Elizabeth Flynt, Haig Kelegian, Sr., and Haig T. Kelegian, Jr. (Plaintiffs) on their Third Amended Complaint for Declaratory and Injunctive Relief.  Defendants' Memorandum of Points and Authorities in Support of Their Cross-Motion for Summary Judgment (Cross-Motion) demonstrates that Plaintiffs' dormant Commerce Clause challenge to California Business and Professions Code section 19858, as modified by section 19858.5 (Statutes), must fail under the criteria set forth in *Pike v. Bruce Church, Inc*., 397 U.S. 137 (1970) (*Pike*).  Because Plaintiffs' challenge must fail, the Statutes should be found constitutional, Plaintiffs' motion for summary judgment (Motion) should be denied, and Defendants' Cross-Motion should be granted.

**ARGUMENT**

**I.   SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANTS BECAUSE PLAINTIFFS HAVE FAILED TO PROVE THAT THE STATUTES ARE UNCONSTITUTIONAL**

As a misplaced foundation of their arguments in opposition to Defendants' Cross-Motion, Plaintiffs repeatedly argue in their Memorandum of Points and Authorities in Further Support of Plaintiffs' Motion for Summary Judgment, Declaratory Judgment, and Permanent Injunction and in Opposition to Defendants' Cross-Motion for Summary Judgment (Opposition) that Defendants have failed to affirmatively establish the validity of the Statutes.  (*See, e.g.*, Opp'n 1, 7-10, 15.)  By doing so, however, Plaintiffs confuse the standard of proof applicable to these cross-motions.  Plaintiffs brought this action claiming that the Statutes violate the Commerce Clause (U.S. Const.,

1

art. I, § 8, cl. 3).  For that reason, it is Plaintiffs who must prove that the Statutes are

unconstitutional.  *See Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144 (9th Cir.

2012) (*Harris*) (to prevail on a dormant Commerce Clause claim, a plaintiff must establish that

the statute imposes a substantial burden on interstate commerce); *Pike*, 397 U.S. at 142 (even if a

plaintiff can establish a substantial burden on interstate commerce, it must still prove that the

burden is clearly excessive in relation to the putative local benefits of the statute).  Because there

is no genuine dispute as to any material fact, and because Plaintiffs have failed to prove their

claim, their Motion should be denied, and Defendants' Cross-Motion should be granted.

### A.   Any Burden on Interstate Commerce Caused by the Statutes Is Far Less than Plaintiffs Claim and Certainly Not Substantial

In seeming recognition of the untenable nature of their argument, Plaintiffs now back away

from their broad hypothetical interpretation of the Statutes' applicability, claiming that it is not

the primary thrust of their argument.  (Opp'n 2.)  Nevertheless, there is an important distinction

between Plaintiffs' broad hypothetical and how the Statutes are actually enforced.  Under

Plaintiffs' broad hypothetical, the reach of the Statutes appears much broader than it actually is.

Plaintiffs incorrectly claim that this Court has already accepted their broad hypothetical

interpretation of the Statutes' applicability.  (Opp'n 5.)  As discussed in Defendants' Cross-

Motion, however, while Plaintiffs' alleged broad hypothetical interpretation of the Statutes was

deemed by this Court to be sufficient to survive a motion to dismiss, Defendants have provided

indisputable evidence that the Statutes do not apply as Plaintiffs have alleged.[1]  (*See* Decl. Stacey

Luna Baxter Supp. Cross-Mot. Summ. J. & Opp. Mot. Summ. J.; Decl. Yolanda Morrow Supp.

Cross-Mot. Summ. J. & Opp. Mot. Summ. J.)  The Statutes do not apply to any individuals or

entities that are not applying for, or holding, a California card room license.  (Cross-Mot. 12.)

The current licensing scheme has been in effect for fifteen years, and the California Legislature

---

[1] In their Opposition, Plaintiffs argue that evidence that an agency promises not to enforce a statute a certain way is insufficient to support its validity.  (Opp'n 6.)  However, that is not the purpose for which Defendants offered declarations.  As discussed at length in Defendants' Cross-Motion, this evidence is offered as a statutory interpretation tool, with declarations providing the regulating agencies' interpretation of the Statutes, which is to be given deference pursuant to *Yamaha Corporation of America v. State Board of Equalization*, 19 Cal. 4th 1, 6-7 (1998).

1    has not voiced its disagreement with how the agencies have consistently enforced the Statutes by

2    modifying them.

3         In addition, Plaintiffs seemingly ignore fundamental principles of statutory interpretation.

4    First, under the canon of constitutional avoidance, statutes are presumed to be constitutional and

5    when more than one construction is possible, a court is bound to construe a statute in a

6    constitutional manner.  *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades*

7    *Council*, 485 U.S. 568, 575 (1988) ("where an otherwise acceptable construction of a statute

8    would raise serious constitutional problems, the Court will construe the statute to avoid such

9    problems unless such construction is plainly contrary to the intent of the [legislative body]" and

10   "[t]he elementary rule is that every reasonable construction must be resorted to, in order to save a

11   statute from unconstitutionality").  Second, "[i]f the language is clear, courts must generally

12   follow a statute's plain meaning unless a literal interpretation would result in absurd

13   consequences the legislature did not intend" and "courts 'must look beyond the express language

14   of a statute where the literal interpretation would thwart the purpose of the overall statutory

15   scheme or lead to an absurd result.'"  *Deutsche Bank Nat'l Trust Co. v. Old Republic Title Ins.*

16   *Grp., Inc.*, 532 F. Supp. 3d 1004, 1015 (D. Nev. 2021) (quoting *Wilshire Westwood Assocs. v. Atl.*

17   *Richfield Corp.*, 881 F.2d 801 (9th Cir. 1989)); *see also Encompass Ins. Co. v. Stone Mansion*

18   *Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) (it is a basic tenet of statutory construction that courts

19   should interpret statutes to avoid absurd or bizarre results).  With the evidence Defendants have

20   submitted in support of their Cross-Motion, the application of the Statutes should not be

21   construed as broadly as Plaintiffs argue.[2]  The Statutes regulate licensing only to do business *in*

22   *California*, and even if they were construed as broadly as Plaintiffs argue, Plaintiffs have not

23   established that they would cause a substantial burden on interstate commerce.

24

25   _____

26        [2] If this Court does accept Plaintiffs' broad hypothetical interpretation of the Statutes, and if
     this Court decides to grant Plaintiffs' Motion as a result, Defendants respectfully request that the
27   ruling be limited to declaratory relief that the Statutes would be unconstitutional only to the extent
     that the Statutes may be interpreted in this broad way, and that injunctive relief would be
     correspondingly limited to prohibit enforcement of the Statutes in the broad way that Plaintiffs
28   argue.

3

**B.    Plaintiffs' Arguments Fail To Negate the Putative Local Benefits of the Statutes**

Because Plaintiffs have failed to establish that the Statutes cause a substantial burden on interstate commerce, this Court need not consider the putative local benefits of the Statutes. However, even if this Court did consider them, Plaintiffs have failed to negate either the putative or actual local benefits of the Statutes. Plaintiffs argue at length that the Statutes do not provide local benefits. Plaintiffs' arguments are based entirely on their conclusions drawn from two theories: (1) crime in general, and organized crime in particular, associated with gambling is no longer a problem, making the Statutes either unnecessary or an outdated means to address the issue of crime; and (2) California has allowed the proliferation of Indian casinos without applying the same licensing requirements to Indian tribes as are contained in the Statutes. Both conclusions are unsound because they are both based on faulty premises.

As Defendants pointed out in their Cross-Motion, Plaintiffs' arguments that crime, and organized crime in particular, is no longer a problem associated with gambling is based primarily on a 2002 report. That report was prepared five years before the Legislature's adoption of the current card room licensing scheme represented by the Statutes. As Defendants discussed in their Cross-Motion, the Legislature already took into consideration the information contained in that 2002 report when adopting the current card room licensing scheme.[3] In their Opposition, Plaintiffs argue that gambling and regulations have expanded since that time, making the conclusions in the 2002 report somehow more accurate today than they were twenty years ago. (Opp'n 18 n.9.) However, Plaintiffs do not provide any evidence or other support for this conclusion. Plaintiffs' conclusory argument is an effort to engage this Court in second-guessing the decisions made by the California Legislature. Second-guessing legislative decisions is not the role of the courts in *Pike* balancing. *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1017

---

[3] In their Opposition, Plaintiffs state that it is "baffling" that Defendants pointed out in their Cross-Motion that Plaintiffs have alleged that Plaintiffs were licensed card room owners that participated in the process and supported the enactment of Business and Professions Code section 19858.5 in 2007. (Opp'n 19-20.) Defendants pointed out this fact to demonstrate that Plaintiffs, along with the California Legislature, had the information contained in the 2002 report that Plaintiffs rely on so heavily in their Motion, when the current statutory scheme was enacted in 2007.

4

1  (9th Cir. 1994) (quoting *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 92 (1987)) ("Even in

2  the context of dormant commerce clause analysis, the Supreme Court has frequently admonished

3  that courts should not 'second-guess the empirical judgments of lawmakers concerning the utility

4  of legislation.'"); *see also Harris*, 682 F.3d at 1156 (for non-discriminatory laws that do not

5  impose a significant burden on interstate commerce, it is inappropriate for courts to assess the

6  benefits of those laws and a state's wisdom in adopting them).

7       Plaintiffs' second theory—that the proliferation of Indian casinos is proof of a "gaping

8  exception" to the statutory licensing scheme and therefor undercuts the legitimate local

9  governmental benefits of the Statutes—is also faulty, because it is based on a misinterpretation of

10  federal law.  In their Opposition, Plaintiffs continue to fail to appreciate that tribal gambling

11  located on a tribe's reservation is not subject to state civil-regulatory laws pertaining to gambling,

12  but is instead subject to the terms of a tribal-state compact entered into under the Indian Gaming

13  Regulatory Act (IGRA), 25 U.S.C. §§ 2701-2721.  Prior to the passage of IGRA, this issue was

14  expressly addressed by the Supreme Court in *California v. Cabazon Band of Mission Indians*, 480

15  U.S. 202 (1987) (*Cabazon*).  In *Cabazon*, California attempted to regulate bingo on an Indian

16  reservation to prevent the infiltration by organized crime.  *Id.* at 220.  The Supreme Court held

17  that while California's interest in regulating high-stakes bingo to prevent the involvement of

18  organized crime "*is surely a legitimate concern*," California's concerns were not sufficient to

19  "escape the pre-emptive force of federal and tribal interests apparent in [the] case." *Id.* at 221

20  (emphasis added).  The Supreme Court thus recognized the legitimate interest that California has

21  in regulating gambling to prevent the infiltration by organized crime.  Furthermore, IGRA, which

22  was enacted by Congress in response to *Cabazon*, requires that California negotiate with an

23  Indian tribe for class III gaming on its reservation at the risk of being found in bad faith and

24  having the Secretary of the United States Department of the Interior prescribe procedures under

25  which the tribe may conduct such gaming on "Indian lands over which the Indian tribe has

26  jurisdiction."  *See* 25 U.S.C. § 2710(d).  Viewed in the light of this understanding of federal law,

27  Plaintiffs' arguments that tribal casinos are somehow an exception to California's card room

28  licensing scheme, as established by the Statutes, makes no sense.  Plaintiffs confuse apples with

5

1  oranges.  The Statutes serve their legitimate purposes of preventing the infiltration by organized

2  crime and of regulating to prevent criminal activity in general with regard to card rooms, which

3  are not located on tribal reservations and are fully subject to state regulation.

4      **C.    Plaintiffs Have Failed To Provide Applicable Legal Authority in Support**
        **of Their Arguments**

5

6          Plaintiffs' Opposition attempts to distinguish, in a footnote, *Harris*, the leading Ninth

7  Circuit Commerce Clause licensing case, and *Monarch Content Management LLC v. Arizona*

8  *Department of Gaming*, 971 F.3d 1021 (9th Cir. 2020) (*Monarch*), a leading Ninth Circuit

9  Commerce Clause gambling case.  Plaintiffs' attempt to distinguish *Harris* is ineffectual.

10  Plaintiffs identify minor factual differences between the statute in *Harris* and the Statutes.

11  However, the regulatory substance of the statute in *Harris* is the same as that of the Statutes:  the

12  criteria required to hold a California license.  Plaintiffs' attempt to distinguish *Monarch* is also

13  ineffectual.  Defendants' Cross-Motion cited *Monarch* for the proposition that the gambling

14  market is not inherently national and does not require a uniform system of regulation, an

15  important factor in determining whether a substantial burden exists.  Plaintiffs' Opposition does

16  not dispute the holding in *Monarch*, and they have not argued that the gambling market is

17  inherently national.  Therefore, Plaintiffs have conceded that the gambling market is not

18  inherently national and that no uniform system of regulation is required.

19          Plaintiffs' attempt to distinguish a number of other Ninth Circuit cases cited in Defendants'

20  Cross-Motion, namely *Bernstein v. Virgin American, Incorporated*, 3 F.4th 1127 (9th Cir. 2021)

21  (*Bernstein*), *Rosenblatt v. City of Santa Monica,* 940 F.3d 439 (9th Cir. 2019), *Chinatown*

22  *Neighborhood Association v. Harris*, 794 F.3d 1136 (9th Cir. 2015), *Association des Eleveurs de*

23  *Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013) (*Quebec*), and *Benson v.*

24  *Double Down Interactive, LLC*, 527 F. Supp. 3d 1267 (W.D. Wash. 2021), by making what is

25  fundamentally the same oversimplified argument that all of those cases involved an attempt to

26  regulate activity occurring in the regulating state.  Importantly, Plaintiffs do not dispute the

27  propositions for which Defendants cited those cases, and those cases are not only applicable but

28  analogous to this case.  That is because, just like the statutes at issue in those cases, the Statutes

6

Defs.' Reply in Supp. of Cross-Mot. Summ. J. (2:16-cv-02831-JAM-JDP)

regulate only activity occurring in California, namely the suitability for licensure to do business within California. This is in direct contrast to the application of the statutes at issue in cases cited by Plaintiffs in their Motion, where those statutes regulated commerce merely passing through the regulating state. As Defendants pointed out in their Cross-Motion, the Statutes are even-handed provisions adopted to protect against harm that can occur in California due to business operations that occur in California, not an attempt to regulate commerce passing through California.

Plaintiffs argue that "Defendants have not provided a single case that involves a statute that prohibits market participants from engaging in conduct outside of the state whose regulation is at issue, that is lawful where it occurs, or that prohibits the forming business [sic] relationships with people who engage in conduct outside of the state that is lawful where it occurs *as a condition to entering or participating in the state's market*." (Opp'n 7 (emphasis in original).) Plaintiffs go so far as to speculate as to why no such authority exists. (*Id*. at n.5.) While Plaintiffs might wish to ignore them, Defendants cited several cases involving such licensing criteria. For example, Defendants pointed out in their Cross-Motion:

> While expressing doubts about whether *Pike* balancing was even required, circuit courts have also consistently upheld state licensing schemes, despite the alleged burden on interstate commerce. *See Nat'l Ass'n of Optometrists & Opticians* [*v. Harris*], 682 F.3d at 1154-55 (California optician licensing scheme restricting joint ventures with eyewear companies is not a significant burden on commerce despite acknowledged restrictions on the investments by out-of-state companies); *Wine and Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1, 15 (1st Cir. 2007) (Rhode Island statutory scheme prohibiting retail liquor licensees from maintaining out-of-state franchise and chain-store arrangements upheld despite acknowledged burden on commerce).

(Cross-Mot. 22-23.)

Plaintiffs argue that Defendants conflate the *Pike* standards. (Opp'n 10-11.) However, it is Plaintiffs who misstate the *Pike* standards when they state that the substantial burden requirement is not a prerequisite to *Pike* balancing. (*Id*. at 11.) That is a misstatement of the law in the Ninth Circuit. In numerous cases, the Ninth Circuit has clearly established the substantial burden requirement: "We have explained that under *Pike*, a plaintiff must first show that the statute imposes a substantial burden before the court will 'determine whether the benefits of the challenged laws are illusory.'" *Quebec*, 729 F.3d at 951-52 (quoting *Harris*, 682 F.3d at 1155);

1    *see also Pharm. Research & Mfrs. of Am. v. County of Alameda*, 768 F.3d 1037, 1044 (9th Cir.

2    2014).

3            Plaintiffs also fault Defendants for allegedly using "cherry-picked" language from cases.

4    (Opp'n 7.)  However, it is Plaintiffs who not only cherry-pick among cases, but also continuously

5    ignore the lowest hanging cherry of all—*Harris*, the leading licensing case in the Ninth Circuit,

6    and the most analogous Ninth Circuit precedent to this case.

7            In their Opposition, Plaintiffs persist in their argument that state licensing criteria

8    necessarily imposes a substantial burden on interstate commerce because it "impede[s]

9    investment opportunities, commercial transactions, and commercial relationships."  (Opp'n 12.)

10   In an effort to conform the facts in this case to cases involving dissimilar statutes, Plaintiffs

11   repeatedly claim that California has isolated the gambling industry "by purporting to build a wall

12   at its borders," that "the Statutes erect a wall around California with respect to the gambling

13   industry," and that the Statutes "wall off California's gambling industry from the rest of the

14   country (and world)."  (*Id.* at 4, 14.)  But Plaintiffs' unfounded hyperbolic statements have no

15   factual support.  Defendants reiterate that licensing criteria within the regulating jurisdiction does

16   not impede the flow of commerce in other states or localities and even-handed licensing criteria,

17   like California's, does not implicate concerns about economic protectionism that are at the heart

18   of the dormant Commerce Clause.  *See Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38

19   (2008) (*Davis*); *Bernstein*, 3 F.4th at 1135.[4]

20           In their Motion, Plaintiffs argue at length, through various hypotheticals, that the Statutes

21   place a substantial burden on interstate commerce because they force a choice between holding an

22   interest greater than one-percent in a casino or holding a California card room license.  (Mot. 6-

23   9.)  In their Opposition, Plaintiffs argue that this alleged burden is not just on them, but on "those

24   within the gambling industry."  (Opp'n 12.)  However, this Court has expressly ruled that

25   _____

26           [4] Plaintiffs attempt to distinguish the holding in *Davis* on the ground that the case involved
     a market-participant exception to the dormant Commerce Clause.  (Opp'n 9.)  However, that was
27   merely one aspect of the decision in *Davis*, and Plaintiffs fail to explain how that would in any
     way relate to the general proposition for which it is cited:  that concerns about economic
28   protectionism are at the heart of the dormant Commerce Clause and those concerns do not apply
     to the Statutes.

1   Plaintiffs do not have standing to make arguments on behalf of those located outside California.

2   (*See* ECF No. 54 at 8-9.)  Further, the card room "industry" is a very small part of the California

3   economy, with only eighty-four active card room licenses as of May 2022.  (*See* Cross-Mot. 22

4   n.11.)  But even so, the issue is the same.  As Defendants pointed out in their Cross-Motion, the

5   Ninth Circuit has made it clear that a plaintiff cannot establish a substantial burden on interstate

6   commerce merely by arguing that a non-discriminatory statute regulates in a way that precludes a

7   preferred method of operating.  *Harris*, 682 F.3d at 1154-55.  Plaintiffs argue that the Statutes

8   prevent them from taking advantage of business opportunities because they are California card

9   room licensees.  (Opp'n 12.)  As Defendants discussed in their Cross-Motion, even if accepted as

10  true that Plaintiffs may suffer lost business opportunities, that is insufficient to establish a

11  dormant Commerce Clause claim.  The Commerce Clause is concerned with interstate *commerce*,

12  and not merely with individual economic interests.  *See Exxon Corp. v. Governor of Md.*, 437

13  U.S. 117, 127-28 (1978) (*Exxon*); *Harris*, 682 F.3d at 1152 n.11.  Lost economic opportunities

14  are certainly legitimate policy concerns that state and local legislators may weigh against other

15  objectives.  However, those concerns relate to "the wisdom of the statute, not to its burden on

16  commerce." *Exxon*, 437 U.S. at 128.[5]

17       Plaintiffs devote substantial space in their Opposition in an attempt to factually distinguish

18  cases that Defendants have cited for well-established general dormant Commerce Clause

19  principles that are not in dispute.  Furthermore, as discussed in Defendants' Cross-Motion,

20  Plaintiffs rely entirely on cases that are irrelevant on their facts.  The Ninth Circuit cases that

21  Plaintiffs have chosen to largely ignore, in particular, *Harris*, reject the legal bases for Plaintiffs'

22  dormant Commerce Clause claims and demonstrate that those claims are devoid of merit.

23       In their Opposition, Plaintiffs once again make an attempt to revive their discrimination and

24  extraterritoriality claims.  (Opp'n 13-14.)  However, as discussed extensively in Defendants'

25  Cross-Motion, this Court has dismissed those claims and they are no longer at issue in this case.

26

27       [5] Plaintiffs' Opposition, like their Motion, relies heavily on *Lewis v. BT Investment Managers, Incorporated*, 447 U.S. 27 (1980), in support of their substantial burden argument.  However, that case involved a statute that discriminated against out-of-state entities, something

28  that this Court has already held that the Statutes do not do.  (*See* ECF No. 54 at 7-9.)

9

1

## II.   PLAINTIFFS' DECLARATIONS SHOULD BE DISREGARDED BECAUSE THEY ARE NOT PERMITTED BY THE LOCAL RULES AND THIS COURT'S STATUS ORDER

2

3          Plaintiffs have filed and proffered two declarations fashioned as being in "further support"

4   of their Motion.  (Decl. Haig T. Kelegian, Jr. Further Supp. Mot. Summ. J., Perm. Inj.,

5   Declaratory J. (Kelegian Decl.); Decl. Paul J. Cambria Further Supp. Mot. Summ. J., Perm. Inj.,

6   Declaratory J. (Cambria Decl.).)  While fashioned as being in support of their Motion, in actuality

7   the declarations are in support of Plaintiffs' reply brief.  To the extent that they are deemed in

8   support of Plaintiffs' Motion, the declarations are not timely because they were not filed by the

9   April 22 due date.  In addition, the declarations do not "reply" to any new issues raised by

10  Defendants in opposition to Plaintiffs' Motion and, for that reason alone, should not be

11  considered.  *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence cannot be

12  submitted in reply without affording the other party an opportunity to respond); *see also* E.D. Cal.

13  R. 260(a), (b).  Furthermore, the Kelegian Declaration is in essence a reply to Defendants'

14  Response to Plaintiffs' Separate Statement of Undisputed Material Facts, which this Court's

15  Status Order expressly prohibits.  (*See* ECF No. 49 at 4.)  Finally, both the Cambria Declaration

16  and the Kelegian Declaration comprise legal argument and thus constitute an attempt to exceed

17  the twenty-page limit already reached by Plaintiffs' brief.  For these reasons, the declarations

18  should be disregarded by this Court.

19                                            **CONCLUSION**

20         For all of the above reasons and authorities, Defendants respectfully request that this Court

21  grant summary judgment in their favor and against Plaintiffs on the parties' cross-motions for

22  summary judgment.

23  Dated:  June 21, 2022                          Respectfully Submitted,

24  ROB BONTA
    Attorney General of California              */s/ James G. Waian*
25  SARA J. DRAKE
    Senior Assistant Attorney General          JAMES G. WAIAN
26  T. MICHELLE LAIRD                           Deputy Attorney General
    Supervising Deputy Attorney General         *Attorneys for Defendants*
27

28

                                            10

# CERTIFICATE OF SERVICE

Case Name:    **Flynt, et al. v. Bonta, et al.**
No:                  **2:16-cv-02831-JAM-JDP**

I hereby certify that on <u>June 21, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT.**

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was executed on <u>June 21, 2022</u>, at San Diego, California.

|                        |                        |
| :--------------------: | :--------------------: |
| Aimee Shorter          |                        |
| Declarant              | Signature              |