UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH FLYNT, et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California, et al.,<br><br>            Defendants. | No. 2:16-cv-02831-JAM-JDP<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

     This matter is before the Court on Plaintiffs' motion for summary judgment and Defendants' cross-motion for summary judgment.  See Pl.'s Mot. for Summary Judgment ("PMSJ"), ECF No. 86; Def.'s Cross-Motion for Summary Judgement ("DMSJ"), ECF No. 94.  Plaintiffs oppose the Defendants' cross-motion.  See Pl.'s Opp'n, ECF No. 95.  Defendants replied.  See Def.'s Reply, ECF No. 96.  For the reasons set forth below, the Court DENIES Plaintiffs' motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment.[1]

---

[1] The matter was heard on June 28, 2022.

1

1          I.   FACTUAL AND PROCEDURAL BACKGROUND

2          Plaintiffs are California residents who possess state-

3    issued gambling licenses to operate card clubs in California.

4    Plaintiffs' Statement of Undisputed Facts (PSUF) ¶ 34, ECF

5    No. 87.  Plaintiffs claim that certain provisions of the

6    licensing statute limit their ability to invest in and/or

7    operate out-of-state casinos.  PSUF ¶ 45; Cal. Bus. Prof. Code

8    §§ 19858-19858.5.  To comply with the challenged provisions,

9    Plaintiffs have restructured or divested themselves from

10   otherwise attractive business opportunities when such

11   investments would cost them their California gambling licenses.

12   PSUF ¶¶ 49 (disputed on other grounds), 61-62, 69-71.

13   Plaintiffs move for summary judgment, contending that the

14   challenged provisions place a burden on interstate commerce that

15   excessively outweighs the local benefits of the law in violation

16   of the dormant Commerce Clause.  Defendants filed a cross-motion

17   for summary judgment.

18        The Court previously dismissed two of Plaintiffs' three

19   claims in its order granting Defendants' motion to dismiss at ECF

20   No. 67.  The only remaining claim for summary judgment purposes

21   is Plaintiffs' claim that §§ 19858 and 19858.5 indirectly

22   regulate interstate commerce in violation of the dormant Commerce

23   Clause.  See Third Amended Complaint ("TAC") at 34, ECF No. 81.

24

25                    II.   OPINION

26        A.   Judicial Notice

27        Federal Rule of Evidence 201 allows the Court to notice a

28   fact if it is "not subject to reasonable dispute," such that it

                              2

1   is "generally known" or "can be accurately and readily

2   determined from sources whose accuracy cannot reasonably be

3   questioned."  Fed. R. Evid. 201(b).  The Court may take judicial

4   notice of matters of public record.  See Lee v. City of Los

5   Angeles, 250 F.3d 668, 689 (9th Cir. 2005).  Plaintiffs'

6   Exhibits G-L, ECF No. 92, are matters of public record and

7   therefore suitable for judicial notice.  The Court grants

8   judicial notice of these Exhibits.

9        B.   Legal Standard for Summary Judgment

10       Summary judgment is proper if "the movant shows that there

11  is no genuine dispute as to any material fact and the movant is

12  entitled to judgment as a matter of law."  Fed. R. Civ.

13  P. 56(a).  Summary judgment should be granted cautiously, with

14  due respect for a party's right to have its factually grounded

15  claims and defenses tried to a jury.  Celotex Corp. v. Catrett,

16  477 U.S. 317, 327, (1986).  The Court must view the facts and

17  draw inferences in the manner most favorable to the non-moving

18  party.  United States v. Diebold, Inc., 369 U.S. 654, (1992);

19  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir.

20  1992).  The moving party bears the initial burden of

21  demonstrating the absence of a genuine issue of material fact

22  for trial, but it need not disprove the other party's case.

23  Celotex, 477 U.S. at 323.

24       C.   Scope of Challenged Statutory Provisions

25       California prohibits gambling for monetary gain in the form

26  of banking or percentage games played with cards, dice, or any

27  other device.  Cal. Penal Code § 330.  Commonly banned games

28  include blackjack, monte, roulette, faro, and the like.  Subject

1   to specific restrictions, however, California permits the

2   operation of cardrooms that host non-prohibited forms of

3   gambling.  Cal. Bus. Prof. Code § 19876.  Both residents and

4   non-residents may obtain a California gambling license.  Id.

5       To be deemed suitable to hold a California gambling

6   license, a prospective licensee may not hold "any financial

7   interest in any business or organization that is engaged in any

8   form of gambling prohibited by Section 330 of the Penal Code,

9   whether within or without this state."  Cal. Bus. Prof. Code

10  § 19858.  California carved out a limited exception to this

11  restriction to allow licensees to hold up to a 1% financial

12  interest in entities that engage in prohibited forms of gambling

13  so long as it is legal in the state where it occurs.  Cal. Bus.

14  Prof. Code § 19858.5.

15      Plaintiffs claim that these provisions prevent them from

16  entering any business relationships with an individual or entity

17  that holds more than a 1% interest in a gambling operation

18  prohibited in California, even if that business relationship is

19  not itself connected to a prohibited gambling operation.  PMSJ

20  at 15.  Defendants argue that Plaintiffs' interpretation is too

21  broad and that the statute applies only to licensees and

22  applicants for a license, not potential business partners.  DMSJ

23  at 9.  While this Court previously entertained Plaintiffs' broad

24  statutory interpretation for the purpose of resolving their

25  motion to dismiss, it finds that it is appropriate to revisit

26  the issue in light of the parties' summary judgment briefings.

27      To start, § 19858 bars "financial interest[s]" in

28  businesses engaged in prohibited gambling and not, as Plaintiffs

                                4

1   contend, all business affiliations with such businesses.

2   Therefore, a California gambling licensee may enter into a

3   business agreement with an entity that engages in prohibited

4   gambling so long as their joint venture does not also engage in

5   illegal gambling.  The second entity's illegal gambling

6   interests would not be imputed to the licensee.  The primary

7   consideration is thus whether the licensee or prospective

8   licensee has a more than 1% interest in a business that engages

9   in illegal gambling, irrespective of the gambling interests of

10  the other entities involved in that business.

11      Further, though Plaintiffs insist on their broad reading of

12  the statute, the statute has never been enforced in such a way.

13  As Defendants submit, "[t]he California agencies tasked with

14  implementing the card room licensing scheme, the Commission and

15  the Bureau, have consistently interpreted and applied the

16  Statutes [narrowly]."  DMSJ at 9; Defendants' Statement of

17  Undisputed Facts ("DSUF") ¶ 6, ECF No. 94-1.[2]  Defendants have

18  supplied declarations to support their contention that the

19  Commission has never denied a California gambling license for

20  the reasons Plaintiffs suggest.  See Decl. of Stacy Baxter, ECF

21  No. 94-2.  The Bureau of Gambling Control has likewise never

22  taken enforcement action against cardroom licensees for such

_____

[2] The relevance of how an agency has applied a particular statute
24  is limited to deciding the scope of the statute and not its
constitutionality.  See United States v. Hansen, 25, F.4th 1103,
25  1111 (9th Cir. 2022) (observing courts do not "uphold an
unconstitutional statute merely because the government promised
26  to use it responsibly"); see also Doe v. San Diego, 313 F. Supp.
3d. 1212, 1217 (S.D. Cal. 2018) ("[A] facial attack does not
27  raise questions of fact related to the enforcement of the statute
in a particular instance").

1    reasons.  See Decl. of Yolanda Morrow, ECF No. 94-3.  In the

2    absence of contravening evidence, the Court finds there is no

3    question of material fact as to how the statute has been

4    enforced since its enactment.

5         For the forgoing reasons, the Court concludes that the

6    challenged provisions apply only to licensees and prospective

7    licensees.  Further, the provisions do not bar licensees and

8    prospective licensees from any and all business affiliations

9    with entities holding more than a 1% illegal gambling interest;

10   the provisions only bar licensees and prospective licensees from

11   themselves holding more than a 1% interest in a business engaged

12   in illegal gambling.

13        D.   Dormant Commerce Clause Analysis

14        Plaintiffs allege that §§ 19858 and 19858.5 indirectly

15   regulate interstate commerce in violation of the dormant

16   Commerce Clause.  PMSJ at 1.  The Commerce Clause is an

17   affirmative grant of power to Congress to regulate interstate

18   and foreign commerce.  The inverse of this affirmative grant is

19   an implied, "self-executing limitation on the power of the

20   States to enact laws imposing substantial burdens on such

21   commerce."  Nat'l Ass'n of Optometrists & Opticians v. Harris,

22   682 F.3d 1144, 1147 (9th Cir. 2012).  This limitation on the

23   states to regulate commerce is "known as the dormant Commerce

24   Clause."  Id.  The dormant Commerce Clause prohibits states from

25   enacting statutes that discriminate against interstate commerce

26   by "burdening out-of-state competitors" to protect in-state

27   economic interests.  Id. at 1148 (quoting Dep't of Revenue v.

28   Davis, 553 U.S. 328, 337 (2008)).

"When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests . . . [it] is virtually per se invalid under the Commerce Clause." Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573 (1986) (original emphasis).  When, on the other hand, the state statute regulates evenhandedly and only indirectly affects interstate commerce, courts must engage in Pike balancing and consider "whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970).  A statute, however, is not "invalid merely because it affects in some way the flow of commerce between the States." Nat'l Ass'n of Optometrists, 682 F.3d at 1148 (quoting Great Atl. & Pac. Tea Co. v. Cottrell, 424 U.S. 366, 371 (1976)). "[A] plaintiff must first show that the statute imposes a substantial burden before the court will determine whether the benefits of the challenged laws are illusory." Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 951-52 (9th Cir. 2013) (internal citations omitted).

        1.   Sections 19858 and 19858.5 Are Not Per Se Invalid

The Court has previously held that the statutes do not directly regulate interstate commerce.  Order at 9, ECF No. 67. Further, it is undisputed that the Statutes are not discriminatory on their face.  The parties agree that the Statutes apply equally to residents and non-residents and that there is no bar to out-of-state ownership or operation of cardrooms in California.  DSUF ¶ 1.  Further, Plaintiffs have

not shown that the provisions' effect is to "benefit in-state economic interests by burdening out-of-state competitors." Nat'l Ass'n of Optometrists, 682 F.3d at 1148 (quoting Dep't of Revenue, 553 U.S. at 337-38.).  If anything, the fact that California licensees are subject to more restrictions on their investments in the gambling industry than non-California licensees cuts against any potential economic protectionism that is the chief concern for modern dormant Commerce Clause jurisprudence.  For these reasons, the Court holds that §§ 19858 and 19858.5 are not per se invalid under the dormant Commerce Clause.

> ### 2.   Sections 19858 and 19858.5 Do Not Substantially Burden Interstate Commerce

The remaining question for the Court is whether the Statutes, though non-discriminatory, nevertheless impose a significant burden on interstate commerce in violation of the dormant Commerce Clause.  It is Plaintiffs' burden to show there is a substantial burden on interstate commerce before the Court will determine whether the benefits of the challenged laws are illusory under Pike.  Ass'n des Eleveurs de Canards, 729 F.3d at 951-52.

Most statutes that impose a substantial burden on interstate commerce do so because they are discriminatory.  See Nat'l Ass'n of Optometrists, 682 F.3d at 1148.  As discussed above, this Court has held that the Statutes are not discriminatory.  Other statutes that have been found to impose significant burdens on interstate commerce do so because they seek to regulate an activity that is inherently national or

1    require a uniform system of regulation.  Id.  The Supreme Court

2    has held that the Commerce Clause precludes state regulation

3    where "a lack of national uniformity would impede the flow of

4    interstate goods."  Exxon Corp. v. Governor of Md., 437 U.S.

5    117, 128 (1978).  The classic example of an inherently national

6    field that requires a uniform system of regulation is interstate

7    transportation and its instrumentalities.  See Gen. Motors Corp.

8    v. Tracy, 519 U.S. 278 (1997).

9        Plaintiffs have failed to identify a similar national

10   market for gambling investment.  Plaintiffs claim that the

11   Statutes "operate as a roadblock to the transfer of investments

12   and expertise in and out of California with respect to the

13   gambling industry," but have not supplied any authority to show

14   that a flow of capital or expertise is subject to the same level

15   of protections under the dormant Commerce Clause as a flow of

16   tangible goods in a national market.  PMSJ at 15.  To the

17   contrary, dormant Commerce Clause jurisprudence has suggestively

18   focused on the flow of material goods to the exclusion of

19   considering monetary profits.  See Exxon Corp. v. Governor of

20   Maryland, 437 U.S. 117 (1978) (focusing on the free flow of

21   petroleum into the state and not on who ultimately profited);

22   Minnesota v. Clover Leaf Creamery, Co., 449 U.S. 456 (1981)

23   (where the Court's analysis turned on the change in the flow of

24   goods into the state and not on profits).  Accordingly, the

25   Court finds Plaintiffs have not shown that the gambling market

26   is inherently national and that a uniform system of regulation

27   is required.

28       To the extent that Plaintiffs argue the state licensing

9

provisions imposes a substantial burden on interstate commerce
by impeding investment opportunities, commercial transactions
and commercial relationships, the Court acknowledges that the
provisions do in fact force a choice between holding a
California gambling license and a greater than 1% interest in a
business engaged in gambling prohibited in California.
Plaintiffs have not shown, however, how this choice represents a
substantial burden on interstate commerce and not, as Defendants
point out, merely lost individual economic interests.  Def.'s
Reply at 9.  In Plaintiffs' own words, "you can either invest in
California's gambling market or the market outside of
California, but you cannot do both."  Pl.'s Opp'n at 4.  If so,
while it is true that Plaintiffs and other card room licensees
have been limited in kinds of gambling investments they can
make, it is also true that they have in turn received the
privilege of participating in California's cardroom industry.
It is not for the Court to say if one is better than the other.
The Supreme Court in Exxon made clear that the dormant Commerce
Clause does not protect a particular company's profits.  Exxon,
437 U.S. at 127-28.  To the extent Plaintiffs are arguing that a
loss of business opportunity or profits constitute a burden on
interstate commerce, that argument has no merit.

As the Supreme Court observed, beyond the contours of
facial discrimination, the "negative-Commerce-Clause
jurisprudence becomes (and has long been) a quagmire."  W. Lynn
Creamery, Inc. v. Healy, 512 U.S. 186, 210 (1994) (Scalia, J.,
concurring).  At this stage in the proceedings, the Court relies
on the Plaintiffs to marshal evidence that there is a

10

1   substantial burden on interstate commerce.  The Court finds that

2   Plaintiffs have not made a sufficient showing that the

3   challenged provisions impose a substantial burden on interstate

4   commerce.  Given this finding the Court need not reach the

5   parties' arguments on Pike balancing. See Nat'l Ass'n of

6   Optometrists, 682 F.3d at 1155 ("If a regulation merely has an

7   effect on interstate commerce, but does not impose a significant

8   burden on interstate commerce, it follows that there cannot be a

9   burden on interstate commerce that is 'clearly excessive in

10  relation to the putative local benefits' under Pike.").

11      There being no issues of material fact, the Court grants

12  summary judgment to Defendants as a matter of law.

13

14                        III.   ORDER

15      For the reasons set forth above, the Court DENIES

16  Plaintiffs' Motion for Summary Judgment and GRANTS Defendants'

17  Cross-Motion for Summary Judgment.

18      IT IS SO ORDERED.

19  Dated: August 10, 2022

20

21  _____

22  JOHN A. MENDEZ

    SENIOR UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28